# COMMONWEALTH OF MASSACHUSETTS
## NORFOLK COUNTY
### Docket Report

**2482CV00648 Albernaz, David et al vs. M.S. Walker, Inc.**

| | | | |
|---|---|---|---|
| **CASE TYPE:** | Equitable Remedies | **FILE DATE:** | 07/01/2024 |
| **ACTION CODE:** | D99 | **CASE TRACK:** | F - Fast Track |
| **DESCRIPTION:** | Other Equity Action | | |
| **CASE DISPOSITION DATE:** | 08/20/2024 | **CASE STATUS:** | Closed |
| **CASE DISPOSITION:** | Transferred to another Court | **STATUS DATE:** | 08/20/2024 |
| **CASE JUDGE:** | | **CASE SESSION:** | Civil D / VC |

### DCM TRACK

| Tickler Description | Due Date | Completion Date |
|---|---|---|
| Service | 09/30/2024 | 08/20/2024 |
| Rule 15 Served By | 10/29/2024 | 08/20/2024 |
| Answer | 10/29/2024 | 08/20/2024 |
| Rule 12/19/20 Served By | 10/29/2024 | 08/20/2024 |
| Rule 12/19/20 Filed By | 11/29/2024 | 08/20/2024 |
| Rule 15 Filed By | 11/29/2024 | 08/20/2024 |
| Rule 15 Heard By | 12/30/2024 | 08/20/2024 |
| Rule 12/19/20 Heard By | 12/30/2024 | 08/20/2024 |
| Discovery | 04/28/2025 | 08/20/2024 |
| Rule 56 Served By | 05/27/2025 | 08/20/2024 |
| Rule 56 Filed By | 06/26/2025 | 08/20/2024 |
| Final Pre-Trial Conference | 10/24/2025 | 08/20/2024 |
| Judgment | 07/01/2026 | 08/20/2024 |

### PARTIES

| | | |
|---|---|---|
| **Plaintiff**<br>Albernaz, David | **Attorney**<br>Daniel W Rice<br>Harrington Rice and Maglione, LLC<br>Harrington Rice and Maglione, LLC<br>738 Main St<br>Hingham, MA 02043<br>Work Phone (781) 964-8377<br>Added Date: 07/01/2024 | 559269 |
| **Plaintiff**<br>Angulo, Raphael | **Attorney**<br>Daniel W Rice<br>Harrington Rice and Maglione, LLC<br>Harrington Rice and Maglione, LLC<br>738 Main St<br>Hingham, MA 02043<br>Work Phone (781) 964-8377<br>Added Date: 07/01/2024 | 559269 |



**COMMONWEALTH OF MASSACHUSETTS**
**NORFOLK COUNTY**
**Docket Report**

| | |
|---|---|
| **Plaintiff**<br>Ausiello, Jonathan | **Attorney** 559269<br>Daniel W Rice<br>Harrington Rice and Maglione, LLC<br>Harrington Rice and Maglione, LLC<br>738 Main St<br>Hingham, MA 02043<br>Work Phone (781) 964-8377<br>Added Date: 07/01/2024 |
| **Plaintiff**<br>Benoir, Troy | **Attorney** 559269<br>Daniel W Rice<br>Harrington Rice and Maglione, LLC<br>Harrington Rice and Maglione, LLC<br>738 Main St<br>Hingham, MA 02043<br>Work Phone (781) 964-8377<br>Added Date: 07/01/2024 |
| **Plaintiff**<br>Burch, Wayne | **Attorney** 559269<br>Daniel W Rice<br>Harrington Rice and Maglione, LLC<br>Harrington Rice and Maglione, LLC<br>738 Main St<br>Hingham, MA 02043<br>Work Phone (781) 964-8377<br>Added Date: 07/01/2024 |
| **Plaintiff**<br>Carbajal, Oscar | **Attorney** 559269<br>Daniel W Rice<br>Harrington Rice and Maglione, LLC<br>Harrington Rice and Maglione, LLC<br>738 Main St<br>Hingham, MA 02043<br>Work Phone (781) 964-8377<br>Added Date: 07/01/2024 |
| **Plaintiff**<br>Conley, Matthew | **Attorney** 559269<br>Daniel W Rice<br>Harrington Rice and Maglione, LLC<br>Harrington Rice and Maglione, LLC<br>738 Main St<br>Hingham, MA 02043<br>Work Phone (781) 964-8377<br>Added Date: 07/01/2024 |
| **Plaintiff**<br>Delacruz, Cesar | **Attorney** 559269<br>Daniel W Rice<br>Harrington Rice and Maglione, LLC<br>Harrington Rice and Maglione, LLC<br>738 Main St<br>Hingham, MA 02043<br>Work Phone (781) 964-8377<br>Added Date: 07/01/2024 |

**COMMONWEALTH OF MASSACHUSETTS**
NORFOLK COUNTY
Docket Report

| | |
|---|---|
| **Plaintiff**<br>Donovan, Corey | **Attorney**        559269<br>Daniel W Rice<br>Harrington Rice and Maglione, LLC<br>Harrington Rice and Maglione, LLC<br>738 Main St<br>Hingham, MA 02043<br>Work Phone (781) 964-8377<br>Added Date: 07/01/2024 |
| **Plaintiff**<br>Figueroa, Victor | **Attorney**        559269<br>Daniel W Rice<br>Harrington Rice and Maglione, LLC<br>Harrington Rice and Maglione, LLC<br>738 Main St<br>Hingham, MA 02043<br>Work Phone (781) 964-8377<br>Added Date: 07/01/2024 |
| **Plaintiff**<br>Frederick, Kyle | **Attorney**        559269<br>Daniel W Rice<br>Harrington Rice and Maglione, LLC<br>Harrington Rice and Maglione, LLC<br>738 Main St<br>Hingham, MA 02043<br>Work Phone (781) 964-8377<br>Added Date: 07/01/2024 |
| **Plaintiff**<br>Kadek, Eddie | **Attorney**        559269<br>Daniel W Rice<br>Harrington Rice and Maglione, LLC<br>Harrington Rice and Maglione, LLC<br>738 Main St<br>Hingham, MA 02043<br>Work Phone (781) 964-8377<br>Added Date: 07/01/2024 |
| **Plaintiff**<br>Leach, Andrew | **Attorney**        559269<br>Daniel W Rice<br>Harrington Rice and Maglione, LLC<br>Harrington Rice and Maglione, LLC<br>738 Main St<br>Hingham, MA 02043<br>Work Phone (781) 964-8377<br>Added Date: 07/01/2024 |
| **Plaintiff**<br>Loloci, Fatjon | **Attorney**        559269<br>Daniel W Rice<br>Harrington Rice and Maglione, LLC<br>Harrington Rice and Maglione, LLC<br>738 Main St<br>Hingham, MA 02043<br>Work Phone (781) 964-8377<br>Added Date: 07/01/2024 |

| Plaintiff<br>Mercado, Sammy | Attorney<br>Daniel W Rice<br>Harrington Rice and Maglione, LLC<br>Harrington Rice and Maglione, LLC<br>738 Main St<br>Hingham, MA 02043<br>Work Phone (781) 964-8377<br>Added Date: 07/01/2024 | 559269 |
|---|---|---|
| Plaintiff<br>Mesa, Kristeon | Attorney<br>Daniel W Rice<br>Harrington Rice and Maglione, LLC<br>Harrington Rice and Maglione, LLC<br>738 Main St<br>Hingham, MA 02043<br>Work Phone (781) 964-8377<br>Added Date: 07/01/2024 | 559269 |
| Plaintiff<br>Molina, Javier | Attorney<br>Daniel W Rice<br>Harrington Rice and Maglione, LLC<br>Harrington Rice and Maglione, LLC<br>738 Main St<br>Hingham, MA 02043<br>Work Phone (781) 964-8377<br>Added Date: 07/01/2024 | 559269 |
| Plaintiff<br>Morales, Jeff | Attorney<br>Daniel W Rice<br>Harrington Rice and Maglione, LLC<br>Harrington Rice and Maglione, LLC<br>738 Main St<br>Hingham, MA 02043<br>Work Phone (781) 964-8377<br>Added Date: 07/01/2024 | 559269 |
| Plaintiff<br>Nelson, Matthew | Attorney<br>Daniel W Rice<br>Harrington Rice and Maglione, LLC<br>Harrington Rice and Maglione, LLC<br>738 Main St<br>Hingham, MA 02043<br>Work Phone (781) 964-8377<br>Added Date: 07/01/2024 | 559269 |
| Plaintiff<br>Otis, Richard | Attorney<br>Daniel W Rice<br>Harrington Rice and Maglione, LLC<br>Harrington Rice and Maglione, LLC<br>738 Main St<br>Hingham, MA 02043<br>Work Phone (781) 964-8377<br>Added Date: 07/01/2024 | 559269 |

| | |
|---|---|
| **Plaintiff**<br>Ou, Sopheak | **Attorney**           559269<br>Daniel W Rice<br>Harrington Rice and Maglione, LLC<br>Harrington Rice and Maglione, LLC<br>738 Main St<br>Hingham, MA 02043<br>Work Phone (781) 964-8377<br>Added Date: 07/01/2024 |
| **Plaintiff**<br>Pari, James | **Attorney**           559269<br>Daniel W Rice<br>Harrington Rice and Maglione, LLC<br>Harrington Rice and Maglione, LLC<br>738 Main St<br>Hingham, MA 02043<br>Work Phone (781) 964-8377<br>Added Date: 07/01/2024 |
| **Plaintiff**<br>Reynolds, Earl | **Attorney**           559269<br>Daniel W Rice<br>Harrington Rice and Maglione, LLC<br>Harrington Rice and Maglione, LLC<br>738 Main St<br>Hingham, MA 02043<br>Work Phone (781) 964-8377<br>Added Date: 07/01/2024 |
| **Plaintiff**<br>Sor, Senna | **Attorney**           559269<br>Daniel W Rice<br>Harrington Rice and Maglione, LLC<br>Harrington Rice and Maglione, LLC<br>738 Main St<br>Hingham, MA 02043<br>Work Phone (781) 964-8377<br>Added Date: 07/01/2024 |
| **Defendant**<br>M.S. Walker, Inc. | **Attorney**           703992<br>Brendan Sweeney<br>Morgan, Brown and Joy<br>Morgan, Brown and Joy<br>200 State St S11A<br>Boston, MA 02109<br>Work Phone (617) 788-5059<br>Added Date: 08/20/2024 |

**COMMONWEALTH OF MASSACHUSETTS**
**NORFOLK COUNTY**
**Docket Report**

### FINANCIAL DETAILS

| Date | Fees/Fines/Costs/Charge | Assessed | Paid | Dismissed | Balance |
|------|------------------------|----------|------|-----------|---------|
| 07/01/2024 | Civil Filing Fee (per Plaintiff) Receipt: 29625 Date: 07/01/2024 | 240.00 | 240.00 | 0.00 | 0.00 |
| 07/01/2024 | Civil Security Fee (G.L. c. 262, § 4A) Receipt: 29625 Date: 07/01/2024 | 20.00 | 20.00 | 0.00 | 0.00 |
| 07/01/2024 | Civil Surcharge (G.L. c. 262, § 4C) Receipt: 29625 Date: 07/01/2024 | 15.00 | 15.00 | 0.00 | 0.00 |
| 07/01/2024 | Fee for Blank Summons or Writ (except Writ of Habeas Corpus) MGL 262 sec 4b Receipt: 29625 Date: 07/01/2024 | 5.00 | 5.00 | 0.00 | 0.00 |
| | **Total** | **280.00** | **280.00** | **0.00** | **0.00** |

**COMMONWEALTH OF MASSACHUSETTS**
**NORFOLK COUNTY**
Docket Report

| INFORMATIONAL DOCKET ENTRIES | | | |
|---|---|---|---|
| **Date** | **Ref** | **Description** | **Judge** |
| 07/01/2024 | | Attorney appearance<br>On this date Daniel W Rice, Esq. added for Plaintiff David Albernaz | |
| 07/01/2024 | | Attorney appearance<br>On this date Daniel W Rice, Esq. added for Plaintiff Raphael Angulo | |
| 07/01/2024 | | Attorney appearance<br>On this date Daniel W Rice, Esq. added for Plaintiff Jonathan Ausiello | |
| 07/01/2024 | | Attorney appearance<br>On this date Daniel W Rice, Esq. added for Plaintiff Troy Benoir | |
| 07/01/2024 | | Attorney appearance<br>On this date Daniel W Rice, Esq. added for Plaintiff Wayne Burch | |
| 07/01/2024 | | Attorney appearance<br>On this date Daniel W Rice, Esq. added for Plaintiff Oscar Carbajal | |
| 07/01/2024 | | Attorney appearance<br>On this date Daniel W Rice, Esq. added for Plaintiff Matthew Conley | |
| 07/01/2024 | | Attorney appearance<br>On this date Daniel W Rice, Esq. added for Plaintiff Cesar Delacruz | |
| 07/01/2024 | | Attorney appearance<br>On this date Daniel W Rice, Esq. added for Plaintiff Corey Donovan | |
| 07/01/2024 | | Attorney appearance<br>On this date Daniel W Rice, Esq. added for Plaintiff Victor Figueroa | |
| 07/01/2024 | | Attorney appearance<br>On this date Daniel W Rice, Esq. added for Plaintiff Kyle Frederick | |
| 07/01/2024 | | Attorney appearance<br>On this date Daniel W Rice, Esq. added for Plaintiff Eddie Kadek | |
| 07/01/2024 | | Attorney appearance<br>On this date Daniel W Rice, Esq. added for Plaintiff Andrew Leach | |
| 07/01/2024 | | Attorney appearance<br>On this date Daniel W Rice, Esq. added for Plaintiff Fatjon Loloci | |
| 07/01/2024 | | Attorney appearance<br>On this date Daniel W Rice, Esq. added for Plaintiff Sammy Mercado | |
| 07/01/2024 | | Attorney appearance<br>On this date Daniel W Rice, Esq. added for Plaintiff Kristeon Mesa | |
| 07/01/2024 | | Attorney appearance<br>On this date Daniel W Rice, Esq. added for Plaintiff Javier Molina | |
| 07/01/2024 | | Attorney appearance<br>On this date Daniel W Rice, Esq. added for Plaintiff Jeff Morales | |
| 07/01/2024 | | Attorney appearance<br>On this date Daniel W Rice, Esq. added for Plaintiff Matthew Nelson | |
| 07/01/2024 | | Attorney appearance<br>On this date Daniel W Rice, Esq. added for Plaintiff Richard Otis | |

**COMMONWEALTH OF MASSACHUSETTS**
**NORFOLK COUNTY**
**Docket Report**

| | | |
|---|---|---|
| 07/01/2024 | | Attorney appearance<br>On this date Daniel W Rice, Esq. added for Plaintiff Sopheak Ou |
| 07/01/2024 | | Attorney appearance<br>On this date Daniel W Rice, Esq. added for Plaintiff James Pari |
| 07/01/2024 | | Attorney appearance<br>On this date Daniel W Rice, Esq. added for Plaintiff Earl Reynolds |
| 07/01/2024 | | Attorney appearance<br>On this date Daniel W Rice, Esq. added for Plaintiff Senna Sor |
| 07/01/2024 | | Case assigned to:<br>DCM Track F - Fast Track was added on 07/01/2024 |
| 07/01/2024 | 1 | Original civil complaint filed. |
| 07/01/2024 | 2 | Civil action cover sheet filed. |
| 07/01/2024 | | Demand for jury trial entered. |
| 07/01/2024 | 3 | David Albernaz's MOTION for appointment of Special Process Server. |
| 07/01/2024 | | Endorsement on Motion to Appoint Special Process Server (#3.0): ALLOWED (Cloutier, J)     Cloutier |
| 07/01/2024 | | Docket Note: On this date one (1) summons handled over the counter |
| 07/01/2024 | | EDocument sent:<br>A Tracking Order was generated and sent to:<br>Plaintiff, Attorney: Daniel W Rice, Esq. dwr@harringtonrice.com |
| 07/06/2024 | | One Trial case reviewed by Clerk, case to remain in the Superior Court.     Hickey<br><br>Judge: Hickey, Mary K |
| 08/20/2024 | | Attorney appearance<br>On this date Brendan Sweeney, Esq. added for Defendant M.S. Walker, Inc. |
| 08/20/2024 | 4 | Defendant M.S. Walker, Inc.'s Notice of<br>Filing of Notice of Removal of Action to Federal Court  (E-Filed 08/19/2024) mk |
| 08/20/2024 | 5 | Defendant M.S. Walker, Inc.'s Notice to<br>Plaintiff's Counsel of Removal of Action to Federal Court (E-Filed 08/19/2024) mk |
| 08/20/2024 | | Case transferred to another court. |

I attest that this document is a
certified photocopy of an
original on file.

_(signature)_

Deputy Assistant Clerk    8/20/24

COMMONWEALTH OF MASSACHUSETTS

NORFOLK, S.S.                                                    SUPERIOR COURT

248201 648

DAVID ALBERNAZ, RAPHAEL ANGULO,
JONATHON AUSIELLO, TROY BENOIR,
WAYNE BURCH, OSCAR CARBAJAL,
MATTHEW CONLEY, CESAR DELACRUZ,
COREY DONOVAN, VICTOR FIGUEROA,
KYLE FREDERICK, EDDIE KADEK, ANDREW
LEACH, FATJON LOLOCI, SAMMY MERCADO,
KRISTEON MESA, JAVIER MOLINA, JEFF
MORALES, MATTHEW NELSON, RICHARD
OTIS, SOPHEAK OU, JAMES PARI, EARL
REYNOLDS, and SENNA SOR,
Plaintiffs

V.
M.S. WALKER, INC.,
Defendant

## COMPLAINT AND JURY DEMAND

### INTRODUCTION

1.     This is a class action brought by Plaintiffs on behalf of themselves and all other

similarly situated employees against Defendant M.S. Walker, Inc. ("Defendant"). They seek to

enforce their rights for the timely payment of earned wages as required by the Massachusetts

Wage Act, G.L. c. 149, § 148 ("the Wage Act"), and to impose mandatory penalties for

Defendant's repeated violations of the Wage Act's timely payment provision.

2.     The Wage Act requires covered employers to pay all earned wages to employees

on their day of discharge. *Id.*

3.     The Wage Act mandates that employers pay all wages owed to employees on their

day of discharge to address the immediate financial insecurity and potential hardship faced by

employees upon termination. This requirement ensures that employees can meet their essential financial obligations, such as housing and medical expenses, without delay, reflecting the legislative intent to protect workers who often depend on timely wages for their daily support. *Reuter v. City of Methuen*, 489 Mass. 465. (2022).

4.      Summarily, Defendant has repeatedly violated this law by discharging Plaintiffs and similarly situated employees without paying them their earned wages on their days of discharge. As set forth below, after discharging Plaintiffs and similarly situated employees, Defendant frequently rehires them, only to discharge them again without paying them their earned wages on their day of discharge, thereby repeating its violation of the Wage Act. For each occasion on which it has discharged Plaintiffs and similarly situated employees without paying them all earned wages due on their days of discharge, Defendant is liable under the Wage Act for three times the amount of the earned wages due. G.L. c. 149, § 150.

5.      The proposed class meets the criteria for class certification under G.L. c. 149, § 150, and Mass. R. Civ. P. 23.

6.      The named Plaintiffs are seeking payment of their unpaid wages, treble damages, interest, attorneys' fees, and costs, as mandated by G.L. c. 149, § 150.

7.      Significantly, a claim for penalties under the Massachusetts Wage Act is not preempted by Section 301 of the LMRA, as it involves the timing of wage payments set by state law, independent of any collective bargaining agreement. *Lawless v. Steward Health Care System LLC*, 894 F.3d 9, 19 (1st Cir. 2018); *Livadas v. Bradshaw*, 512 U.S. 107, 124 (1994). Accordingly, any attempt by Defendant to excuse its obligations under the Wage Act, or to avoid penalties for persistently violating this law, by claiming preemption by a collective bargaining agreement, is wholly without merit.

## PARTIES

8.      Defendant M.S. Walker, Inc. ("Defendant" or "M.S. Walker") is a corporation organized under the laws of the Commonwealth of Massachusetts, having a principal place of business in Norwood, Norfolk County, Commonwealth of Massachusetts.

9.      Plaintiffs David Albernaz, Raphael Angulo, Jonathon Ausiello, Troy Benoir, Wayne Burch, Oscar Carbajal, Matthew Conley, Cesar Delacruz, Corey Donovan, Victor Figueroa, Kyle Frederick, Eddie Kadek, Andrew Leach, Fatjon Loloci, Sammy Mercado, Kristeon Mesa, Javier Molina, Jeff Morales, Matthew Nelson, Richard Otis, Sopheak Ou, James Pari, Earl Reynolds, and Senna Sor ("Plaintiffs") are employees of Defendant M.S. Walker.

## FACTUAL ALLEGATIONS

10.     On its website, Defendant describes itself as a wine and spirits importer and distributor, a spirit bottler, and a national supplier with direct operations in Massachusetts, New York, New Jersey, and Rhode Island, and brokerage operations in Maine, New Hampshire, and Vermont.

11.     Defendant employs Plaintiffs and similarly situated employees in Norwood, Massachusetts, in connection to its business, as delivery drivers and drivers' helpers.

12.     Defendant pays Plaintiffs and similarly situated employees at the facilities it operates in Massachusetts hourly wages for their work on a weekly basis, which runs from Sunday to Saturday.

13.     Defendant's employment of Plaintiffs and similarly situated employees is subject to the Massachusetts Wage Act, G.L. c. 149, § 148 ("the Wage Act").

14.     Under the Wage Act, when an employer discharges an employee, it must pay the employee all earned wages owed on the "day of his discharge," including hourly wages, overtime, vacation, and holiday pay.

3

15.     Late payment of earned wages does not excuse a violation of the Wage Act's timely payment mandates for paying weekly wages or all earned wages on the day of discharge, or the penalties it imposes for late payment. *Reuter v. City of Methuen*, 489 Mass. 465. (2022); G.L. c. 149, § 150.

16.     Defendant has engaged in a cruel and consistent practice of discharging Plaintiffs and similarly situated employees without paying them all wages due on their respective days of discharge, in violation of the Wage Act.

17.     Under this practice, which commenced in or about May 2023, Defendant, through its agents, on short notice, informs Plaintiffs and similarly situated employees that they are being "laid off," and are not to return to work until further notice.

18.     Significantly, Defendant has the sole and exclusive authority to rehire laid-off employees, with no obligation to do so, leaving Plaintiffs and similarly situated employees without any guarantee of resuming employment after a layoff.

19.     Upon information and belief, Defendant has cruelly engaged in this practice on a persistent basis to save money, without regard to the impact the last-minute persistent discharges have on the employees affected, thereby creating severe insecurity, loss of income, and instability for Plaintiff's and similarly situated employees impacted. Hereinafter, this will be referred to as Defendant's "Discharge Policy" or "DP."

20.     For example, pursuant to the DP:

21.     Defendant discharged Plaintiff David Albernaz from employment without paying him all wages owed on the following dates: November 22, 2023; January 5, 2024; January 11, 2024; January 22, 2024; January 24, 2024; January 25, 2025; January 25, 2026; February 1, 2024; and March 7, 2024.

22.    Defendant discharged Plaintiff Raphael Angulo from employment without paying him all wages owed on the following dates: May 4, 2023; May 5, 2023; May 30, 2023; August 3, 2023; August 10, 2023; August 17, 2023; August 18, 2023; August 24, 2023; September 5, 2023; September 14, 2023; September 21, 2023; September 22, 2023; December 7, 2023; December 26, 2023; January 3, 2024; January 4, 2024; January 9, 2024; January 10, 2024; January 18, 2024; January 23, 2024; January 24, 2024; January 25, 2024; January 26, 2024; February 1, 2024; February 2, 2024; February 8, 2024; February 13, 2024; February 14, 2024; February 27, 2024; February 28, 2024; February 29, 2024; March 1, 2024; March 7, 2024; March 8, 2024; March 14, 2024; March 15, 2024; March 21, 2024; March 22, 2024; April 4, 2024; April 5, 2024; April 9, 2024; April 10, 2024; April 11, 2024; April 12, 2024; April 16, 2024; April 25, 2024; May 2, 2024; May 9, 2024; and May 23, 2024.

23.    Defendant discharged Plaintiff Jonathan Ausiello from employment without paying him all wages owed on the following dates: May 3, 2023; May 18, 2023; August 9, 2023; August 17, 2023; August 23, 2023; September 5, 2023; September 13, 2023; September 20, 2023; November 21, 2023; January 2, 2024; January 17, 2024; January 29, 2024; February 5, 2024; February 7, 2024; February 12, 2024; February 19, 2024; February 22, 2024; February 28, 2024; March 6, 2024; March 13, 2024; March 20, 2024; April 3, 2024; April 8, 2024; April 24, 2024; May 8, 2024; and May 23, 2024.

24.    Defendant discharged Plaintiff Troy Benoir from employment without paying him all wages owed on the following dates: November 22, 2023; January 2, 2024; January 18, 2024; January 19, 2024; January 25, 2024; February 13, 2024; February 23, 2024; March 21, 2024; April 4, 2024; and April 5, 2024.

25.    Defendant discharged Plaintiff Wayne Burch from employment without paying him all wages owed on February 28, 2024, and on other occasions.

26.    Defendant discharged Plaintiff Oscar Carbajal from employment without paying him all wages owed on the following date: January 22, 2024.

27.    Defendant discharged Plaintiff Matthew Conley from employment without paying him all wages owed on the following dates: May 8, 2024, and May 14, 2024.

28.    Defendant discharged Plaintiff Cesar Delacruz from employment without paying him all wages owed on the following dates: May 3, 2023; January 9, 2024; January 18, 2024; January 22, 2024; January 29, 2023; February 7, 2024; March 20, 2024; April 11, 20244; and May 8, 2024.

29.    Defendant discharged Plaintiff Corey Donovan from employment without paying him all wages owed on the following dates: February 22, 2023; February 23, 2023; February 29, 2023; March 1, 2023; March 7, 2023; March 8, 2023; March 14, 2023; March 15, 2023; March 21, 2023; March 22, 2023; March 28, 2023; April 4, 2023; April 5, 2023; April 11, 2023; April 12, 2023; April 18, 2023; April 19, 2023; April 25, 2023; April 26, 2023; May 2, 2023; May 3, 2023; May 9, 2023; May 10, 2023; May 16, 2023; May 17, 2023; May 23, 2023; May 24, 2023; May 30, 2023; and May 31, 2023.

30.    Defendant discharged Plaintiff Victor Figueroa from employment without paying him all wages owed on the following dates: May 4, 2023; May 5, 2023; June 27, 2023; June 28, 2023; June 29, 2023; June 30, 2023; September 8, 2023; September 15, 2023; September 22, 2023; January 10, 2024; January 11, 2024; January 18, 2024; January 23, 2024; January 24, 2024; January 25, 2024; January 26, 2024; January 31, 2024; February 1, 2024; February 8, 2024; February 23, 2024; and February 29, 2024.

31.    Defendant discharged Plaintiff Kyle Frederick from employment without paying him all wages owed on the following dates: September 7, 2023; November 21, 2023; January 17,

2024; January 24, 2024; February 9, 2024; February 22, 2024; March 20, 2024; and April 3, 2024.

32.    Defendant discharged Plaintiff Eddie Kadek from employment without paying him all wages owed on the following dates: January 11, 2024; January 18, 2024; January 23, 2024; January 24, 2024; January 25, 2024; January 26, 2024; February 1, 2024; February 13, 2024; February 29, 2024; and May 9, 2024.

33.    Defendant discharged Plaintiff Andrew Leach from employment without paying him all wages owed on the following dates: November 22, 2023; December 7, 2023; December 14, 2023; December 21, 2023; January 23, 2024; January 30, 2024; February 23, 2024; February 29, 2024; March 7, 2024; March 14, 2024; March 21, 2024; April 4, 2024; April 19, 2024; April 25, 2024; May 2, 2024; May 9, 2024; and May 23, 2024.

34.    Defendant discharged Plaintiff Fatjon Loloci from employment without paying him all wages owed on the following dates: May 4, 2023; May 5, 2023; August 10, 2023; August 11, 2023; August 17, 2023; August 24, 2023; September 8, 2023; September 14, 2023: January 10, 2024; January 11, 2024; January 18, 2024; January 23, 2024; January 24, 2024; January 25, 2024; February 1, 2024; February 2, 2024; February 8, 2024; February 29, 2024; March 7, 2024; March 8, 2024; March 21, 2024; March 22, 2024; April 5, 2024; April 9, 2024; April 11, 2024; and April 25, 2024.

35.    Defendant discharged Sammy Mercado from employment without paying him all wages owed on June 11, 2024, and other occasions.

36.    Defendant discharged Plaintiff Kristeon Mesa from employment without paying him all wages owed on the following dates: July 20, 2023; August 3, 2023; August 9, 2023; August 10, 2023; August 11, 2023; August 16, 2023; August 17, 2023; August 18, 2023; August 23, 2023; August 24, 2023; September 8, 2023; September 14, 2023; September 20, 2023;

September 21, 2023; September 22, 2023; October 12, 2023; October 13, 2023; November 2, 2023; December 7, 2023; December 8, 2023; December 21, 2023; January 3, 2024; January 4, 2024; January 9, 2024; January 10, 2024; January 11, 2024; January 12, 2024; January 16, 2024; January 23, 2024; January 24, 2024; January 25, 2024; January 26, 2024; February 8, 2024; February 9, 2024; February 15, 2024; February 22, 2024; February 29, 2024; March 7, 2024; March 14, 2024; March 15, 2024; March 21, 2024; April 4, 2024; April 5, 2024; April 9, 2024; April 10, 2024; April 11, 2024; April 12, 2024; April 19, 2024; April 25, 2024; April 26, 2024; May 2, 2024; May 9, 2024; May 10, 2024; May 23, 2024; and May 24, 2024.

37.     Defendant discharged Plaintiff Javier Molina from employment without paying him all wages owed on the following dates: March 21, 2023; March 22, 2023; April 4, 2023; April 5, 2023; April 11, 2023; April 12, 2023; April 16, 2023; April 25, 2023; April 30, 2023; May 9, 2023; and May 24, 2023.

38.     Defendant discharged Plaintiff Jeff Morales from employment without paying him all wages owed on the following dates: December 14, 2023; January 4, 2024; January 17, 2024; January 24, 2024; February 15, 2024; February 21, 2024; February 29, 2024; April 3, 2024; and May 9, 2024.

39.     Defendant discharged Plaintiff Matthew Nelson from employment without paying him all wages owed on the following dates: September 14, 2023; February 1, 2024; February 22, 2024; and February 29, 2024.

40.     Defendant discharged Plaintiff Richard Otis from employment without paying him all wages owed on the following dates: August 24, 2023; August 31, 2023; September 7, 2023; September 14, 2023; September 21, 2023; September 28, 2023; December 21, 2023; January 18, 2024; January 25, 2024; February 1, 2024; February 8, 2024; February 22, 2024;

February 29, 2024; March 7, 2024; March 14, 2024; March 28, 2024; April 11, 2024; and April 18, 2024.

41.     Defendant discharged Plaintiff Sopheak Ou from employment without paying him all wages owed on the following dates: May 4, 2023; August 4, 2023; January 12, 2024; January 18, 2024; February 7, 2024; February 15, 2024; February 23, 2024; March 1, 2024; March 14, 2024; March 21, 2024; April 3, 2024; April 19, 2024; April 25, 2024; May 2, 2024; May 9, 2024; and May 24, 2024.

42.     Defendant discharged Plaintiff James Pari from employment without paying him all wages owed on the following date: December 20, 2023.

43.     Defendant discharged Plaintiff Earl Reynolds from employment without paying him all wages owed on the following dates: November 22, 2023; December 31, 2023, to January 6, 2024; January 7, 2024, to January 13, 2024; January 18, 2024; January 25, 2024; January 26, 2024; February 1, 2024; February 4, 2024, to February 10, 2024; February 13, 2024; March 7, 2024; March 21, 2024; April 11, 2024; April 12, 2024; and May 9, 2024.

44.     Defendant discharged Plaintiff Sena Sor from employment without paying him all wages owed on the following dates: May 9, 2024; May 23, 2024; and May 24, 2024.

45.     Defendant's failure to pay wages on the day of discharge blatantly violates the clear mandates of the Wage Act and undermines the policy goals intended by this legislation. The prompt payment of wages upon discharge is crucial to mitigate the financial insecurity and immediate hardships that employees face upon termination. This requirement ensures that employees can meet essential financial obligations such as housing and medical expenses without delay, thereby protecting their daily support and well-being. Defendant's persistent disregard for this mandate through its DP shows a callous indifference to these critical protections.

46.     Compliance with the Wage Act requires minimal effort from Defendant; it simply needs to issue paychecks to impacted employees to pay them their earned wages. It is both cruel and thoughtless for Defendant to engage in this practice without taking this simple step, thereby subjecting employees to unnecessary financial distress and instability.

## JURISDICTION

47.     This Court has jurisdiction over this Complaint pursuant to G.L. c. 149, § 150, which permits violations of G.L. c. 149, § 148 to be remedied by injunctive relief on behalf of Plaintiffs and all similarly situated employees.

## VENUE

48.     Venue is proper in this Court because Defendant maintains a usual place of business in Norfolk County. G.L. c. 223, § 1.

## COUNT I

### VIOLATION OF THE MASSACHUSETTS WAGE ACT
### FAILURE TO PAY ALL EARNED WAGES ON THE DAY OF DISCHARGE

#### *Plaintiffs v. Defendant M.S. Walker*

49.     Plaintiffs incorporate by reference all allegations herein.

50.     Under the Wage Act, Defendant was obligated to pay Plaintiffs and all similarly situated employees all their earned wages on their days of discharge, which are set forth above.

51.     By application of its Discharge Policy (DP), Defendant has violated the Wage Act because it did not pay them all their earned wages on the day(s) of their discharge, as required by the Wage Act.

52.     This claim is brought pursuant to G.L. c. 149, § 150 on behalf of the named Plaintiffs and all similarly situated employees.

53.     Plaintiffs have been harmed, injured, and damaged because of Defendant's violation of the Wage Act.

54.     Plaintiffs have satisfied all administrative prerequisites to suit under the Wage Act. (Ex. 1.)

## COUNT II
## CLASS ACTION CLAIM
### Violation of the Massachusetts Wage Act

55.     All allegations made here are repeated and incorporated by reference.

56.     Plaintiffs bring Count I of this Complaint on behalf of themselves and similarly situated employees of Defendant as a putative Rule 23 class action pursuant to G.L. c. 149, § 150 and Rules 23(a) and (b) of the Massachusetts Rules of Civil Procedure for Defendant's violations of the law. The putative Rule 23 Class Plaintiffs propose is defined as follows: All current and former Massachusetts employees of the Defendant who, from July 1, 2021, to the present, were not paid all due earned wages on their discharge date, in violation of the Wage Act.

57.     The persons in the Rule 23 Class identified above are so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown at this time, upon information and belief, Defendant employed more than 40 persons who satisfied the definition of the Rule 23 Class.

58.     There are questions of law and fact common to the Rule 23 Class that predominate over any questions solely affecting individual members.

59.     Plaintiffs' claims are typical of those of the Rule 23 Class. Plaintiffs, like other members of the Rule 23 Class, were subject to Defendant's illegal practice in not paying wages on the day of discharge.

60.     Plaintiffs will fairly and adequately protect the interests of the Rule 23 Class and have retained counsel experienced in complex wage and hour class and collective action litigation. There is no conflict between Plaintiffs and the Rule 23 Class members.

61.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage-and-hour litigation where individual plaintiffs lack the financial resources to vigorously prosecute separate lawsuits in federal Court against a large corporate defendant.

62.     Class certification of Counts I is appropriate under Mass. R. Civ. P. 23(b)(3) because questions of law and fact common to the Rule 23 Class predominate over any questions affecting only individual members and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Defendant's common and uniform policies and practices denied the Rule 23 Class proper and timely payment of wages Defendant was mandated to pay them under the Wage Act. The damages suffered by the individual Rule 23 Class members are small compared to the expense and burden of individual prosecution of this litigation. In addition, class certification is superior because it will prevent the need for unduly duplicative litigation that might result in inconsistent judgments about Defendant's practices.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief as follows:

A.      Issue an order for injunctive relief enjoining Defendant from continuing the unlawful practices, acts, transactions, and conduct complained of herein, including, but not limited to, violating the Wage Act's timely payment mandate by failing to pay Plaintiffs and similarly situated employees all earned wages due and owing them within the time required by

the Wage Act, including within six days of the end of their weekly pay periods, or on or before their dates of discharge;

      B.     Judgment awarding Plaintiffs and all similarly situated employees all late or unpaid wages, treble damages, attorneys' fees, and costs, including as mandated by G.L. c. 149, § 150;

      C.     An award of pre-and post-judgment interest on all amounts awarded at the highest rate allowable by law; and

      D.     All such other and further relief to which Plaintiffs may show themselves to be justly entitled.

## JURY DEMAND

A trial by jury is demanded on all counts so triable.

Respectfully submitted,

PLAINTIFFS DAVID ALBERNAZ, RAPHAEL
ANGULO, JONATHON AUSIELLO, TROY BENOIR,
WAYNE BURCH, OSCAR CARBAJAL, MATTHEW
CONLEY, CESAR DELACRUZ, COREY DONOVAN,
VICTOR FIGUEROA, KYLE FREDERICK, EDDIE
KADEK, ANDREW LEACH, FATJON LOLOCI,
SAMMY MERCADO, KRISTEON MESA, JAVIER
MOLINA, JEFF MORALES, MATTHEW NELSON,
RICHARD OTIS, SOPHEAK OU, JAMES PARI, EARL
REYNOLDS, and SENNA SOR,

By their Attorney,

s/Daniel W. Rice
Daniel W. Rice, BBO # 559269
Harrington Rice & Maglione, LLC
738 Main Street
Hingham, MA 02043
(781) 964-8377
dwr@harringtonrice.com

Dated: July 1, 2024

I attest that this document is a
certified photocopy of an
original on file

Deputy Assistant Clerk    8/20/24

14



# THE COMMONWEALTH OF MASSACHUSETTS
## OFFICE OF THE ATTORNEY GENERAL
### ONE ASHBURTON PLACE
### BOSTON, MASSACHUSETTS 02108

**EXHIBIT 1**

ANDREA JOY CAMPBELL
ATTORNEY GENERAL

(617) 727-2200
(617) 727-4765 TTY
www.mass.gov/ago

June 5, 2024

Daniel W. Rice, Esq.
Harrington Rice & Maglione, LLC
738 Main Street
Hingham, MA 02043

RE:    David Albernaz
       Request for Private Right of Action against MS Walker

Dear Attorney Rice:

Thank you for contacting the Office of the Attorney General's Fair Labor Division.

Massachusetts General Laws Chapter 149, § 150, and Chapter 151, §§ 1B and 20 establish a private right of action for employees who believe they are victims of certain violations of the state wage laws.

This letter is to inform you that we are authorizing you to pursue this matter through a private civil lawsuit. If you elect to sue in civil court, you may bring an action on your own or your clients' behalf, and on behalf of other similarly situated workers.

This office will not pursue an investigation or enforcement at this time.

Sincerely,

Fair Labor Division
Office of the Massachusetts Attorney General
(617) 727-3465



| CIVIL ACTION COVER SHEET | DOCKET NUMBER<br>2482cv648 | Massachusetts Trial Court<br>Superior Court<br>COUNTY |
|---|---|---|

| **Plaintiff** | DAVID ALBERNAZ, RAPHAEL ANGULO, JONATHON AUSIELLO, TROY BENOIR, WAYNE BURCH, OSCAR CARBAJAL, MATTHEW CONLEY, CESAR DELACRUZ, COREY DONOVAN, VICTOR FIGUEROA, KYLE FREDERICK, EDDIE KADEK, ANDREW LEACH, FATJON LOLOCI, SAMMY MERCADO, KRISTEON MESA, JAVIER MOLINA, JEFF MORALES, MATTHEW NELSON, RICHARD OTIS, SOPHEAK OU, JAMES PARI, EARL REYNOLDS, and SENNA SOR | **Defendant:** M.S. WALKER, INC.<br>**ADDRESS:** 775 Everett St, Norwood, MA 02062 |
|---|---|---|
| ADDRESS: | Work performed in Norwood, Massachusetts. | |

| Plaintiff Attorney: | Daniel W. Rice | **Defendant Attorney:** |
|---|---|---|
| ADDRESS: | Harrington Rice & Maglione, LLC | ADDRESS: |
| 738 Main Street | | |
| Hingham, MA 02043 | | |
| BBO: | 559269 | BBO: |

## TYPE OF ACTION AND TRACK DESIGNATION (see instructions section on next page)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| D99 | OTHER EQUITY ACTION | F | ☒ YES   ☐ NO |

*If "Other" please describe: Class action claim for relief against employer payroll practices illegal under Mass. Wage Act (late payments), and for injunctive relief and damages as permitted under G.L. c. 149, §§ 150.

| Is there a claim under G.L. c. 93A? | Is there a class action under Mass. R. Civ. P. 23? |
|---|---|
| ☐ YES   ☐ NO | ☒ YES   ☐ NO |

## STATEMENT OF DAMAGES REQUIRED BY G.L. c. 212, § 3A

The following is a full, itemized and detailed statement of the facts on which the undersigned plaintiff or plaintiff's counsel relies to determine money damages. (Note to plaintiff: for this form, do not state double or treble damages; indicate single damages only.)

### TORT CLAIMS

A. Documented medical expenses to date

    1. Total hospital expenses      _____

    2. Total doctor expenses      _____

    3. Total chiropractic expenses      _____

    4. Total physical therapy expenses      _____

    5. Total other expenses (describe below)      _____

         Subtotal (1-5):    $0.00

B. Documented lost wages and compensation to date      _____

C. Documented property damages to date      _____

D. Reasonably anticipated future medical and hospital expenses      _____

E. Reasonably anticipated lost wages      _____

F. Other documented items of damages (describe below)      _____

*I attest that this document is a certified photocopy of an original on file.*
*Deputy Assistant Clerk  8/20/24*

         TOTAL (A-F):    $0.00

G. Briefly describe plaintiff's injury, including the nature and extent of the injury:

### CONTRACT CLAIMS

☐ This action includes a claim involving collection of a debt incurred pursuant to a revolving credit agreement. Mass. R. Civ. P. 8.1(a).

| Item # | Detailed Description of Each Claim | Amount |
|---|---|---|
| 1. | | |
| | Total | |

Signature of Attorney/Self-Represented Plaintiff: X  s/Daniel W. Rice | Date:   July 1, 2024

**RELATED ACTIONS:** Please provide the case number, case name, and county of any related actions pending in the Superior Court.

### CERTIFICATION UNDER S.J.C. RULE 1:18(5)

I hereby certify that I have complied with requirements of Rule 5 of Supreme Judicial Court Rule 1:18: Uniform Rules on Dispute Resolution, requiring that I inform my clients about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods of dispute resolution.

Signature of Attorney: X   s/Daniel W. Rice | Date:   July 1, 2024

3

COMMONWEALTH OF MASSACHUSETTS

NORFOLK, S.S.                                          SUPERIOR COURT

2482cv 648

---

DAVID ALBERNAZ, RAPHAEL ANGULO,
JONATHON AUSIELLO, TROY BENOIR,
WAYNE BURCH, OSCAR CARBAJAL,
MATTHEW CONLEY, CESAR DELACRUZ,
COREY DONOVAN, VICTOR FIGUEROA,
KYLE FREDERICK, EDDIE KADEK, ANDREW
LEACH, FATJON LOLOCI, SAMMY MERCADO,
KRISTEON MESA, JAVIER MOLINA, JEFF
MORALES, MATTHEW NELSON, RICHARD
OTIS, SOPHEAK OU, JAMES PARI, EARL
REYNOLDS, and SENNA SOR,
Plaintiffs

V.

M.S. WALKER, INC.,
Defendant

July 1, 2024
Motion is Allowed.
( Clerk to notify
Att: mk as filed

---

## **PLAINTIFF'S MOTION TO APPOINT SPECIAL PROCESS SERVER**

Pursuant to Mass. R. Civ. P. 4(c), Plaintiffs move the Court to appoint Bryan Faulkner, of
Quickserv Inc., P.O. Box 869103, Milton, Massachusetts 02186 as Special Process Server in
this action for the purposes of serving the summons and complaint upon Defendant.

Undersigned counsel certifies that the person to be appointed as Special Process Server is
a sworn and bonded constable, highly experienced in the service of process, is over the age of
18, and is not a party to this action.

Plaintiffs state that such an appointment will result in substantial savings in time and cost.

Respectfully submitted,

PLAINTIFFS DAVID ALBERNAZ, RAPHAEL
ANGULO, JONATHON AUSIELLO, TROY
BENOIR, WAYNE BURCH, OSCAR CARBAJAL,
MATTHEW CONLEY, CESAR DELACRUZ,
COREY DONOVAN, VICTOR FIGUEROA,
KYLE FREDERICK, EDDIE KADEK, ANDREW
LEACH, FATJON LOLOCI, SAMMY MERCADO,
KRISTEON MESA, JAVIER MOLINA, JEFF
MORALES, MATTHEW NELSON, RICHARD
OTIS, SOPHEAK OU, JAMES PARI, EARL
REYNOLDS, and SENNA SOR,

By his Attorney:

s/Daniel W. Rice
Daniel W. Rice, BBO # 559269
HARRINGTON, RICE & MAGLIONE, LLC
738 Main Street
Hingham, Massachusetts 02043
(781) 964-8377
dwr@harringtonrice.com

Dated: July 1, 2024

I attest that this document is a
certified photocopy of an
original on file.

Deputy Assistant Clerk    8/29/24

Date Filed 8/19/2024 12:22 PM
Superior Court - Norfolk
Docket Number 2482CV00648

4

Docketed 08/20/2024

COMMONWEALTH OF MASSACHUSETTS

NORFOLK, ss.                                    SUPERIOR COURT DIVISION
                                                OF THE TRIAL COURT

---

**DAVID ALBERNAZ, ET AL.,**

      **Plaintiffs,**

v.                                              CIVIL ACTION NO.: 2482CV00648

**M.S. WALKER, INC.,**

      **Defendant.**

---

TO:    Civil Clerk of the Superior Court
        Norfolk County Superior Court
        650 High Street
        Dedham, MA 02026

**NOTICE OF FILING OF NOTICE OF REMOVAL OF ACTION TO FEDERAL COURT**

PLEASE TAKE NOTICE that pursuant to 28 U.S.C. §§ 1441 and 1446, a Notice of

Removal of Action to Federal Court (with attachments hereto) and a Notice to Counsel of

Removal of Action to Federal Court are being filed this day with the Clerk of the United States

District Court for the District of Massachusetts. Copies of said Notice of Removal and a Notice

to Counsel of Removal are attached hereto as Exhibits 1 and 2, respectively.

Defendant in the above-entitled action, M.S. Walker, Inc. ("Defendant"), upon the filing

of the Notice of Removal and this Notice, has effectuated this removal in accordance with 28

U.S.C. § 1446(d). This Court is respectfully requested to proceed no further with this action

unless and until the case is remanded by order of the United States District Court.

1

Date Filed 8/19/2024 12:22 PM
Superior Court - Norfolk
Docket Number 2482CV00648

Respectfully Submitted,

**M.S. Walker, Inc.,**

By its Attorneys,

/s/ Brendan Sweeney
Keith H. McCown (BBO No. 329980)
Damien M. DiGiovanni (BBO No. 682005)
Brendan T. Sweeney (BBO No. #703992)
MORGAN, BROWN & JOY, LLP
200 State Street, Suite 11A
Boston, MA  02109-2605
(617) 523-6666
kmccown@morganbrown.com
ddigiovanni@morganbrown.com
bsweeney@morganbrown.com

Dated: August 19, 2024

## CERTIFICATE OF SERVICE

I, Brendan T. Sweeney, hereby certify that a copy of the within pleading was served by first class
mail and email upon counsel at the addresses below this 19th day of August, 2024:

Daniel W. Rice, Esq.
Harrington Rice & Maglione, LLC
738 Main Street
Hingham, MA 02043
(781) 964-8377
dwr@harringtonrice.com

/s/ Brendan Sweeney
Brendan T.  Sweeney

I attest that this document is a
certified photocopy of an
original on file.

Deputy Assistant Clerk                8/20/24

2

Date Filed 8/19/2024 12:22 PM
Superior Court - Norfolk
Docket Number 2482CV00648

# EXHIBIT 1

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

---

**DAVID ALBERNAZ, RAPHAEL ANGULO, JONATHON AUSIELLO, TROY BENOIR, WAYNE BURCH, OSCAR CARBAJAL, MATTHEW CONLEY, CESAR DELACRUZ, COREY DONOVAN, VICTOR FIGUROA, KYLE FREDERICK, EDDIE KADEK, ANDREW LEACH, FATJON LOLOCI, SAMMY MERCADO, KRISTEON MESA, JAVIER MOLINA, JEFF MORALES, MATTHEW NELSON, RICHARD OTIS, SOPHEAK OU, JAMES PARI, EARL REYNOLDS, and SENNA SOR,**

        **Plaintiffs,**

**v.**

**M.S. Walker, Inc.,**

        **Defendant.**

**Civil Action No.**

---

TO:   The Honorable Judges of the
       United States District Court
       District of Massachusetts

## NOTICE OF REMOVAL

PLEASE TAKE NOTICE, pursuant to 28 U.S.C. § 1441, *et seq.*, Defendant M.S.

Walker, Inc. ("M.S. Walker" or "Defendant") files this Notice of Removal to remove this action

from the Massachusetts Superior Court in and for Norfolk County, in which said case is now

pending in the name and style *David Albernaz, et al. v. M.S. Walker, Inc.,* Civil Action No. 2482-

cv-00648.

As grounds for this removal, Defendant states as follows:

1

## INTRODUCTION

1.      Plaintiffs, a group of delivery drivers and drivers' helpers employed at Defendant, served Defendant with the attached Summons and Complaint on July 30, 2024. *See* Exhibit A, Summons and Complaint.

2.      The Complaint, which Plaintiffs purport to bring on behalf of a class of "other similarly situated employees" of Defendant, alleges that, beginning in May 2023, employees were laid off on an intermittent, day-to-day basis. Ex. A, at ¶¶ 4, 17. The Plaintiffs, who remain employed with Defendant, further allege that these intermittent day-to-day layoffs each constituted a "discharge" under the Massachusetts Wage Act, and that Defendant did not provide employees with their pay on the dates of alleged discharge. *Id.* at ¶¶ 21-44. Plaintiffs assert that Defendant's conduct constitutes a violation of M.G.L. c. 149, §§ 148 and 150, and seeks treble damages, costs, and attorneys' fees. *Id.* at ¶¶ 4, 6.

## TIMELINESS OF REMOVAL

3.      Defendant was served a copy of the Complaint on July 30, 2024. This Notice is therefore timely filed pursuant to 28 U.S.C. § 1446(b).

## GROUNDS FOR REMOVAL

4.      Removal of this case is proper pursuant to 28 U.S.C. § 1331 because it presents a federal question under Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185.

5.      Although the presence or absence of federal question jurisdiction is generally governed by the "well pleaded complaint" standard, which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint, the doctrine of complete preemption exists as an "independent corollary to the well-

2

Date Filed 8/19/2024 12:22 PM
Superior Court - Norfolk
Docket Number 2482CV00648

pleaded complaint rule." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987); *Rose v. RTN Fed. Credit Union*, 1 F.4th 56, 60 (1st Cir. 2021). This doctrine provides that "if a federal cause of action completely preempts a state cause of action, any complaint that comes within the scope of the federal cause of action necessarily 'arises under' federal law," such that "any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Caterpillar*, 482 U.S. at 393 (internal citations omitted).

6.      Additionally, substantive federal principles permit removal under federal question jurisdiction where at least one of a plaintiff's claims is preempted by Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185. *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 406 n. 5 (1988). Thus, "[i]f the resolution of a state-law claim depends upon the meaning of a collective bargaining agreement, the application of state law…is pre-empted." *Lingle*, 486 U.S. at 399. Importantly, a complaint need not specifically allege a violation of the labor contract to be preempted by Section 301. If the resolution of the dispute is "substantially dependent upon analysis of the terms of [a collective bargaining agreement]," then the dispute is treated as a dispute regarding the collective bargaining agreement and is preempted. *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985). Notably, preemption applies and removal is proper if "resolution of a claim arguably hinges upon an interpretation of the [CBA]." *Rueli v. Baystate Health, Inc.*, 835 F.3d 53, 58 (1st Cir. 2016).

7.      Here, Plaintiffs claim to represent a class of employees who work for Defendant as delivery drivers and drivers' helpers. Plaintiffs and all putative plaintiffs are unionized members of the Teamsters Local 25, International Brotherhood of Teamsters (the "Union"), and are subject to a collective bargaining agreement, which governs the allegations in Plaintiff's

Case 1:24-cv-12124    Document 1    Filed 08/19/24    Page 4 of 6

Complaint and contains a detailed grievance and arbitration provision. A copy of the CBA is attached hereto as Exhibit B.

8.    The gravamen of the Complaint, that employees were supposedly "discharged" intermittently on a day-to-day basis (in many cases, somehow, on consecutive calendar days), necessarily requires an interpretation of many provisions in the CBA to ascertain whether any "discharge" actually occurred. These CBA provisions include but are not limited to the layoff provisions. Ex. B at Article 5, Section 1; Article 14, Section 6. The claim of an alleged "discharge" also implicates an interpretation of (among other possible provisions) many CBA provisions establishing employees' continued employment status, such as M.S. Walker's continuing obligation to deduct dues from the Plaintiffs' pay and remit those dues to the Union (Article 2), Plaintiffs' ongoing seniority rights and continued accrual of seniority (Article 5, Section 1, 3), continued receipt of holiday pay (Article 11), continued availability of vacation time (Article 12), continued receipt of a cell phone stipend (Article 13, Section 25), and M.S. Walker's continued contributions to the employees' benefits funds, including pension and health & welfare (Articles 18, 19). Accordingly, the very heart of the Plaintiffs' state law claim – the issue of a supposed "discharge" triggering timely payment of wages obligations – cannot be resolved without interpreting the CBA to determine whether Plaintiffs were actually "discharged" (they were not). *See Rose v. RTN Fed. Credit Union*, 1 F.4th 56, 61 (1st Cir. 2021) ("If a claim plausibly requires interpretation of one or more provisions of a CBA, it comes within the LMRA's preemptive sweep." (citing *Adames v. Executive Airlines, Inc.*, 258 F.3d 7, 11-12 (1st Cir. 2001))).

9.    For these reasons, this Court has original jurisdiction over the Complaint under 28 U.S.C. § 1331, and, the Defendant may remove the Complaint to this Court under 28 U.S.C. §

1441 because it is a civil action arising under the Constitutions, laws, or treaties of the United States.

## VENUE

10.    Venue is proper in this District and Division under 28 U.S.C. § 1446(a) because this District and Division embraces Norfolk County, Massachusetts, where this action is currently pending in Massachusetts Superior Court. Defendant reserves the right to seek transfer to another district and/or division in accordance with Rule 40.1(f) of the Local Rules of the United States District Court for the District of Massachusetts.

## NOTICE AND RESERVATION OF RIGHTS

11.    Defendant will file a Notice of Filing of Removal of Action to Federal Court and a copy of this Notice of Removal with the Clerk of the Superior Court for Norfolk County, pursuant to 28 U.S.C. § 1446(d), a copy of which is attached hereto as Exhibit C.

12.    Defendant will serve written Notices to Counsel of Removal of this Action to Federal Court, and copies of these Notices of Removal on Counsel pursuant to 28 U.S.C. § 1446(d) are attached hereto as Exhibit D.

13.    Pursuant to Local Rule 81.1(a), Defendant will obtain certified or attested copies of the docket sheet and all pleadings in the State Court Action and will file them in this Court within twenty-eight (28) days.

14.    By filing this Notice of Removal, Defendant is not making a general appearance and is not waiving any defenses and/or grounds for dismissal that may be available to them pursuant to Rule 12 of the Federal Rules of Civil Procedure and/or any other applicable rules, including, but not limited to, those related to service of process, sufficiency of process, venue, or

Case 1:24-cv-12124-PBS    Document 8    Filed 08/22/24    Page 36 of 114

Date Filed 8/19/2024 12:22 PM
Superior Court - Norfolk
Docket Number 2482CV00648    Case 1:24-cv-12124    Document 1    Filed 08/19/24    Page 6 of 6

jurisdiction. Defendant specifically reserves the right to assert any defenses and/or objections to

which it may be entitled.

WHEREFORE, Defendant prays that the above action now pending against it in the

Superior Court for Norfolk County, Massachusetts be removed therefrom to this Court.

Respectfully Submitted,

**M.S. Walker, Inc.,**

By its Attorneys,

/s/ Brendan Sweeney
Keith H. McCown (BBO No. 329980)
Damien M. DiGiovanni (BBO No. 682005)
Brendan T. Sweeney (BBO No. 703992)
MORGAN, BROWN & JOY, LLP
200 State Street, Suite 11A
Boston, MA 02109-2605
(617) 523-6666
kmccown@morganbrown.com
ddigiovanni@morganbrown.com
bsweeney@morganbrown.com

Dated: August 19, 2024

## CERTIFICATE OF SERVICE

I, Brendan T. Sweeney, hereby certify that a copy of the within pleading was served by first class
mail and email upon counsel at the addresses below this 19th day of August, 2024:

Daniel W. Rice, Esq.
Harrington Rice & Maglione, LLC
738 Main Street
Hingham, MA 02043
(781) 964-8377
dwr@harringtonrice.com

/s/ Brendan Sweeney
Brendan T. Sweeney

6

# EXHIBIT A

Case 1:24-cv-12124   Document 1-1   Filed 08/19/24   Page 2 of 17

(TO PLAINTIFF'S ATTORNEY: PLEASE CIRCLE TYPE OF ACTION INVOLVED:
TORT - MOTOR VEHICLE TORT - CONTRACT -
EQUITABLE RELIEF – OTHER)

## COMMONWEALTH OF MASSACHUSETTS

NORFOLK, ss.

DAVID ALBERNAZ, RAPHAEL ANGULO, JONATHON
AUSIELLO, TROY BENOIR, WAYNE BURCH, OSCAR
CARBAJAL, MATTHEW CONLEY, CESAR DELACRUZ,
COREY DONOVAN, VICTOR FIGUEROA, KYLE
FREDERICK, EDDIE KADEK, ANDREW LEACH, FATJON
LOLOCI, SAMMY MERCADO, KRISTEON MESA, JAVIER
MOLINA, JEFF MORALES, MATTHEW NELSON,
RICHARD OTIS, SOPHEAK OU, JAMES PARI, EARL
REYNOLDS, and SENNA SOR,             , Plaintiff(s)

SUPERIOR COURT
CIVIL ACTION

NO.    2482CV00648

v.

## M.S. WALKER, INC.,
                                              , Defendant(s)

### SUMMONS

To the above-named Defendant:

Daniel W. Rice
Harrington Rice & Maglione, LLC
738 Main Street
Hingham, MA 02043

You are hereby summoned and required to serve upon _____,
plaintiff's attorney, whose address is _____,
an answer to the complaint which is herewith served upon you, within 20 days after service of this
summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken
against you for the relief demanded in the complaint. You are also required to file your answer to the
complaint in the office of the Clerk of this court at Dedham either before service upon the plaintiff's
attorney or within a reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim
which you may have against the plaintiff which arises out of the transaction or occurrence that is the
subject matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other
action.

WITNESS, Heidi E. Brieger    Esquire , at ___Hingham___ the ___30th___

day of ___July___, in the year of our Lord two thousand and ___2024___

                                                              Clerk.

NOTES:
1. This summons is issued pursuant to Rules 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all such defendants should appear in the caption.
   If a separate summons is used for each such defendant, each should be addressed to the particular defendant.

F-33

Case 1:24-cv-12124-PBS    Document 8    Filed 08/22/24    Page 39 of 114
Date Filed 8/19/2024 12:22 PM
Superior Court - Norfolk
Docket Number 2482CV00648    Case 1:24-cv-12124    Document 1-1    Filed 08/19/24    Page 3 of 17

## PROOF OF SERVICE OF PROCESS

I hereby certify and return that on .........................................., 20      , I served a copy of
the within summons, together with a copy of the complaint in this action, upon the within-named
defendant, in the following manner (See Mass. R. Civ. P. 4 (d) (1–5):

.............................................................................................................................................................

.............................................................................................................................................................

.............................................................................................................................................................

Dated:                         , 20          .............................................................................................

N.B.   TO PROCESS SERVER:-
       PLEASE PLACE DATE YOU MAKE SERVICE ON DEFENDANT IN
       THIS BOX ON THE ORIGINAL AND ON COPY SERVED ON
       DEFENDANT.

|                              |
|------------------------------|
| , 20                         |

COMMONWEALTH OF MASSACHUSETTS

NORFOLK, ss.

SUPERIOR COURT
CIVIL ACTION

NO.

........................., Plaintiff

v.

........................., Defendant

SUMMONS

(Mass. R. Civ. P.4)

COMMONWEALTH OF MASSACHUSETTS

NORFOLK, S.S.                                        SUPERIOR COURT

---

DAVID ALBERNAZ, RAPHAEL ANGULO,
JONATHON AUSIELLO, TROY BENOIR,
WAYNE BURCH, OSCAR CARBAJAL,
MATTHEW CONLEY, CESAR DELACRUZ,
COREY DONOVAN, VICTOR FIGUEROA,
KYLE FREDERICK, EDDIE KADEK, ANDREW
LEACH, FATJON LOLOCI, SAMMY MERCADO,
KRISTEON MESA, JAVIER MOLINA, JEFF
MORALES, MATTHEW NELSON, RICHARD
OTIS, SOPHEAK OU, JAMES PARI, EARL
REYNOLDS, and SENNA SOR,
Plaintiffs

V.

M.S. WALKER, INC.,
Defendant

---

## COMPLAINT AND JURY DEMAND

### INTRODUCTION

1.      This is a class action brought by Plaintiffs on behalf of themselves and all other

similarly situated employees against Defendant M.S. Walker, Inc. ("Defendant"). They seek to

enforce their rights for the timely payment of earned wages as required by the Massachusetts

Wage Act, G.L. c. 149, § 148 ("the Wage Act"), and to impose mandatory penalties for

Defendant's repeated violations of the Wage Act's timely payment provision.

2.      The Wage Act requires covered employers to pay all earned wages to employees

on their day of discharge. *Id.*

3.      The Wage Act mandates that employers pay all wages owed to employees on their

day of discharge to address the immediate financial insecurity and potential hardship faced by

Date Filed 8/19/2024 12:22 PM
Superior Court - Norfolk
Docket Number 2482CV00648

Case 1:24-cv-12124-PBS    Document 8    Filed 08/22/24    Page 41 of 114
Case 1:24-cv-12124    Document 1-1    Filed 08/19/24    Page 5 of 17

employees upon termination. This requirement ensures that employees can meet their essential financial obligations, such as housing and medical expenses, without delay, reflecting the legislative intent to protect workers who often depend on timely wages for their daily support. *Reuter v. City of Methuen*, 489 Mass. 465. (2022).

4.    Summarily, Defendant has repeatedly violated this law by discharging Plaintiffs and similarly situated employees without paying them their earned wages on their days of discharge. As set forth below, after discharging Plaintiffs and similarly situated employees, Defendant frequently rehires them, only to discharge them again without paying them their earned wages on their day of discharge, thereby repeating its violation of the Wage Act. For each occasion on which it has discharged Plaintiffs and similarly situated employees without paying them all earned wages due on their days of discharge, Defendant is liable under the Wage Act for three times the amount of the earned wages due. G.L. c. 149, § 150.

5.    The proposed class meets the criteria for class certification under G.L. c. 149, § 150, and Mass. R. Civ. P. 23.

6.    The named Plaintiffs are seeking payment of their unpaid wages, treble damages, interest, attorneys' fees, and costs, as mandated by G.L. c. 149, § 150.

7.    Significantly, a claim for penalties under the Massachusetts Wage Act is not preempted by Section 301 of the LMRA, as it involves the timing of wage payments set by state law, independent of any collective bargaining agreement. *Lawless v. Steward Health Care System LLC*, 894 F.3d 9, 19 (1st Cir. 2018); *Livadas v. Bradshaw*, 512 U.S. 107, 124 (1994). Accordingly, any attempt by Defendant to excuse its obligations under the Wage Act, or to avoid penalties for persistently violating this law, by claiming preemption by a collective bargaining agreement, is wholly without merit.

Case 1:24-cv-12124-PBS    Document 8    Filed 08/22/24    Page 42 of 114

Date Filed 8/19/2024 12:22 PM
Superior Court - Norfolk
Docket Number 2482CV00648    Case 1:24-cv-12124    Document 1-1    Filed 08/19/24    Page 6 of 17

## PARTIES

8.    Defendant M.S. Walker, Inc. ("Defendant" or "M.S. Walker") is a corporation organized under the laws of the Commonwealth of Massachusetts, having a principal place of business in Norwood, Norfolk County, Commonwealth of Massachusetts.

9.    Plaintiffs David Albernaz, Raphael Angulo, Jonathon Ausiello, Troy Benoir, Wayne Burch, Oscar Carbajal, Matthew Conley, Cesar Delacruz, Corey Donovan, Victor Figueroa, Kyle Frederick, Eddie Kadek, Andrew Leach, Fatjon Loloci, Sammy Mercado, Kristeon Mesa, Javier Molina, Jeff Morales, Matthew Nelson, Richard Otis, Sopheak Ou, James Pari, Earl Reynolds, and Senna Sor ("Plaintiffs") are employees of Defendant M.S. Walker.

### FACTUAL ALLEGATIONS

10.    On its website, Defendant describes itself as a wine and spirits importer and distributor, a spirit bottler, and a national supplier with direct operations in Massachusetts, New York, New Jersey, and Rhode Island, and brokerage operations in Maine, New Hampshire, and Vermont.

11.    Defendant employs Plaintiffs and similarly situated employees in Norwood, Massachusetts, in connection to its business, as delivery drivers and drivers' helpers.

12.    Defendant pays Plaintiffs and similarly situated employees at the facilities it operates in Massachusetts hourly wages for their work on a weekly basis, which runs from Sunday to Saturday.

13.    Defendant's employment of Plaintiffs and similarly situated employees is subject to the Massachusetts Wage Act, G.L. c. 149, § 148 ("the Wage Act").

14.    Under the Wage Act, when an employer discharges an employee, it must pay the employee all earned wages owed on the "day of his discharge," including hourly wages, overtime, vacation, and holiday pay.

3

15.    Late payment of earned wages does not excuse a violation of the Wage Act's timely payment mandates for paying weekly wages or all earned wages on the day of discharge, or the penalties it imposes for late payment. *Reuter v. City of Methuen*, 489 Mass. 465. (2022); G.L. c. 149, § 150.

16.    Defendant has engaged in a cruel and consistent practice of discharging Plaintiffs and similarly situated employees without paying them all wages due on their respective days of discharge, in violation of the Wage Act.

17.    Under this practice, which commenced in or about May 2023, Defendant, through its agents, on short notice, informs Plaintiffs and similarly situated employees that they are being "laid off," and are not to return to work until further notice.

18.    Significantly, Defendant has the sole and exclusive authority to rehire laid-off employees, with no obligation to do so, leaving Plaintiffs and similarly situated employees without any guarantee of resuming employment after a layoff.

19.    Upon information and belief, Defendant has cruelly engaged in this practice on a persistent basis to save money, without regard to the impact the last-minute persistent discharges have on the employees affected, thereby creating severe insecurity, loss of income, and instability for Plaintiff's and similarly situated employees impacted. Hereinafter, this will be referred to as Defendant's "Discharge Policy" or "DP."

20.    For example, pursuant to the DP:

21.    Defendant discharged Plaintiff David Albernaz from employment without paying him all wages owed on the following dates: November 22, 2023; January 5, 2024; January 11, 2024; January 22, 2024; January 24, 2024; January 25, 2025; January 25, 2026; February 1, 2024; and March 7, 2024.

4

22.    Defendant discharged Plaintiff Raphael Angulo from employment without paying him all wages owed on the following dates: May 4, 2023; May 5, 2023; May 30, 2023; August 3, 2023; August 10, 2023; August 17, 2023; August 18, 2023; August 24, 2023; September 5, 2023; September 14, 2023; September 21, 2023; September 22, 2023; December 7, 2023; December 26, 2023; January 3, 2024; January 4, 2024; January 9, 2024; January 10, 2024; January 18, 2024; January 23, 2024; January 24, 2024; January 25, 2024; January 26, 2024; February 1, 2024; February 2, 2024; February 8, 2024; February 13, 2024; February 14, 2024; February 27, 2024; February 28, 2024; February 29, 2024; March 1, 2024; March 7, 2024; March 8, 2024; March 14, 2024; March 15, 2024; March 21, 2024; March 22, 2024; April 4, 2024; April 5, 2024; April 9, 2024; April 10, 2024; April 11, 2024; April 12, 2024; April 16, 2024; April 25, 2024; May 2, 2024; May 9, 2024; and May 23, 2024.

23.    Defendant discharged Plaintiff Jonathan Ausiello from employment without paying him all wages owed on the following dates: May 3, 2023; May 18, 2023; August 9, 2023; August 17, 2023; August 23, 2023; September 5, 2023; September 13, 2023; September 20, 2023; November 21, 2023; January 2, 2024; January 17, 2024; January 29, 2024; February 5, 2024; February 7, 2024; February 12, 2024; February 19, 2024; February 22, 2024; February 28, 2024; March 6, 2024; March 13, 2024; March 20, 2024; April 3, 2024; April 8, 2024; April 24, 2024; May 8, 2024; and May 23, 2024.

24.    Defendant discharged Plaintiff Troy Benoir from employment without paying him all wages owed on the following dates: November 22, 2023; January 2, 2024; January 18, 2024; January 19, 2024; January 25, 2024; February 13, 2024; February 23, 2024; March 21, 2024; April 4, 2024; and April 5, 2024.

25.    Defendant discharged Plaintiff Wayne Burch from employment without paying him all wages owed on February 28, 2024, and on other occasions.

5

26.     Defendant discharged Plaintiff Oscar Carbajal from employment without paying him all wages owed on the following date: January 22, 2024.

27.     Defendant discharged Plaintiff Matthew Conley from employment without paying him all wages owed on the following dates: May 8, 2024, and May 14, 2024.

28.     Defendant discharged Plaintiff Cesar Delacruz from employment without paying him all wages owed on the following dates: May 3, 2023; January 9, 2024; January 18, 2024; January 22, 2024; January 29, 2023; February 7, 2024; March 20, 2024; April 11, 20244; and May 8, 2024.

29.     Defendant discharged Plaintiff Corey Donovan from employment without paying him all wages owed on the following dates: February 22, 2023; February 23, 2023; February 29, 2023; March 1, 2023; March 7, 2023; March 8, 2023; March 14, 2023; March 15, 2023; March 21, 2023; March 22, 2023; March 28, 2023; April 4, 2023; April 5, 2023; April 11, 2023; April 12, 2023; April 18, 2023; April 19, 2023; April 25, 2023; April 26, 2023; May 2, 2023; May 3, 2023; May 9, 2023; May 10, 2023; May 16, 2023; May 17, 2023; May 23, 2023; May 24, 2023; May 30, 2023; and May 31, 2023.

30.     Defendant discharged Plaintiff Victor Figueroa from employment without paying him all wages owed on the following dates: May 4, 2023; May 5, 2023; June 27, 2023; June 28, 2023; June 29, 2023; June 30, 2023; September 8, 2023; September 15, 2023; September 22, 2023; January 10, 2024; January 11, 2024; January 18, 2024; January 23, 2024; January 24, 2024; January 25, 2024; January 26, 2024; January 31, 2024; February 1, 2024; February 8, 2024; February 23, 2024; and February 29, 2024.

31.     Defendant discharged Plaintiff Kyle Frederick from employment without paying him all wages owed on the following dates: September 7, 2023; November 21, 2023; January 17,

6

2024; January 24, 2024; February 9, 2024; February 22, 2024; March 20, 2024; and April 3, 2024.

32.    Defendant discharged Plaintiff Eddie Kadek from employment without paying him all wages owed on the following dates: January 11, 2024; January 18, 2024; January 23, 2024; January 24, 2024; January 25, 2024; January 26, 2024; February 1, 2024; February 13, 2024; February 29, 2024; and May 9, 2024.

33.    Defendant discharged Plaintiff Andrew Leach from employment without paying him all wages owed on the following dates: November 22, 2023; December 7, 2023; December 14, 2023; December 21, 2023; January 23, 2024; January 30, 2024; February 23, 2024; February 29, 2024; March 7, 2024; March 14, 2024; March 21, 2024; April 4, 2024; April 19, 2024; April 25, 2024; May 2, 2024; May 9, 2024; and May 23, 2024.

34.    Defendant discharged Plaintiff Fatjon Loloci from employment without paying him all wages owed on the following dates: May 4, 2023; May 5, 2023; August 10, 2023; August 11, 2023; August 17, 2023; August 24, 2023; September 8, 2023; September 14, 2023; January 10, 2024; January 11, 2024; January 18, 2024; January 23, 2024; January 24, 2024; January 25, 2024; February 1, 2024; February 2, 2024; February 8, 2024; February 29, 2024; March 7, 2024; March 8, 2024; March 21, 2024; March 22, 2024; April 5, 2024; April 9, 2024; April 11, 2024; and April 25, 2024.

35.    Defendant discharged Sammy Mercado from employment without paying him all wages owed on June 11, 2024, and other occasions.

36.    Defendant discharged Plaintiff Kristeon Mesa from employment without paying him all wages owed on the following dates: July 20, 2023; August 3, 2023; August 9, 2023; August 10, 2023; August 11, 2023; August 16, 2023; August 17, 2023; August 18, 2023; August 23, 2023; August 24, 2023; September 8, 2023; September 14, 2023; September 20, 2023;

7

September 21, 2023; September 22, 2023; October 12, 2023; October 13, 2023; November 2, 2023; December 7, 2023; December 8, 2023; December 21, 2023; January 3, 2024; January 4, 2024; January 9, 2024; January 10, 2024; January 11, 2024; January 12, 2024; January 16, 2024; January 23, 2024; January 24, 2024; January 25, 2024; January 26, 2024; February 8, 2024; February 9, 2024; February 15, 2024; February 22, 2024; February 29, 2024; March 7, 2024; March 14, 2024; March 15, 2024; March 21, 2024; April 4, 2024; April 5, 2024; April 9, 2024; April 10, 2024; April 11, 2024; April 12, 2024; April 19, 2024; April 25, 2024; April 26, 2024; May 2, 2024; May 9, 2024; May 10, 2024; May 23, 2024; and May 24, 2024.

37.    Defendant discharged Plaintiff Javier Molina from employment without paying him all wages owed on the following dates: March 21, 2023; March 22, 2023; April 4, 2023; April 5, 2023; April 11, 2023; April 12, 2023; April 16, 2023; April 25, 2023; April 30, 2023; May 9, 2023; and May 24, 2023.

38.    Defendant discharged Plaintiff Jeff Morales from employment without paying him all wages owed on the following dates: December 14, 2023; January 4, 2024; January 17, 2024; January 24, 2024; February 15, 2024; February 21, 2024; February 29, 2024; April 3, 2024; and May 9, 2024.

39.    Defendant discharged Plaintiff Matthew Nelson from employment without paying him all wages owed on the following dates: September 14, 2023; February 1, 2024; February 22, 2024; and February 29, 2024.

40.    Defendant discharged Plaintiff Richard Otis from employment without paying him all wages owed on the following dates: August 24, 2023; August 31, 2023; September 7, 2023; September 14, 2023; September 21, 2023; September 28, 2023; December 21, 2023; January 18, 2024; January 25, 2024; February 1, 2024; February 8, 2024; February 22, 2024;

Case 1:24-cv-12124-PBS    Document 8    Filed 08/22/24    Page 48 of 114

Date Filed 8/19/2024 12:22 PM
Superior Court - Norfolk
Docket Number 2482CV00648    Case 1:24-cv-12124    Document 1-1    Filed 08/19/24    Page 12 of 17

February 29, 2024; March 7, 2024; March 14, 2024; March 28, 2024; April 11, 2024; and April 18, 2024.

41.    Defendant discharged Plaintiff Sopheak Ou from employment without paying him all wages owed on the following dates: May 4, 2023; August 4, 2023; January 12, 2024; January 18, 2024; February 7, 2024; February 15, 2024; February 23, 2024; March 1, 2024; March 14, 2024; March 21, 2024; April 3, 2024; April 19, 2024; April 25, 2024; May 2, 2024; May 9, 2024; and May 24, 2024.

42.    Defendant discharged Plaintiff James Pari from employment without paying him all wages owed on the following date: December 20, 2023.

43.    Defendant discharged Plaintiff Earl Reynolds from employment without paying him all wages owed on the following dates: November 22, 2023; December 31, 2023, to January 6, 2024; January 7, 2024, to January 13, 2024; January 18, 2024; January 25, 2024; January 26, 2024; February 1, 2024; February 4, 2024, to February 10, 2024; February 13, 2024; March 7, 2024; March 21, 2024; April 11, 2024; April 12, 2024; and May 9, 2024.

44.    Defendant discharged Plaintiff Sena Sor from employment without paying him all wages owed on the following dates: May 9, 2024; May 23, 2024; and May 24, 2024.

45.    Defendant's failure to pay wages on the day of discharge blatantly violates the clear mandates of the Wage Act and undermines the policy goals intended by this legislation. The prompt payment of wages upon discharge is crucial to mitigate the financial insecurity and immediate hardships that employees face upon termination. This requirement ensures that employees can meet essential financial obligations such as housing and medical expenses without delay, thereby protecting their daily support and well-being. Defendant's persistent disregard for this mandate through its DP shows a callous indifference to these critical protections.

9

46.    Compliance with the Wage Act requires minimal effort from Defendant; it simply needs to issue paychecks to impacted employees to pay them their earned wages. It is both cruel and thoughtless for Defendant to engage in this practice without taking this simple step, thereby subjecting employees to unnecessary financial distress and instability.

## JURISDICTION

47.    This Court has jurisdiction over this Complaint pursuant to G.L. c. 149, § 150, which permits violations of G.L. c. 149, § 148 to be remedied by injunctive relief on behalf of Plaintiffs and all similarly situated employees.

## VENUE

48.    Venue is proper in this Court because Defendant maintains a usual place of business in Norfolk County. G.L. c. 223, § 1.

## COUNT I

### VIOLATION OF THE MASSACHUSETTS WAGE ACT
### FAILURE TO PAY ALL EARNED WAGES ON THE DAY OF DISCHARGE

#### *Plaintiffs v. Defendant M.S. Walker*

49.    Plaintiffs incorporate by reference all allegations herein.

50.    Under the Wage Act, Defendant was obligated to pay Plaintiffs and all similarly situated employees all their earned wages on their days of discharge, which are set forth above.

51.    By application of its Discharge Policy (DP), Defendant has violated the Wage Act because it did not pay them all their earned wages on the day(s) of their discharge, as required by the Wage Act.

52.    This claim is brought pursuant to G.L. c. 149, § 150 on behalf of the named Plaintiffs and all similarly situated employees.

53.    Plaintiffs have been harmed, injured, and damaged because of Defendant's violation of the Wage Act.

54.    Plaintiffs have satisfied all administrative prerequisites to suit under the Wage Act. (Ex. 1.)

**COUNT II**
**CLASS ACTION CLAIM**
**Violation of the Massachusetts Wage Act**

55.    All allegations made here are repeated and incorporated by reference.

56.    Plaintiffs bring Count I of this Complaint on behalf of themselves and similarly situated employees of Defendant as a putative Rule 23 class action pursuant to G.L. c. 149, § 150 and Rules 23(a) and (b) of the Massachusetts Rules of Civil Procedure for Defendant's violations of the law. The putative Rule 23 Class Plaintiffs propose is defined as follows: All current and former Massachusetts employees of the Defendant who, from July 1, 2021, to the present, were not paid all due earned wages on their discharge date, in violation of the Wage Act.

57.    The persons in the Rule 23 Class identified above are so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown at this time, upon information and belief, Defendant employed more than 40 persons who satisfied the definition of the Rule 23 Class.

58.    There are questions of law and fact common to the Rule 23 Class that predominate over any questions solely affecting individual members.

59.    Plaintiffs' claims are typical of those of the Rule 23 Class. Plaintiffs, like other members of the Rule 23 Class, were subject to Defendant's illegal practice in not paying wages on the day of discharge.

11

60.    Plaintiffs will fairly and adequately protect the interests of the Rule 23 Class and have retained counsel experienced in complex wage and hour class and collective action litigation. There is no conflict between Plaintiffs and the Rule 23 Class members.

61.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage-and-hour litigation where individual plaintiffs lack the financial resources to vigorously prosecute separate lawsuits in federal Court against a large corporate defendant.

62.    Class certification of Counts I is appropriate under Mass. R. Civ. P. 23(b)(3) because questions of law and fact common to the Rule 23 Class predominate over any questions affecting only individual members and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Defendant's common and uniform policies and practices denied the Rule 23 Class proper and timely payment of wages Defendant was mandated to pay them under the Wage Act. The damages suffered by the individual Rule 23 Class members are small compared to the expense and burden of individual prosecution of this litigation. In addition, class certification is superior because it will prevent the need for unduly duplicative litigation that might result in inconsistent judgments about Defendant's practices.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief as follows:

A.    Issue an order for injunctive relief enjoining Defendant from continuing the unlawful practices, acts, transactions, and conduct complained of herein, including, but not limited to, violating the Wage Act's timely payment mandate by failing to pay Plaintiffs and similarly situated employees all earned wages due and owing them within the time required by

12

Case 1:24-cv-12124-PBS     Document 8     Filed 08/22/24     Page 52 of 114

Date Filed 8/19/2024 12:22 PM
Superior Court - Norfolk
Docket Number 2482CV00648     Case 1:24-cv-12124   Document 1-1   Filed 08/19/24   Page 16 of 17

the Wage Act, including within six days of the end of their weekly pay periods, or on or before their dates of discharge;

 B. Judgment awarding Plaintiffs and all similarly situated employees all late or unpaid wages, treble damages, attorneys' fees, and costs, including as mandated by G.L. c. 149, § 150;

 C. An award of pre-and post-judgment interest on all amounts awarded at the highest rate allowable by law; and

 D. All such other and further relief to which Plaintiffs may show themselves to be justly entitled.

13

## JURY DEMAND

A trial by jury is demanded on all counts so triable.

Respectfully submitted,

PLAINTIFFS DAVID ALBERNAZ, RAPHAEL
ANGULO, JONATHON AUSIELLO, TROY BENOIR,
WAYNE BURCH, OSCAR CARBAJAL, MATTHEW
CONLEY, CESAR DELACRUZ, COREY DONOVAN,
VICTOR FIGUEROA, KYLE FREDERICK, EDDIE
KADEK, ANDREW LEACH, FATJON LOLOCI,
SAMMY MERCADO, KRISTEON MESA, JAVIER
MOLINA, JEFF MORALES, MATTHEW NELSON,
RICHARD OTIS, SOPHEAK OU, JAMES PARI, EARL
REYNOLDS, and SENNA SOR,

By their Attorney,

s/Daniel W. Rice
Daniel W. Rice, BBO # 559269
Harrington Rice & Maglione, LLC
738 Main Street
Hingham, MA 02043
(781) 964-8377
dwr@harringtonrice.com

Dated: July 1, 2024

14

# EXHIBIT B

Case 1:24-cv-12124-PBS    Document 8    Filed 08/22/24    Page 55 of 114

Date Filed 8/19/2024 12:22 PM
Superior Court - Norfolk
Docket Number 2482CV00648    Case 1:24-cv-12124    Document 1-2    Filed 08/19/24    Page 2 of 48



# A G R E E M E N T

## -BETWEEN-

## TEAMSTERS LOCAL 25
## INTERNATIONAL BROTHERHOOD OF TEAMSTERS

### and

## M.S. WALKER, INC.

### For The Period

**November 1, 2022 through October 31, 2027**

Thomas G. Mari
President/Principal Officer

Steven J. South
Secretary-Treasurer

Printed & Assembled by
Teamsters Local 25
Office Staff

# Table of Contents

AGREEMENT.................................................................................................. 1

ARTICLE I .................................................................................................... 1

   SCOPE OF AGREEMENT ........................................................................ 1

ARTICLE II................................................................................................... 2

   UNION RECOGNITION AND SECURITY ............................................ 2

ARTICLE III ................................................................................................. 5

   STEWARD ................................................................................................ 5

ARTICLE IV ................................................................................................. 5

   LEAVE OF ABSENCE ............................................................................. 5

ARTICLE V................................................................................................... 7

   SENIORITY .............................................................................................. 7

ARTICLE VI ................................................................................................. 10

   MAINTENANCE OF STANDARDS ...................................................... 10

ARTICLE VII................................................................................................ 10

   GRIEVANCE PROCEDURE .................................................................. 10

ARTICLE VII................................................................................................ 12

   PROTECTION OF RIGHTS ................................................................... 12

ARTICLE IX ................................................................................................. 12

   DISCHARGE AND SUSPENSION ........................................................ 12

ARTICLE X................................................................................................... 13

   PAYROLL PERIOD ................................................................................ 13

ARTICLE XI ................................................................................................. 13

   SUNDAY AND HOLIDAYS................................................................... 13

ARTICLE XII................................................................................................ 14

   VACATIONS ........................................................................................... 14

ARTICLE XIII............................................................................................... 17

   MISCELLANEOUS ................................................................................ 17

ARTICLE XIV .............................................................................................. 23

   HOURS OF WORK AND OVERTIME ................................................. 23

ARTICLE XV................................................................................................ 27

   WAGES AND ALLOWANCES.............................................................. 27

ARTICLE XVI .............................................................................................. 28

   PAID FOR TIME .................................................................................... 28

ARTICLE XVII............................................................................................. 29

   NO STRIKE CLAUSE ............................................................................ 29

ARTICLE XVIII............................................................................................ 29

HEALTH AND WELFARE FUND................................................................................. 29

ARTICLE XIX .......................................................................................................... 33

NEW ENGLAND TEAMSTERS AND TRUCKING INDUSTRY PENSION FUND ................... 33

ARTICLE XX............................................................................................................ 36

SEPARABILITY AND SAVINGS PROVISIONS .............................................................. 36

ARTICLE XXI .......................................................................................................... 36

EMERGENCY REOPENING........................................................................................ 36

ARTICLE XXII .......................................................................................................... 37

ARTICLE XXIII.......................................................................................................... 37

SYMPATHETIC ACTION ........................................................................................... 37

ARTICLE XXIV ......................................................................................................... 37

NON DISCRIMINATION ............................................................................................ 37

ARTICLE XXV........................................................................................................... 38

EMPLOYEE VOLUNTARY PRE-TAX CONTRIBUTION TO LOCAL 25 NEW ENGLAND
TEAMSTERS SAVINGS AND INVESTMENT PLAN ........................................................ 38

ARTICLE XXVI ......................................................................................................... 38

ANTI-TERRORISM CLAUSE ...................................................................................... 38

ARTICLE XXVII ........................................................................................................ 38

MILITARY SERVICE HEALTH SERVICES & INSURANCE COVERAGE ............................. 38

ARTICLE XXVIII........................................................................................................ 39

MANAGEMENTS RIGHTS CLAUSE ............................................................................ 39

ARTICLE XXIX ......................................................................................................... 39

GROUP LEGAL SERVICES FUND............................................................................... 39

ARTICLE XXX........................................................................................................... 41

TERMINATION AND RENEWAL ................................................................................. 41

SCHEDULE A............................................................................................................ 43



Date Filed 8/19/2024 12:22 PM
Superior Court - Norfolk
Docket Number 2482CV00648

Case 1:24-cv-12124-PBS    Document 8    Filed 08/22/24    Page 58 of 114
Case 1:24-cv-12124  Document 1-2  Filed 08/19/24  Page 5 of 48

# AGREEMENT

This Agreement made this 1st day of November 2022, by and between M.S. WALKER, INC., hereinafter called the "Employer" and the TEAMSTERS LOCAL UNION NO. 25, affiliated with the International Brotherhood of Teamsters, hereinafter called the "Union" agree to be bound by terms and provisions of this Agreement.

## ARTICLE 1
### SCOPE OF AGREEMENT

a)   The execution of this Agreement on the part of the Employer shall cover all operations of the Employer within, into and out of the area herein.

     All operations and work covered herein shall be performed exclusively by employees covered by this Agreement.

b)   This Agreement shall be binding upon the parties hereto, their heirs, successors, administrators, executors, and assigns. In the event an entire operation, or any part thereof, is sold leased, transferred or taken over by sale, transfer, lease or assignment, receivership, bankruptcy proceedings, or is taken over my management control, such operation shall continue to be subject to the terms and conditions of this Agreement for the life thereof. On the sale transfer, or lease of any individual run or runs, only the specific provisions of this Agreement shall prevail. It is understood by this section, that the parties hereto shall not use any leasing device to a third party to evade this Agreement.

     The employer shall give notice of the existence of this Agreement to any heir, transferee, purchaser, lessee, assignee, etc., of the operations covered by this Agreement or any part thereof. Such notice shall be in writing with a copy to the Union not less than thirty (30) days prior to the effective date of sale or transfer. No part of the work or operations covered by this Agreement shall be sublet, transferred or in any other manner disposed of without prior agreement of the Union.

c)   If the Employer contemplates opening or closing any plant within the jurisdiction of the Union, said Employer shall notify the Union at least thirty (30) days prior to making such change.

     In the event the Employer fails to give the notice herein required and fails to require the purchaser, the transferee, or lessee to assume the obligations of this contract, the Employer shall be liable to the Union and to the employees covered for all damages sustained as a result of such failure to give notice of such failure to require assumption of the terms of this contract.

1

Case 1:24-cv-12124-PBS     Document 8     Filed 08/22/24     Page 59 of 114

Date Filed 8/19/2024 12:22 PM
Superior Court - Norfolk
Docket Number 2482CV00648     Case 1:24-cv-12124   Document 1-2   Filed 08/19/24   Page 6 of 48

d)  In all cases, hired or leased equipment shall be operated by an employee of the Employer. The Employer expressly reserves the right to control the manner, means and details of, and by which the owner-operator performs this service, as well as the ends to be accomplished.

e).  Acquisition or Purchase. If MS Walker acquires or purchases control of the business of another Company including control by an I.C.C. Order, then the employees of the Company so acquired or purchased shall be placed at the bottom of the acquiring or purchasing Company's seniority roster in the order of their payroll or company seniority with the former company.

## ARTICLE 2
### UNION RECOGNITION AND SECURITY

a)  The Employer recognizes and acknowledges that the Union is the exclusive representative of all employees in the classifications of work covered by this Agreement for the purpose of collective bargaining as provided by the Labor-Management Relations Act of 1947, as amended.

b)  These classifications covered shall include drivers, helpers, checkers/receivers, yard men/shifters, porters and truck cleaners.

b)  All present employees who are members of the Local Union on the effective date of this subsection or on the date of execution of this Agreement, whichever is the later, shall remain members of the Local Union in good standing as a condition of employment. All present employees who are not members of the Local Union and all employees who are hired hereafter shall become and remain members in good standing of the Local Union as a condition of employment on and after the 31st day following the beginning of their employment or on and after the 31st day following the effective date of this subsection or the date of this Agreement, whichever is the later.

c)  When the Employer needs additional employees, said Employer shall give the Local Union equal opportunity with all other sources to provide suitable applicants, but the Employer shall not be required to hire those referred by the Local Union.

If employees are hired through an employment agency, the Employer shall pay the employment agency fee, if any, due from the employee. However, if the Local Union has been given equal opportunity to furnish employees as provided herein, and if the employee is retained through the probationary period, this fee need not be paid until the thirty-first (31st) day of employment.

d)  If, during the life of this Agreement, the Labor-Management Relations Act of 1947, as amended, is modified so as to permit the inclusion of the Union Security provisions formerly in effect and accepted as industry practice, those provisions shall automatically become effective and a part of this Agreement. The rights of the parties under the Labor-Management Relations Act of 1947, as amended, shall not be modified or restricted by any of the provisions of this Agreement. Nothing contained in this Agreement shall be construed so as to require the Employer or employees to violate any applicable law.

e)  Supervisory personnel of the Employer shall be restricted from performing the work which is recognized as the work of the employees covered by this Agreement except as otherwise provided in Article V herein.

2

Date Filed 8/19/2024 12:22 PM
Superior Court - Norfolk
Docket Number 2482CV00648

Case 1:24-cv-12124-PBS    Document 8    Filed 08/22/24    Page 60 of 114
Case 1:24-cv-12124    Document 1-2    Filed 08/19/24    Page 7 of 48

f)     No later than February 28, 2018, the Company shall discontinue the use of any and all temp agency employees (including but not limited to" labor pool") to perform bargaining unit work. All bargaining unit work shall be performed by members of the bargaining unit. This shall include drivers, helpers, and any other classification that is now or in the future represented by Teamsters Local 25. The Company shall be allowed to utilize spare helpers that are members of Teamsters Local 25 in good standing. The number of employees on the seniority list shall be maintained at the following levels:

Effective November 1, 2022, the Company shall hire five (5) permanent employees and shall guarantee a seniority list of seventy eight (78) employees. The Company shall put at least one (1) non CDL candidate on the list.

Effective November 1, 2023, the Company shall hire five (5) permanent employees and shall guarantee a seniority list of eighty three (83) employees. The Company shall put at least one (1) non CDL candidate on the list.

Effective November 1, 2024, the Company shall hire five (5) permanent employees and shall guarantee a seniority list of eighty eight (88) employees. The Company shall put at least one (1) non CDL candidate on the list.

Effective November 1, 2025, the Company shall hire five (5) permanent employees and shall guarantee a seniority list of ninethy three (93) employees. The Company shall put at least one (1) non CDL candidate on the list.

Effective November 1, 2026, the Company shall hire five (5) permanent employees and shall guarantee a seniority list of ninety eight (98) employees. The Company shall put at least one (1) non CDL candidate on the list.

Teamsters Spare Helpers shall be paid at the following hourly rates of pay
1.  November 1, 2022- $23.00
2.  November 1, 2023- $24.00
3.  November 1, 2024- $25.00
4.  November 1, 2025 - $26.00
5.  November 1, 2026 - $27.00

Teamsters spare helpers shall be covered by the Collective bargaining agreement except:
1.  Teamsters Spare Helpers shall not be eligible to receive vacations
2.  Teamsters Spare Helpers are not subject to just cause provision in Article 9
3.  Teamsters Spare Helpers shall receive 1 hour of sick time for every thirty (30) hours worked with a maximum of five(5) per year.
4.  Spares shall have their own work list and shall be offered work in order of their placement on the work list. The work list shall be mutually agreed to by the union and the company.



**Effective November 1, 2021, the Company shall make health and welfare contributions on all Teamster spare helpers.**

g) No provisions of this Article shall apply in any State to the extent that it may be prohibited by State Law. If under applicable State law additional requirements must be met before any such provisions may become effective, such additional requirements shall be first met.

h) If any provisions of this Article is invalid under the law of any State wherein this contract is executed, such provision shall be modified to comply with the requirements of State Law or shall be renegotiated for the purpose of adequate replacement. If such negotiations shall not result in mutually satisfactory agreement, either party shall be permitted all legal or economic recourse.

i) The employer agrees to deduct from the pay of all employees covered by this Agreement the dues, initiation fees and/or uniform assessments of the Local Union having jurisdiction over such employees and agrees to remit to said Local Union all such deductions taken from the 1st payroll period of each month and remit to the Local Union by the 2nd payroll period of each month. Where laws require written authorization by the employee, the same is to be furnished in the form required. No deduction shall be made which is prohibited by applicable law.

j) The Employer agrees to deduct certain specific amounts each week from the wages of those employees who shall have given the Employer written authorization to make such deductions. The amounts so deducted shall be remitted to the TEAMSTERS CREDIT UNION once each week by electronic transfer methods. The employer shall not make deductions and shall not be responsible for remittance to the Credit Union for any deductions for those weeks during which the employee has no earnings or in those weeks in which the employee's earnings shall be less than the amount authorized for deduction.

k) The Employer agrees to deduct from the paycheck of all employees covered by this Agreement voluntary contributions to DRIVE. DRIVE shall notify the Employer of the amounts designated by each contributing employee that are to be deducted from his/her paycheck on a weekly basis for all weeks worked. The phrase "weeks worked" excludes any week other than a week in which the employee earned a wage. The Employer shall transmit to DRIVE Chapter 25 on a monthly basis, in one check the total amount deducted along with the name of each employee on whose behalf a deduction is made, the employee's Social Security number and the amount deducted from the employee's paycheck.

l) If, by the last day of any given month, the Union is not in receipt of the amounts deducted from the employees' pay for dues, initiation fees, and/or assessments, the Local Union shall have the right, after an appropriate 72-hour notice to the Employer, to take whatever steps it deems necessary to secure compliance with this agreement, any provision of this collective bargaining agreement to the contrary notwithstanding, and the Employer shall be responsible to the employees for losses resulting therefrom. The Employer's liability for the payment hereunder shall not be subject to the grievance procedure and/or arbitration provided in this Agreement. The aforesaid 72-hour notice to the Employer shall remain in full force and effect for a period of one year from the date of the occurrence upon which the notice is based.

4

# ARTICLE 3
## STEWARD

The employer recognizes the right of the Union to designate job stewards and alternates from the Employer's seniority list.

The authority of job stewards and alternates so designated by the Union shall be limited to, and shall not exceed the following duties and activities:

1.   The investigation and presentation of grievances to the Employer, or the designated company representative in accordance with the provisions of this collective bargaining agreement;
2.   The collection of dues when authorized by appropriate Local Union action;

3.   The transmission of such messages and information which shall originate with, and are authorized by the Local Union or its officers, provided such messages and information:

     a.)   Have been reduced to writing, or
     b.)   If not reduced to writing, are of a routine nature and do not involve work stoppages, slow-downs, refusal to handle goods, or any other interference with the Employer's business.

Job stewards and alternates have no authority to take strike action, cause a slowdown or any other action interrupting the Employer's business, except as authorized by official action of the Union.

The Employer recognizes these limitations upon the authority of job stewards and their alternates, and shall not hold the Union liable for any unauthorized acts. The Employer in so recognizing such limitations shall have the authority to impose proper discipline, including discharge, in the event the shop steward has taken unauthorized strike action, slowdown, or work stoppage in violation of this Agreement. The Union reserves the right to remove the Shop Steward at any time, for the good of the Union.

Stewards shall be permitted to investigate, present and process grievances on the property of the Employer, without loss of time or pay within a reasonable amount of time. Such time spent in handling grievances shall be considered working hours in computing daily and/or weekly overtime.

Stewards shall be granted super-seniority for purposes of lay-off and recall only.

# ARTICLE 4
## LEAVE OF ABSENCE

**Section 1.**
The Employer agrees to grant the necessary and reasonable time off, without discrimination or loss of seniority rights and without pay, to any employee designated by the Union to attend a labor convention or serve in any capacity on other official Union business, provided forty-eight (48) hours written notice is given to the Employer by the Union, specifying the length of time off. The Union agrees that, in making its request for time off for Union activities, due consideration shall be given to the number of employees affected in order that there shall be no disruption of the Employer's operation due to lack of available employees. Effective November 1, 2022, up to two (2) stewards or alternate stewards shall also be allowed up to three (3) days per year with pay and benefits for Union Business.

5

Date Filed 8/19/2024 12:22 PM
Superior Court - Norfolk
Docket Number 2482CV00648

Case 1:24-cv-12124-PBS    Document 8    Filed 08/22/24    Page 63 of 114
Case 1:24-cv-12124    Document 1-2    Filed 08/19/24    Page 10 of 48

**Section 2.**

Any employee desiring leave of absence from employment shall secure written permission from both the Local Union and Employer. The maximum leave of absence shall be for thirty (30) days and may be extended for like periods. Permission for extension must be secured from both the Local Union and Employer. During the period of absence, the employee shall not be engaged in gainful employment. Failure to comply with this provision shall result in the complete loss of seniority rights for the employees involved. Inability to work because of proven sickness or injury shall not result in the loss of seniority rights.

Case 1:24-cv-12124-PBS    Document 8    Filed 08/22/24    Page 64 of 114

Date Filed 8/19/2024 12:22 PM
Superior Court - Norfolk
Docket Number 2482CV00648    Case 1:24-cv-12124   Document 1-2   Filed 08/19/24   Page 11 of 48

## ARTICLE 5
### SENIORITY

**Section 1**

(a)   Seniority for employees governed by this Agreement shall be defined as the period of employment with the Employer in the work covered by this Agreement at the plant within the jurisdiction of the Local Union. It shall be deemed to include any seniority presently held by an employee through agreement between the Employer and the Local Union prior to this Agreement.

(b)   All new employees shall be hired on a ninety (90) calendar day trial basis and shall work under the provisions of this Agreement, within which time they may be dismissed without protest by the Union. However, the Employer may not discharge or discipline for the purpose of evading this Agreement or discriminating against Union members. After ninety (90) calendar days' trial period they shall be placed on the seniority list as regular employees in accordance with their date of hire, provided, however, that employees must work a minimum of ninety-six (96) hours during their ninety (90) calendar days' trial period. However, employees who complete the ninety-six (96) hours but less than ninety (90) calendar days, who are then laid off by the Employer and then rehired within the next ninety (90) calendar days, shall be considered as having made the seniority list as regular employees in accordance with their original date of hire. Any lost time either due to an on the job or off the job injury, days off, etc. shall not be counted towards the ninety (90) calendar day probationary period.

(c)   Preference shall be given to employees older in service and in order of their seniority to the work available, provided that such employees are available at such time as the work is assigned and are qualified to perform the work required.

(d)   Employees, in order of their seniority, shall have preference:

   (1)   To work opportunity in the event of layoff for lack of work.

   (2)   In recall to work after layoff.

   (3)   In selection of vacations from the vacation schedule.

   (5)

   (4)   For daily and quarterly bidding

   (5)   **If an employee elects not to bid on a scheduled run, he/she will be assigned to a run.**

   (6)   All Roxbury runs shall be assigned a helper.

(e)   Normal starting time is 6:30a.m.

(f)   Employees shall be notified of a layoff at the end of their tour of duty. In the event of layoff, the most junior employee shall be the first laid off and rehiring shall be in the inverse order of seniority. Employees shall be offered all available bargaining unit work before being laid off.

7

(g)    In the event of a recall of an employee laid off, the laid off employee shall be given notice, at least the night before, or recall by telephone or personal contact, to the address last given the Employer by the employee. Where work develops during the next day, the Employer shall, in the order of the seniority of the laid off employees make such work available, by telephoning or personally contacting the employees at their home or such place as they shall have designated with the dispatcher as the place of contact. Employees recalled by the above procedure must notify the Employer as soon as possible in advance of the specified time for their report of their intention to report. In the event the employees fail to comply with the above provision, they shall have no claim for work opportunity lost until they report, but the Employer shall be responsible for the work opportunity lost if said Employer shall fail to comply with these provisions.

(h)    When the Company determines that a permanent job vacancy (porter, yard jockey, checker/ receiver) exists, within forty-eight (48) hours after said determination, the Employer shall post a notice on the bulletin board for a period of one (1) week. Senior service employees who have the ability and physical qualifications to perform the job will be given preference to fill such vacancies.

(i)    Employees shall be entitled to select their load on a day to day basis, with the exception of mutually agreed to early starts which shall be bid quarterly.

(j)    An employee called to work before his regular scheduled report time shall be paid pre-shift overtime.

## Section 2. Merger

When two or more companies merge their operations, then the employees of the respective companies shall be placed on one seniority roster in the order of the earliest date of hire of each of the employees with their respective Employer.

## Section 3.

(a)    Loss of Seniority

Seniority shall be broken only by:

(1) Discharge
(2) Voluntary quit
(3) Unauthorized leave of absence
(4) Unauthorized failure to report for work for three (3) consecutive days when work is available.
(5) Use or possession of illegal drugs
(6) Just cause
(7) Failure to respond to recall within three (3) days of receipt of notice
(8) Excessive absenteeism

8



(9) Failure to submit an accident report

(b)      Employees who are absent because of proven illness or injury shall maintain their seniority.

## Section 4.

Where employees are required, through no fault of their own, to change residence from the Local Union's jurisdiction in order to follow employment as a result of an approved change of operation, the Employer shall move the employees or pay their moving expenses. The Employer shall not be responsible for moving or moving expenses if employees change their residence as a result of voluntary transfer.

## Section 5.  Military Clause

Employees enlisting or entering the Military or Naval Service of the United States, pursuant to the provisions of the Military Selective Service Act of 1967, as amended, shall be granted all rights and privileges provided by the act.

## Section 6.

(a)      Within thirty (30) days after the signing of this Agreement, a list of employees arranged in the order of their seniority shall be posted in a conspicuous place at their place of employment, a copy furnished to the Union. Claims for corrections to such lists must be made to the Employer and the Union within ten (10) days after such posting and after such time, the lists will be regarded as correct. Any dispute if raised within the ten (10) day period concerning an employee's seniority shall be referred to the Grievance Procedure as provided herein.

(b)      Should the Employer violate the principles set forth in this Article, said Employer shall compensate for the earning opportunity lost, and at the rates provided herein, those employees affected.

## Section 7.

Spare Employees

A monthly list of all extra (e.g., laid-off), casual/spares (supplemental or replacement) and/or probationary employees used during that month shall be submitted to the Local Unions by the tenth (10th) day of the following month. Such list shall show:

(a)  The employee's name, address and Social Security Number;

(b)  The dates worked;

(c)  The classification of work performed each day, and the hours worked;

9

Case 1:24-cv-12124-PBS    Document 8    Filed 08/22/24    Page 67 of 114

Date Filed 8/19/2024 12:22 PM
Superior Court - Norfolk
Docket Number 2482CV00648    Case 1:24-cv-12124    Document 1-2    Filed 08/19/24    Page 14 of 48

(d)  The name, if applicable, of the employee replaced.


# ARTICLE 6
## MAINTENANCE OF STANDARDS

**Section 1.**

The Employer agrees that all conditions of employment relating to wages, hours of work, overtime differentials and general working conditions shall be maintained at not less than the highest standards in effect at the time of the signing of this Agreement, and the conditions of employment shall be improved whenever specific provisions for improvements are made elsewhere in this Agreement.


**Section 2.**

During the term of this Agreement or any renewal thereof, the Employer shall not directly or indirectly operate, maintain or conduct any establishment or place of business, or cause any establishment or place of business to be operated or maintained or conducted where the effect thereof is to render the terms of this Agreement inapplicable or for the purpose of evading the terms of this Agreement.


**Section 3.**

If the Employer wishes to put into use any type of equipment and/or operations or jobs for which rates of pay are not established by this Agreement, such equipment, operation or job shall not be put into force until the use of such equipment, operation or job and the rate of pay shall have been established by the negotiation committee between the parties.


**Section 4.     Extra-Contract Agreements**

The Employer agrees not to enter into any agreement or contract with the employees, individually or collectively, which in any way conflicts with the terms and provisions of this Agreement. Any such Agreement shall be null and void.


**Section 5.     Work-week Reduction**

In the event that the maximum work-week is reduced by legislate act to a point below the regular work-week provided herein, the contract shall be re-opened for wages only.


# ARTICLE 7
## GRIEVANCE PROCEDURE

10

Case 1:24-cv-12124-PBS    Document 8    Filed 08/22/24    Page 68 of 114

Date Filed 8/19/2024 12:22 PM
Superior Court - Norfolk
Docket Number 2482CV00648    Case 1:24-cv-12124    Document 1-2    Filed 08/19/24    Page 15 of 48

**Section 1.**

A grievance is hereby jointly defined to be any controversy, complaint, misunderstanding or dispute.

Any grievance arising between the Company and the Union or an employee represented by the Union shall be settled in the:

Step 1    The aggrieved employee or employees must present the grievance to the Shop Steward within five (5) working days after the reason for the grievance has occurred, except no time limit shall apply in case of violation of wage provisions of this Agreement. If a satisfactory settlement is not effected with the foreman within five (5) working days, the Shop Steward and employee shall submit such grievance in writing to the Union's Business Representative.

Step 2    The Business Representative shall then take the matter up with a representative of the Company with authority to act upon such grievance. A decision must be made within ten (10) working days. If no satisfactory settlement can be agreed upon, the matter shall be referred by either party or both to the American Arbitration Association, and both parties agree that the subject matter should be settled by said Board. The decision of said Board shall be final and binding and be retroactive from the date of dispute. The Board shall make no rules or render any decision which conflict with the provisions of this Agreement. Each side will be allowed one postponement for arbitration. In the event of the failure of either party to comply with the time limit hereinabove provided, the grievance shall either be deemed to have been withdrawn or formatively accepted or approved, as the case may be, depending on the disposition of grievance prior to the last time step.

Step 3    If the Company fails to comply with any settlement of the grievance or fails to comply with the procedures of this Article; the Union has the right to take all legal and economic action to enforce its demands.

**Section 2.**

Employees shall have the Shop Steward or a representative of the Union present during the discussion of any grievance, during any investigatory interview, and during any discipline hearing with representatives of the Company.

**Section 3.**

Notwithstanding anything herein contained, it is agreed that in the event any Employer is delinquent at the end of a period in the payment of its contribution to the Health and Welfare Fund or Pension Fund, created under this Agreement in accordance with the rules and regulations of the Trustees of such Funds, after the proper official of the Local Union has given 72 hours notice to the Employer of such delinquency in Health and Welfare and/or Pension payments, the employees or their representatives shall have the right to take such action as may be necessary until such delinquent payments are made, and it is further agreed that in the event such action is taken, the Employer shall be responsible to the employees for losses resulting therefrom.

11

# ARTICLE 8
## PROTECTION OF RIGHTS

**Section 1. - Picket Lines**

It shall not be a violation of this Agreement, and it shall not be cause for discharge or disciplinary action nor shall such employee be permanently replaced in the event an employee refuses to enter upon any property involved in a primary labor dispute, or refuses to go through or work behind any primary picket line, including the primary picket line of Unions party to this Agreement, and including primary picket lines at the Employer's places of business.

**Section 2. - Struck Goods**

It shall not be a violation of this Agreement and it shall not be a cause for discharge or disciplinary action not shall such employee be permanently replace if any employee refuses to perform any service which his Employer undertakes to perform as an ally of an Employer or person whose employees are on strike, and which service, but for such strikes, would be performed by the employees of the Employer or person on strike.

# ARTICLE 9
## DISCHARGE AND SUSPENSION

(a)    The Employer shall not discharge nor suspend any employee without just cause, but in respect to discharge or suspension, shall give at least one (1) warning notice of the complaint against such employee to the employee, in writing, and a copy of the same to the Union, except that no warning notice need be given to an employee before said employee is discharged if the cause of such discharge is theft or drunkenness resulting in serious accident while on duty, or the carrying of unauthorized passengers. Warning letters will remain in the employees file for 9 months but may be used to support future discipline if similar or the same as the original infraction, with the exception of sick days.

(b)    Discharge must be by proper written notice to the employee and the Union. Any employee may request an investigation as to said discharge or suspension. Should such investigation prove that an injustice has been done an employee, said employee shall be reinstated. Appeal from discharge, suspension or warning notice must be taken within ten (10) days by written notice, and a decision reached within thirty (30) days from the date of discharge, suspension or warning notice. If the employee involved is not within the home plant area when the action of discharge, suspension or warning notice is taken, the ten (10) day period will start from the date of the employee's return to the home plant. If no decision has been rendered on the appeal within thirty (30) days the case shall then be taken up as provided for in Article VII of this Agreement.

(c)    The Union will receive notice in advance of a disciplinary suspension not to include discharge so that there will be an opportunity to meet with management representatives to discuss the merits of the suspension in a short reasonable period of time. The meeting shall occur within five (5) working days or otherwise mutually agreed time frame or discipline stands.

12

# ARTICLE 10
## PAYROLL PERIOD

(a)     The payroll period shall be run from Sunday to Saturday inclusive with payday not later than Friday noon of the next week. Each employee shall be provided with a statement of gross earnings and an itemized statement of deductions made for any purpose each week. When the regular pay day occurs on a holiday or day celebrated as such, the Employer shall pay the employees on the regular work day immediately preceding the holiday.

# ARTICLE 11
## SUNDAY AND HOLIDAYS

(a)     (1)  The following shall be recognized as paid holidays and all employees shall be paid ten (10) hours straight time pay therefore:

| | | |
|---|---|---|
| New Year's Day | Memorial Day | Veteran's Day |
| President's Day | Independence Day | Thanksgiving Day |
| Good Friday | Labor Day | Thanksgiving Friday |
| Patriot's Day | Columbus Day | Christmas Day |

Effective November 1, 2022, add Juneteenth to the list of paid holidays.

(2) An additional two (2) holidays shall be personal holidays which may be the employee's birthday or any other day mutually agreed to. It will be incumbent upon the employee to request such holiday from his Employer at least forty eight (48) hours prior to said Holiday. However, employees may elect to accept ten (10) hours pay in lieu of such personal holidays.

(b)     Regular employees shall be paid for each recognized holiday, or the day celebrated as such, irrespective of what day of the week the holiday falls, on the basis of ten (10) hours at their straight time rate, provided they work the day before and the day after the holiday. Any regular employees laid off for lack of work shall not be deprived of their holiday pay if the layoff does not exceed thirty (30) days duration. Regular employees required to work on any such days shall be paid the applicable premium rate in addition to the holiday pay.

(c)     Spare employees who work during the payroll period in which a holiday occurs shall be paid for such holiday on the same basis as regular employees.

(d)     If any of the above-named holidays occur when an employee is on vacation, said employee shall receive an extra day's pay in lieu of the holiday.

(e)     The applicable minimum rate for work performed on Sundays as such, shall be one and one-half (1 ½) times the normal rate as shown in the Wage Rate Schedule herein for the first ten (10) hours of work, which shall be a guarantee. Work performed after ten (10) hours on those days shall be paid for at one and one-half (1 ½) times the applicable minimum rate.

(f)     Employees on night work whose regular work begins on a Sunday or holiday evening, or ends on a Sunday or holiday morning, shall be given either the night before or the night after off, for their

13



Case 1:24-cv-12124-PBS    Document 8    Filed 08/22/24    Page 71 of 114

Date Filed 8/19/2024 12:22 PM
Superior Court - Norfolk
Docket Number 2482CV00648    Case 1:24-cv-12124    Document 1-2    Filed 08/19/24    Page 18 of 48

Sunday or holiday, in accordance with the Work Schedule. Regular employees shall not be deprived of their sixth punch by the use of extra help. Except in cases specifically agreed upon between the Employer and the Union, work on a night shift shall be treated as being performed on the day on which the shift ends. The holiday night shall not be staggered by the splitting of a single shift.

(h)    When Christmas or New Years falls on a Tuesday, Wednesday or Thursday, the Employer reserves the right to shift the work week. The employee will receive premium pay for a fifth report and it will be counted towards the guaranteed 40 hours. The Employer also agrees to pay those drivers who complete the guaranteed 20 hours of work on a two day work week during Christmas or New Years and extra 10 hours of straight time to guarantee 40 hours for the shifted week.

(i)     Super solo rates shall be paid at time and one half on holidays.

(j).    The Employer agrees to provide adequate lighting equipment.

(k).    The Employer agrees to provide an adequate working temperature in the warehouse unless prevented by Act of God or circumstances beyond the Employer's control.

(l).    Employees shall not accept C.O.D.'s in cash. Customers must have check only.

(m).    No liquor shall be loaded on the truck tailgate.

(n).    The Company will provide pallet jacks for delivery of product to accounts that request pallet delivery and have no pallet jacks on site.

(o).    Massachusetts Family Medical and Leave Act M.G.L. c-175M – The Employer shall pay the full amount.

# ARTICLE 12
## VACATIONS

**Section 1.**

Regular full time employees who have been on the Employer's payroll for one (1) year and who have worked at least one hundred thirty five (135) days during the previous year, including any absence resulting from the performance of duties under this Agreement, shall be entitled to one (1) week vacation with pay during the vacation period provided under this Agreement the following year.

Regular full time employees who have been on the Employer's payroll for two (2) years and less than five (5) years and who have worked at least one hundred thirty five (135) days during the previous year

14

including any absence resulting from the performance of duties under this Agreement shall be entitled to two (2) weeks vacation with pay during the vacation period provided under this Agreement the following year.

Regular full time employees who have been on the employers payroll for five (5) years and less than ten (10) years and who have worked at least one hundred thirty five (135) days during the previous year including any absence resulting from performance of duties under this Agreement shall be entitled to three (3) weeks vacation with pay during the vacation period provided under this agreement the following year.

Regular full time employees who have been on the Employer's payroll for ten (10) years and less than fifteen years and who have worked at least one hundred thirty five (135) days during the previous year including any absence resulting from the performance of duties under this Agreement shall be entitled to four (4) weeks vacation with pay during the vacation period provided under this Agreement the following year.

Regular full time employees who have been on the Employer's payroll for fifteen (15) years and who have worked at least one hundred thirty five (135) days during the previous year including any absence resulting from the performance of duties under this Agreement shall be entitled to five (5) weeks vacation with pay during the vacation period provided under this Agreement the following year.

Regular full time employees who have been on the Employer's payroll for twenty five (25) years and who have worked at least one hundred thirty five (135) days during the previous year including any absence resulting from the performance of duties under this Agreement shall be entitled to six (6) weeks vacation with pay during the vacation period provided under this Agreement the following year.

**Section 2.**

Vacation shall be taken between January 1 through December 31.. During the months of November and December, one (1) employee shall be allowed to take vacation per week, unless otherwise agreed to by the Employer and the Union.

During the months of June, July and August (with the exception of the last week in June where only four (4) employees are allowed vacation) the following amount of employees shall be allowed to take vacation per week:

Summer 2023 -  6 Employees
Summer 2024 – 7 Employees
Summer 2025 – 8 Employees
Summer 2026 – 9 Employees
Summer 2027 -  9 Employees

**Section 3.**

15

Date Filed 8/19/2024 12:22 PM
Superior Court - Norfolk
Docket Number 2482CV00648

The Employer agrees to post the vacation schedule no later than November 1 and said schedule shall remain posted for forty five (45) days to allow employees, in order of their seniority, to make their vacation selection.. Employees in the first 33.3% from the top of the seniority list must make their selection within the first fifteen days after posting. Employees in the next 33.3% shall make their selection in the next fifteen days. The balance of the seniority list (bottom 33.3%) shall make their selection in the remaining fifteen days. Any employee who does not make such selection the day that they are required to pick, shall be assigned whatever vacation period remains. The completed vacation schedule shall be posted in the drivers room at all times.

**Section 4.**

Any employee who is discharged or who quits shall receive the vacation allowance due him for that year.

**Section 5.**

Upon discharge by the Employer, or quit by the employee, earned vacation time and pay shall be included in all final wage payments, upon return of all company property. In case of death of an employee who is eligible for a vacation, vacation pay due such an employee shall be paid to the employee's estate.

**Section 6.**

Only service and time worked at M.S. Walker (the employer under this agreement) shall be counted for determining the amount of vacation to which an eligible employee is entitled.

**Section 7.**

When an employee selects a week of vacation, vacation must be taken at the time employee selected. Employees shall not be allowed to switch vacations with each other.

**Section 8.**

No more than two (2) employee may be out on vacation during holiday weeks (short weeks).

**Section 9.**

Vacation pay will be calculated at 1/52 pay based upon previous calendar year's earnings. New employees hired during the previous year who are entitled to a vacation and older employees who do not work a full year shall receive vacation pay equal to the average of their earnings for the full weeks which they worked, in that year, with a minimum of forty (40) hours.

**Section 10.**

If an employee's anniversary date falls within the non-vacation sanctioned period (October 1-December 31), the vacation will be paid without time off. The next year's vacation will be earned/paid once the employee completes the necessary 135 working days during that year.

**Section 11.**

All vacation requests shall be submitted on proper written form.

**Section 12.**

Any Employee with five (5) or more weeks of vacation shall be allowed to use one (1) week of their vacation as single days, subject to management approval with fourteen (14) days' notice. Single days cannot be used as sick days or used during short shipping weeks and they cannot be used the day before or after a holiday. The employee must notify the Employer of their intention to use single days when picking vacation. Employees shall select their single vacation days by seniority no later than December 18 to be taken between January 1 and May 31. The single vacation days shall be awarded on December 18 or the next business day if it is a day off. Single vacation days shall be first come first serve thereafter for the January 1 to May 31 period.

The same procedure shall be used for the June 1 to December 31 period with a May 18 deadline for selecting single vacation days.

The use of all single vacation days each year shall be mandatory. Employees shall not switch single vacation days with each other.

Employees on worker's compensation can choose to be paid for previously scheduled vacation weeks or can opt for a vacation payout of all unused vacation time at the end of the calendar year.

# ARTICLE 13
## MISCELLANEOUS

**Section 1    Accident Reports**

Any employee involved in any accident shall immediately report said accident and any physical injury sustained. When required by their Employer, the employees before going off duty, and before starting their next shift, shall make out an accident report, in writing, on forms furnished by the Employer, and shall turn in all available names and addresses of witnesses to the accident. Such report shall be made out on the Company time.

**Section 2.    Court Appearances**

When employees are required to appear in any court for the purpose of testifying, because of any accident they may have been involved in during working hours, such employees shall be reimbursed in full by the Employer for all earnings opportunity lost because of such appearance. The Employer shall furnish the employees who are involved in an accident during working hours, with bail, bond and legal counsel, and shall pay in full for same. Said bail, bond and legal counsel shall remain assigned to the employees until all legal action in connection with said accident is concluded, provided the employee is not charged and convicted of criminal negligence. This section shall not apply to employees who are found guilty of

17

drunken driving during working hours either through DWI conviction or proof of drinking while on the job. The Employer shall assume all responsibility for all court costs, legal fees and bail bond fees, for any employee who is involved in any accident, or accidents during working hours, and shall assume all responsibility for all judgments and awards against an employee who is involved employee, except as provided above.

**Section 3.        Safety Violations**

(a)    Equipment - Employees shall not be held responsible for vehicles not properly equipped to comply with State Motor Vehicle Laws, and shall be compensated for fines and time lost if summoned to court, etc., because of the same.

(b)    Overloads- Employees shall not be held responsible for overloading vehicles. Whenever an employee is penalized because of such overload, the Employer shall bear all costs in connection with such overload, penalty, and shall pay all damages and assessments against the employee, including accrued overtime for delay, and assessments against the employee, including accrued overtime for delay, and/or any lost earnings opportunity that the employee might suffer. In the event the employee shall suffer a revocation of said CDL license because of the violation of any laws by the Employer, said Employer shall prove suitable and continued employment for such employee, at not less than the employee's regular earnings at the time of revocation of license, for the entire period of revocation of license, and the employee shall be reinstated to the employee's previous assignment held prior to revocation of driver's license, after said driver's license is restored.

(c)    Winter Safety Equipment - The Employer shall install heaters, defrosters and equipment required by law on all trucks and tractors. No employee shall be required to drive a vehicle without heat and defrost.

    Summer Safety Equipment – The Employer shall install and maintain air conditioning in proper working order. No employee shall be required to drive a vehicle without air conditioning.

(d)    Defective Equipment - No employee shall be required to drive or to operate or work upon any vehicle that is not equipped with all safety appliances prescribed by law or which vehicle or its equipment is in defective condition. No employees shall be subject to disciplinary action for refusing to operate such equipment.

(e)    The employee shall report all defects of equipment to the Employer on such forms or in such manner as the Employer may require. All equipment which is refused because not mechanically sound or properly equipped shall be appropriately tagged so that it cannot be used by any other drivers until the Maintenance Department has adjusted the complaint.

**Section 4.        Bonds**

Should the Employer require any employee to give bond, cash bond shall not be compulsory, and any premium involved shall be paid by the Employer.

**Section 5.        Examinations**

Case 1:24-cv-12124-PBS    Document 8    Filed 08/22/24    Page 76 of 114

Date Filed 8/19/2024 12:22 PM
Superior Court - Norfolk
Docket Number 2482CV00648    Case 1:24-cv-12124   Document 1-2   Filed 08/19/24   Page 23 of 48

Employees shall be paid for three (3) straight time hours for time required to take such examinations, however the company will pay three (3) hours of straight time every two years to perform DOT examinations. Drivers required to take more frequent exams will be paid one (1) additional three (3) hours of straight time. The company will make every effort to schedule any additional exam during work hours.

### Section 6.    Personal Identification

If the Employer requires employees to carry personal identification, the cost of such personal identification shall be borne by the Employer.

### Section 7.    On-The-Job Claims

The Employer agrees to cooperate toward the prompt disposition of employee on-the-job injury claims.

### Section 8.    Loss or Damage

Employees shall not be charged for lost, damaged, or stolen cases, product or merchandise for any reason.

### Section 9.    Access to Premises

Authorized agents of the Union shall have access to the Employer's establishment during working hours, including the right to check trucks in transit, investigate working conditions, collect dues, and inspect all time cards, log books and other payroll records of the Employer, for the purpose of determining whether or not the terms of this Agreement are being complied with. The Employer will make such records available within seven (7) days of the Union's request and will provide a suitable bulletin board in a conspicuous place for posting of information of interest to the members of Union.

### Section 10.    Injury on the Job

When regular employees are injured on the job, they shall be guaranteed ten (10) hours pay for the day injured, provided they are instructed to cease work as a result of any injury by the Employer or physician. If required to visit hospitals, clinics, doctors' offices or other places for treatment or diagnosis, during days they are working during working hours, they shall be paid for the time involved in travel and treatment with a guarantee of ten (10) hours.

If an employee is required by the company to visit a hospital, clinic, doctor's office, or other places for treatment or diagnosis outside working hours he/she shall be paid for the time involved in travel and treatment.

### Section 11.

The Employer shall not hire employees who are gainfully employed on a full-time basis elsewhere inside or outside the industry.

### Section 12.    Other Equipment

19

(a)     The employer shall not require as a condition of continued employment that an employee purchase a truck, tractor and/or tractor and trailer or other vehicular equipment.

(b)     The Employer agrees not to hire any outside equipment when said Employer has available equipment of his own, unless the Employer does not have qualified personnel to operate the equipment.

(c)     The Employer will not hire outside trucks except to supplement its own equipment when such equipment is in full use. When hired trucks are required, the employees required to operate and work them, irrespective of ownership, shall be paid as employees of the Employer and shall be governed by the terms of this Agreement while so employed.

## Section 13.    Death in Family

In the event of a death in the employee's immediate family, Father, Father-in-law, Mother, Mother-in-law, Foster Parents, Sister, Sister-in-law, Brother, Brother-in-law, Son, Daughter, Husband, Wife, Stepparents or Grandparents, it is recognized that the employee will be paid for four(4) working days Employee must provide substantiation to be eligible for pay.

## Section 14.    Jury Duty

Employees called for Jury Duty shall be paid the difference between the Jury pay received and the amount ordinarily paid them for a forty (40) hour work week, exclusive of overtime, provided the employees work on regularly scheduled work days when they do not have to report for Jury Duty.

## Section 15.    Uniforms

If the Employer requires employees to wear uniforms, said uniforms shall be paid for by the Employer. The Employer shall supply and pay for any required tools, protective wearing apparel for all employees while assigned to the handling of hazardous or abnormal freight, and shall also supply protective outer garments for all yard employees.

All employees required to wear provided safety shoes will be required to wear said shoes while on duty.

The Employer shall provide each member of the bargaining unit a three hundred dollar ($300) dollar gift card each November 1st for the purpose of purchasing safety shoes, socks, pants, belts, etc.

Effective upon ratification, the Employer shall provide each member of the seniority list with a winter coat on a one-time basis.

The Employer will also provide gloves. All employees will receive gloves when needed.

## Section 16.

Benefits and privileges such as Profit Sharing, paid vacations, discounts, insurance, sick benefits, hospitalization, etc., now enjoyed by the employees will continue to be available to all eligible employees.

20

Case 1:24-cv-12124-PBS    Document 8    Filed 08/22/24    Page 78 of 114

Date Filed 8/19/2024 12:22 PM
Superior Court - Norfolk
Docket Number 2482CV00648    Case 1:24-cv-12124    Document 1-2    Filed 08/19/24    Page 25 of 48

**Section 17.    Lie Detector Test**

The Employer shall not require, request or suggest that an employee or applicant for employment take a polygraph or any other form of lie detector test.

**Section 18.    Negligent Entrustment Clause**

Any employee who has a loss of their driver's license and/or their CDL license due to DUI, or a refusal to submit to a random drug test shall not be allowed to work as a driver at M.S. Walker until they get their license back, however said driver shall be allowed to work as a helper at the helper rate of pay and shall utilize their seniority to pick loads. A driver who cannot obtain his DOT card/CDL, loses his DOT card/CDL, or cannot drive for a medical reason shall also be allowed to work as a helper at the helper rate of pay, however, shall maintain his seniority for all purposes. An employee that loses his DOT card must actively seek to reobtain it.

**Section 19.**

All drivers will sign a release document to enable the Company to obtain MVR reports at its discretion.

**Section 20.    Modified Work Program**

(a)    The Employer may establish a modified work program designed to provide temporary opportunity to those employees who are unable to perform their normal work assignments due to a disabling on-the-job injury. Recognizing that a transitional return to work program offering both physical and mental therapeutic benefits will accelerate the rehabilitative process of an employee. Modified work programs are intended to enhance worker compensation benefits and are not to be utilized as a method to take advantage of an employee who has sustained an industrial accident.

(b)    Implementation of a modified work program shall be at the Employer's option and shall be in strict compliance with applicable federal and state workers compensation statutes. Acceptance of modified work shall be on a voluntary basis at the option of the injured employee. No employee shall be required to participate in a modified work program or Light Duty program.

(c)    Modified work shall be offered on a non-discriminatory basis to those employees who have sustained an on-the-job injury and who have received a detailed medical release from the attending physician clearly stating forth the limitations under which the employee may perform such modified work.

(d)    Modified work shall be restricted to the type of work that is not expected to result in a re-injury and which can be performed within the medical limitations set forth by the attending physician.

(e)    The modified workday and workweek shall be established by the Employer within the limitations set forth by the attending physician.

(f)    The modified work program shall be reviewed every thirty (30) days and is not intended to be a permanent modification to the employee's normal job duties.

(g)    Any employee who has returned from modified work due to a disabling on the job injury and is currently full duty, can be eligible to participate in a worker resiliency program. The goal of the

21



program is to build job specific strength and flexibility to help prevent future injuries. Participation in the program is voluntary and may include off work hours and will be subject to overtime when applicable.

**Section 21.**

The Company may use a Global Positioning System (GPS) tool to assist in monitoring driver performance. GPS will not be used as the sole basis for discipline.

**Section 22.**

Any follow up drug testing will be the sole financial responsibility of the employee after first year of a positive drug test.

**Section 23.**

First chargeable accident calls for a Written Warning.

Second chargeable accident calls for a driver to attend driving school. The driver will be paid for that day. The Company will pay for driving school.

Third chargeable accident calls for a three (3) day suspension.

Fourth chargeable accident calls for a six (6) month suspension off the road. However, driver will be utilized as a helper during this time.

Fifth chargeable accident calls for termination.

All write ups that pertain to accidents will be removed from his or her file after twelve (12) months on a rolling calendar.

**Section 24.**

Employees will be responsible for the reimbursement to the Company for the following parking violations: handicap and fire hydrant and employees shall turn in all parking tickets on a daily basis.

**Section 25.    Cell Phones**

Effective November 1, 2022, all employees (drivers and helpers) shall receive Seventy Five ($75.00) dollars per month to pay for the cost of their cell phone. This payment shall be made quarterly via gift card.

Section 26 - Salesmen

22

It is also agreed that at no time will Salesmen deliver products except in emergency situations, i.e., replacing products for customer who runs out, or to satisfy the business needs of a customer. These deliveries shall be limited to the personal vehicle of the salesmen.

# ARTICLE 14
## HOURS OF WORK AND OVERTIME

**Section 1.**

(a)    Four (4) days shall constitute a normal week's work for all employees from Tuesday to Friday inclusive, and the hours of labor each day shall be worked in uninterrupted succession. All time worked in excess of ten (10) hours per day or forty (40) hours per week shall be paid for as overtime at one and one-half (1 1/2) times the normal rate.

(b)    All regular employees shall be guaranteed forty (40) hours work or pay. In any week in which the paid holidays fall, the guaranteed work week shall be thirty (30) hours in such week shall be paid at the rate of time and one-half the regular rate, excluding laid off days.

(c)    Any employee who signs up for work on a fifth (5th) report or holiday will be required to work said day. Failing to report on said fifth (5th) report or holiday will be charged with a sick day.

**Section 2.**

(a)    Normal scheduled starting work time is 6:30 a.m.; however the Employer may establish earlier starting times for earlier bidded scheduled/scheduled runs.

(b)    If an employee is required to report for work before 6:30 a.m. said employee shall be paid for such period at the overtime rate applicable for day. Where an employee is required to report for work at 6:30 a.m., or any time thereafter, the starting time shall be as of 6:30 a.m. and the employee shall be paid a full day's pay.

(c)    Such employees ordered to report for work before such starting time shall be paid at time and one-half the appropriate rate for that day for work prior to the regular starting time. Any employees ordered to work after the regular starting time shall have their time revert back to their regular starting time. No change of such starting times shall be made by the Employer unless approved by the Union. The Employer shall not allow employees to voluntarily begin work before their start time with no pay.

**Section 3.**

(a)    Any employee who is called or reports as scheduled shall be guaranteed a minimum of ten (10) hours work or pay. Conditional on employee completing original assignment. Any employee that is required to take an additional load shall be paid an additional day's pay (ten 10 hours) plus incentive.

(b)    All employees required to report to work on a holiday or 5th report period shall be guaranteed ten (10) hours work or pay at applicable premium rate (time and one-half). Work performed in excess of ten (10) hours shall be paid at time and one half.

23

**Section 4.**

(a)   Except for mealtime, working time for all employees shall start when they are instructed to report and do report at plant and shall continue until relieved from duty at same regardless of occupation. Employees shall be allowed time out for meals which shall be one-half (1/2) hour and shall not begin until the employees have worked four (4) hours, but must begin before they have completed five (5) hours of work. All employees shall be entitled to twenty (20) minutes for lunch if they work more than eight (8) hours.

(b)   There shall be two (2) break periods of twenty (20) minutes duration each workday; twenty (20) minutes in the morning between the second and third hours of work, and twenty (20) minutes in the afternoon between the sixth and seventh hours of work.

(c)   Any employee required to wait more than sixty (60) minutes at a single stop will be required to take one of the scheduled twenty (20) minute breaks during that waiting time, with the exception of scheduled delays.

**Section 5.**

(a)   A daily time record shall be maintained by the Employer for all of its employees. Any Employer who employs five (5) or more employees shall have a time clock, and the employees' time shall be computed by the time clock on time cards. Any Employer with less than five (5) employees who does not have time clocks shall permit employees to keep their own time records.

(b)   All employees shall punch in their own time card at the start of the day and punch out their own time card at the completion of the day's work at the Employer's place of business.

(c)   Employees assigned to work and/or completing their work away from the Employer's place of business shall be exempt from punching in and out. In the event that any employees are ordered to report at, or leave their vehicle at a different place than their usual starting point, such employees shall be paid transportation expenses back to their starting point. All such traveling time shall be considered as time worked.

(d)   It is further understood that employees delivering single loads consisting of 350 + cases is a two man truck. If the company sends out a driver with more than 350 cases, then the driver shall receive two (2) days' pay (20 hours x hourly rate), and the incentive.

1.   Driver- Only (Solo) Trucks

The Employer may schedule driver- only delivery trucks on a daily basis subject to the following conditions:

a)   Drivers who are utilized on these trucks may choose to be paid hourly pursuant to the agreed upon wages set forth in the Wage Article of the collective bargaining agreements or

24

Date Filed 8/19/2024 12:22 PM
Superior Court - Norfolk
Docket Number 2482CV00648

    b)     Drivers who are utilized on these trucks may choose incentive compensation in lieu of hourly pay.

<u>Incentive compensation pay schedule</u>

A.    On trucks with more than 175 cases drivers shall receive a premium over daily base pay (10 hours x hourly rate) on all cases in excess of fifty (50) cases. Drivers on trucks with 175 cases or less will be paid on an hourly basis.

Incentive pay shall start with case number fifty one (51).

1.    $0.50/case for wine and spirits
2.    $0.20/case for beer/seltzer/canned beverages
3.    $0.10/case for each empty beer case returned

4.    $0.25/keg for each empty keg returned

5.    $0.50/Keg

6.    $2.50 Wine Barrell (equal to five cases)

7.    Travel pay to certain municipalities will be paid according to the attached schedule

B.    Drivers who are utilized on these trucks with more than 175 cases to be delivered or picked-up will receive a $5.00 per hour premium over the agreed upon hourly wage.

C.    Driver-only trucks will have delivery stop limits as listed:

    175 cases or less
    -30 stops maximum

    176 cases or more
    -27 stops maximum

Trucks with 175 cases or less in these areas....
-Boston (North End, Financial District, Back Bay, Sea Port, South End, West End, Fenway, South Boston) Cambridge and the City of Worcester
-35 stop maximum

D.    The number of cases (delivery or pick-up) on driver-only trucks will not exceed 350

2.    <u>Delivery Trucks (driver-only and driver and helper)</u>

25



Date Filed 8/19/2024 12:22 PM
Superior Court - Norfolk
Docket Number 2482CV00648

Case 1:24-cv-12124-PBS    Document 8    Filed 08/22/24    Page 83 of 114
Case 1:24-cv-12124    Document 1-2    Filed 08/19/24    Page 30 of 48

A.    All delivery trucks - delivery stops will not exceed 27 (driver and helper)

B.    All delivery trucks will have side doors

    i.   During peak sales periods the Company may need to rent delivery trucks.  The Company will use its best efforts to obtain delivery trucks with side doors and ramps. If side door trucks are unavailable and the Company has to use rental trucks without side doors and ramps then the Company will pay a premium to the driver and helper on these trucks of two (2) hours of pay for delivery trucks with 1-15 stops and four (4) hours of pay for delivery trucks with 16 or more stops.

    .   Delivery stops will be limited to 27 stops for driver & helper trucks and 27 stops for driver only trucks in the following municipalities:

        Springfield and further

    If the Employer requires additional labor for porter, checker/receiver, yard jockey tasks then the Employer will use Teamsters to fill this need.

6.    Warehouse Work

Delivery employees who work on Mondays may be assigned to cleaning of the cabs of delivery trucks. Such duties will include cleaning of windshield and mirrors. This work shall exclusively be bargaining unit work.

7.    Delivery Delay

Employees who are required to wait at their last delivery, after completing eight and one half (8.5) hours of service, because the account is not open, shall be compensated at the applicable daily (hourly) rate of pay.

The Company and the Union agree to establish a joint committee to devise solutions to ensure proper delivery protocols for late opening accounts, difficult delivery conditions and customer complaints. This committee will meet at least once a month for three months following ratification and then at least once every six months thereafter.

Case 1:24-cv-12124-PBS    Document 8    Filed 08/22/24    Page 84 of 114

Date Filed 8/19/2024 12:22 PM
Superior Court - Norfolk
Docket Number 2482CV00648    Case 1:24-cv-12124    Document 1-2    Filed 08/19/24    Page 31 of 48

&ast; Breakdowns shall be paid at the hourly rate
&ast; Delay time during dispatch (at the start of the workday) shall be paid at the hourly rate.

**Section 6.**

All employees shall be notified of a layoff at the end of their days work; by phone if employee has left the premises or on a non-scheduled work day.

In the event of a cyber attack on the Company's computer system which forces the cessation of business for two (2) business days (48 hours) or more, then seniority drivers, helpers, porters, checkers/receivers and yard jockeys will receive the value of a personal/sick day for each day of work lost commencing with the third business day up to a maximum of five (5) days.

# ARTICLE 15
## WAGES AND ALLOWANCES

(a)     Wage rates and classifications as set forth in Schedule A (attached) shall become effective on November 1, 2022.

(b)     Employees older in service and in the order of their seniority shall be entitled to the work available from Tuesday to Friday inclusive in amounts not less than those designated in the Schedule above. Should the Employer violate this principle, said Employer shall compensate for the earning opportunity lost and at the rates provided herein those employees affected.

(c)     Any employee working in a higher pay classification for any part of the day shall receive the higher rate of pay for the entire day.

   All drivers shall be paid the driver rate regardless of whether they work as a driver or a helper.

(d)     All employees shall be allowed eight (8) days of sick leave with pay each year. All unused sick leave days shall be paid to the employees at the end of the calendar year. If an employee has not used any sick days at the end of a calendar year, he shall be paid for twelve (12) sick days. Employees out sick over two (2) days must have a doctor's note.  A new employee in their first year of employment shall receive 1 hour sick time for every 30 hours worked with a maximum of five (5) days. Effective the first January 1 of their employment, they shall be allowed eight (8) days of sick leave with pay each year. Drivers calling in absent must call in before 5:00 A.M. or they will be subject to progressive discipline.

(e)     Any employee appearing in court due to a motor vehicle violation, with proof of appearance, will not be charged with a sick day and will not be charged with an absence under the Company's attendance policy.

27

(f)    Employees not completing their scheduled shift will only be paid for time worked.

(g)    Attendance Policy:

Employee will be issued a verbal warning that his or her sick time is exhausted

First unpaid day in calendar year calls for a written warning.

Second unpaid day in calendar year calls for a one (1) day suspension without pay.

Third unpaid day in calendar year calls for a two (2) day suspension without pay.

Fourth unpaid day in calendar year calls for termination.

<u>Incentive Compensation</u>

A.    Drivers and helpers may choose to be paid hourly or may choose incentive compensation in lieu of hourly pay.

B.    Drivers and helpers who choose incentive compensation shall receive a premium over daily base pay (10 hours x hourly rate) on all cases in excess of 50 cases.

Incentive pay shall start with case number fifty-one (51).

i.     $0.25/case for wine and spirits
ii.    $0.10/case for beer/seltzer/can beverages
iii.   $0.05/case for each empty beer case returned
iv.    $0.50/keg
v.     $0.125/keg for each empty keg returned
vi.    Travel pay to certain municipalities will be paid according to the attached schedule.
v.     $2.50 Wine barrel (equal to 5 cases)

# ARTICLE 16
## PAID FOR TIME

**Section 1.**

All employees covered by this Agreement shall be paid for all time spent in the service of the Employer. Rates of pay provided for by this Agreement shall be minimums. Time shall be computed from the time that the employees are ordered to report for work and register in and until the time they are effectively released from duty.

**Section 2**.

All time lost due to delays as a result of overloads or certificate violations involving Federal, State or City regulations, which occur through no fault of the employees, shall be paid for. Such payment for employee's time when not driving shall be the hourly rate.

## ARTICLE 17
### NO STRIKE CLAUSE

During the terms of this Agreement, there shall be no strikes slowdowns, picket lines, stoppages of work, or boycotts by the Union or its Members, unless the Employer shall refuse to go to arbitration or fails to abide by the decision of an arbitrator.

## ARTICLE 18
### HEALTH AND WELFARE FUND

a)    This Health and Welfare Article shall supersede and prevail over any other inconsistent provisions or articles contained within this agreement.

b)    Commencing with the 1st day of November, 2022, and for the duration of the current collective bargaining agreement between Local Union No. 25 and the Employer, and any renewals or extensions thereof, the Employer agrees to make payments to the Teamsters Union 25 Health Services & Insurance Plan (hereinafter referred to as the "Health Plan") for each and every employee performing work within the scope of and/or covered by this collective bargaining agreement.

Effective November 1, 2021, the Employer agrees to make contributions to the Health Plan for all employees whether such employee is a regular, probationary, temporary or casual employee including spares, irrespective of his status as a member or non-member of the Local Union, from the first hour of employment subject to this collective bargaining agreement as follows:

For each hour or portion thereof, figured to the nearest quarter hour for which an employee receives pay or for which pay is due, the Employer shall make a contribution of $13.9125 to the Health Plan from the first hour of employment, up to a maximum of forty (40) hours per week.

Commencing with the 1st day of August 2023, the said hourly contribution rate shall be $14.4125.

29

Date Filed 8/19/2024 12:22 PM
Superior Court - Norfolk
Docket Number 2482CV00648     Case 1:24-cv-12124   Document 1-2   Filed 08/19/24   Page 34 of 48

Commencing with the 1st day of August 2024, the said hourly contribution rate shall be $14.9125.

Commencing with the 1st day of August 2025, the said hourly contribution rate shall be $15.4125.

Commencing with the 1st day of August 2026, the said hourly contribution rate shall be $15.9125

Commencing with the 1st day of August 2027, the said hourly contribution rate shall be $16.4125.

The Employer agrees to make contributions up to a maximum of forty (40) hours on behalf of all regular employees who may be on layoff status during any payroll period but has completed three (3) days of work in that payroll period.

For purposes of this section, each hour for which wages are paid or due, or any portion thereof, figured to the nearest quarter hour, as well as hours of paid vacation, paid holidays and other hours for which pay is due or received by the employee, shall be counted as hours for which contributions are payable, provided however, that contributions shall be payable from the first hour of employment, up to a maximum of forty (40) hours per week.

If a regular employee (as defined in the collective bargaining agreement) is absent because of illness or off-the-job injury and notifies the Employer of such absence, the Employer shall continue to make the required contributions of thirty-two (32) hours per week for a period of four (4) weeks. If an employee is injured on the job, the Employer shall continue to pay the required contributions at the rate of thirty-two (32) hours for each such week until the employee returns to work; however, such contributions of thirty- two (32) hours shall not be paid for a period of more than twelve (12) months.

There shall be no deduction from equipment rental of owner-operators by virtue of the contributions made to the Health Plan, regardless of whether the equipment rental is at the minimum rate or more, and regardless of the manner of computation of owner-driver compensation.

Hourly contributions to the Health Plan must be made for each hour worked on each regular or extra employee, even though such employee may work only part time under the provisions of this contract, including weeks where work is performed for the Employer but not under the provisions of this contract, and although contributions may be made for those weeks into some other Health and Welfare Fund.

In the case of employees paid on a mileage basis, the numbers of hours of contribution to the Health Plan shall be determined by dividing that employee's gross earnings for the week by the current hourly rate. Gross earnings shall include any other hours paid for, such as waiting time, breakdown time, pick-up and drop-off time, subject to the maximum weekly amount of contributions set forth above, not to exceed forty (40) hours per week per employee.

c)     The Employer agrees to and has executed a copy of the Teamsters Union 25 Health Services & Insurance Plan Agreement and Declaration of Trust dated April 1, 1997 and accepts such Agreement and Declaration of Trust, as amended, and ratifies the selection of the Employer

30



Case 1:24-cv-12124-PBS    Document 8    Filed 08/22/24    Page 88 of 114

Date Filed 8/19/2024 12:22 PM
Superior Court - Norfolk
Docket Number 2482CV00648    Case 1:24-cv-12124    Document 1-2    Filed 08/19/24    Page 35 of 48

Trustees now or hereafter serving as such, and all action heretofore or hereafter taken by them within the scope of their authority under such Agreement and Declaration of Trust.

d)    The parties agree that the Plan adopted by the Trustees of the Health Plan shall at all times conform to the requirements of the Internal Revenue Code so as to enable the Employer at all times to treat its contributions made to the Health Plan as a deduction for income tax purposes.

e)    It is also agreed that all contributions shall be made at such time and in such manner as the Trustees shall reasonably require; and the Trustees shall have the authority to have an audit of the payroll and wage records of the Employer for all employees performing work within the scope and/or covered by this collective bargaining agreement for the purpose of determining the accuracy of contributions to the Health Plan and adherence to the requirements of this section of the collective bargaining agreement regarding coverage and contributions. Such audit may, at the option of the Trustees, be conducted by an independent certified public accountant or a certified public accountant employed by the Health Plan.

If the Employer shall fail to make contributions to the Health Plan by the fifteenth (15th) day of the month following the month during which the employees performed work or received pay or were due pay within the scope of this collective bargaining agreement, up to and including the last completed payroll period in the month for which contributions must be paid, or if the Employer, having been notified that its contributions to the Health Plan have been under-reported and/or underpaid, fails within twenty (20) days after such notification to make any required self-audit and/or contributions found to be due, the Local Union shall have the right after an appropriate 72-hour notice to the Employer, to take whatever steps it deems necessary to secure compliance with this agreement, any provision of this collective bargaining agreement to the contrary notwithstanding, and the Employer shall be responsible to the employees for losses resulting therefrom. Also, the Employer shall be liable to the Trustees for all costs of collecting the payments due together with attorneys' fees and such interest, liquidated damages or penalties which the Trustees may assess or establish in their discretion. The Employer's liability for payment hereunder shall not be subject to the grievance procedure and /or arbitration if such is provided in this Agreement.

It is understood and agreed that once a payment or payments are referred to an attorney for collection by the Trustees of the Health Plan and/or the Local Union, the Local Union and its Business Agents or Chief Executive Officer shall have no right to modify, reduce or forgive the Employer with respect to its liability for unpaid contributions, interest, liquidated damages or penalty as may be established or assessed by the Trustees in their discretion against delinquent Employers.

f)    No oral or written modification of this section regarding health and welfare contributions shall be made by the Local Union or the Employer, and, if made, such modification shall not be binding upon the employees performing work within the scope of this collective bargaining agreement and covered by this section or upon the Trustees of the Health Plan.

g)    All Employers contributing hereunder shall post each month at each terminal or other place of business where employees have easy access thereto an exact copy of the remittance report form of contributions sent to the Health Plan.



Date Filed 8/19/2024 12:22 PM
Superior Court - Norfolk
Docket Number 2482CV00648

h)   Whenever an Employer signatory to this Agreement becomes delinquent in contributions owed to the Health Plan and the Local Union serves a 72-hour notice of delinquency set forth in this Agreement, such Employer after satisfying the delinquency and becoming current, and then during the term of this Agreement becomes delinquent again, shall be required to post a performance bond to satisfy that second delinquency and/or any further delinquencies during the term of this Agreement.



# ARTICLE 19
## NEW ENGLAND TEAMSTERS AND TRUCKING INDUSTRY PENSION FUND

(a)   This Pension Article shall supersede and prevail over any other inconsistent provisions or articles contained within this Agreement.

(b)   Commencing with the 1st day of November, 2022 and for the duration of the current collective bargaining agreement between Local Union 25 and the Employer, and any renewals or extensions thereof, the Employer agrees to make payments to the New England Teamsters and Trucking Industry Pension Fund for each and every employee performing work within the scope of and/or covered by this collective bargaining agreement, whether such employee is a regular, probationary, temporary or casual employee, irrespective of his status as a member or non-member of the Local Union, from the first hour of employment subject to this collective bargaining agreement as follows:

For each hour or portion thereof, figured to the nearest quarter hour for which an employee receives pay or for which pay is due the Employer shall make a contribution of $6.25 to the New England Teamsters and Trucking Industry Pension Fund but not more than $250.00 per week for any one employee from the first hour of employment in such week.

Commencing with the 1st day of November 2023, the said hourly contribution rate shall be $6.50 but not more than $260.00 per week for any one employee.

Commencing with the 1st day of November 2024, the said hourly contribution rate shall be $6.75 but not more than $270.00 per week for any one employee.

Commencing with the 1st day of November 2025, the said hourly contribution rate shall be $7.00 but not more than $280.00 per week for any one employee.

Commencing with the 1st day of November 2026, the said hourly contribution rate shall be $7.50 but not more than $300.00 per week for any one employee.

**Commencing with the 1st day of November 2022 and for the duration of the agreement, the said hourly contribution rate for spare employees only shall be $4.80 but not more than $192.00 per week for any one spare employee.**

Commencing with the 1st day of November 2022 and for the duration of the current collective bargaining agreement and any renewals or extensions thereof, the Employer agrees to make payments to the New England Teamsters and Trucking Industry Pension Fund as follows:

(1)   The Employer agrees to make contributions up to a maximum of forty (40) hours in behalf of all regular employees who may be on layoff status during any payroll period but has completed three (3) days of work in that payroll period.

For purposes of this section, each hour for which wages are paid or due, or any portion thereof, figured to the nearest quarter hour, as well as hours of paid vacation, paid holidays and other hours for which pay is due or received by the employee, shall be counted as hours for which contributions are payable. In computing the maximum amount due any week, there shall be no daily limit on the number of hours for any one day in such week,

33

whether such hours are performed on straight time or overtime rates, but payments shall be made at the amount set forth above.

In the case of employees paid on a mileage basis, the number of hours of contribution to the Pension Fund shall be determined by dividing that employee's gross earnings for the week by the current hourly rate. Gross earnings shall include any other hours paid for, such as waiting time, breakdown time, pick-up and drop-off time, subject to the maximum weekly amount of contributions set forth above, not to exceed forty (40) hours per week per employee.

If a regular employee (as defined in the collective bargaining agreement) is absent because of illness or off-the-job injury and notifies the Employer of such absence, the Employer shall continue to make the required contributions for a period of four (4) weeks for forty (40) hours per week. If an employee is injured on the job, the Employer shall continue to pay the required contributions at the rate of forty (40) hours for each such week until the employee returns to work; however, such contributions of forty (40) hours shall not be paid for a period of more than twelve (12) months.

(c)     The Employer agrees to and has executed a copy of the New England Teamsters and Trucking Industry Pension Fund Agreement and Declaration of Trust dated April 11, 1958, and accepts such Agreement and Declaration of Trust, as amended, and ratifies the selection of the Employer Trustees now or hereafter serving as such, and all action heretofore or hereafter taken by them within the scope of their authority under such Agreement and Declaration of Trust.

(d)     The parties agree that the Pension Plan adopted by the Trustees of the New England Teamsters and -Trucking Industry Pension Fund shall at all times conform to the requirements of the Internal Revenue Code so as to enable the Employer at all times to treat its contributions made to the Fund as a deduction for income tax purposes.

(e)     It is also agreed that all contributions shall be made at such time and in such manner as the Trustees shall reasonably require; and the Trustees shall have the authority to have an audit of the payroll and wage records of the Employer for all employees performing work within the scope and/or covered by this collective bargaining agreement for the purpose of determining the accuracy of contributions to the Pension Fund and adherence to the requirements of this Section of the collective bargaining agreement regarding coverage and contributions, such audit may, at the option of the Trustees, be conducted by an independent certified public accountant or a certified public accountant employed by the New England Teamsters and Trucking Industry Pension Fund.

If the Employer shall, fail to make contributions to the Pension Fund by the twentieth (20th) day of the month following the month during which the employees performed work or received pay or were due pay within the scope of this collective bargaining agreement, up to and including the last completed payroll period in the month for which contributions must be paid, or if the Employer, having been notified that its contributions to the Fund have been under reported and/or underpaid, fails within twenty (20) days after such notification to make any required self-audit and/or contributions found to be due, the Local Union shall have the right after an appropriate 72-hour notice to the Employer, to take whatever steps it deems necessary to secure compliance with this Agreement, any provision of this collective bargaining agreement to the contrary

34

Date Filed 8/19/2024 12:22 PM
Superior Court - Norfolk
Docket Number 2482CV00648

notwithstanding, and the Employer shall be responsible to the employees for losses resulting therefrom.

Also, the Employer shall be liable to the Trustees for all costs of collecting the payments due together with attorneys' fees and such interest, liquidated damages or penalties which the Trustees may assess or establish in their discretion. The Employer's liability for payment hereunder shall not be subject to the grievance procedure and/or arbitration if such is provided in this Agreement.

It is understood and agreed that once a payment or payments are referred to an attorney for collection by the Trustees of the New England Teamsters and Trucking Industry Pension Fund and/or the Local Union, the Local Union and its business agents or chief executive officer shall have no right to modify, reduce or forgive the Employer with respect to its liability for unpaid contributions, interest, liquidated damages or penalty as may be established or assessed by the Trustees in their discretion against delinquent Employers.

There shall be no deduction for equipment rental of owner-operators by virtue of the contributions made to the Pension Fund, regardless of whether the equipment rental is at the minimum rate or more, and regardless of the manner of computation of owner-driver compensations.

Contributions to the Pension Fund must be made for each week on each regular or extra employee, even though such employee may work only part time under the provisions of this contract, including weeks where work is performed for the Employer but not under the provisions of this contract, and, although contributions may be made for those weeks into some other Pension Fund.

(f)     No oral or written modification of this section regarding pensions and retirement shall be made by the Local Union or the Employer and, if made, such modification shall not be binding upon the employees performing work within the scope of this collective bargaining agreement and covered by this section or upon the Trustees of the New England Teamsters and Trucking Industry Pension Fund.

(g)     All Employers contributing hereunder shall post each month at each terminal or other place of business where employees have easy access thereto an exact copy of the remittance report form of contributions sent to the Fund.

(h)     Whenever an Employer signatory to this Agreement becomes delinquent in contributions owed to the Pension Fund and the Local Union serves a 72-hour notice of delinquency set forth in this Agreement, such Employer after satisfying the delinquency and becoming current, and then during the term of this Agreement becomes delinquent again, shall be required to post a performance bond to satisfy that second delinquency and/or any further delinquencies during the term of this Agreement.

35



Case 1:24-cv-12124-PBS    Document 8    Filed 08/22/24    Page 93 of 114

Date Filed 8/19/2024 12:22 PM
Superior Court - Norfolk
Docket Number 2482CV00648    Case 1:24-cv-12124    Document 1-2    Filed 08/19/24    Page 40 of 48

# ARTICLE 20
## SEPARABILITY AND SAVINGS PROVISIONS

**Section 1.**

If any Article or Section of this Agreement or any Riders thereto should be held invalid by operation of law or by any tribunal of competent jurisdiction, or if compliance with or enforcement of any Article or Section should be restrained by such tribunal pending a final determination as to its validity, the remainder of this Agreement and of any Riders thereto, or the application of such Article or Section to persons or circumstances other than those as to which it has been held invalid or as to which compliance with or enforcement of has been restrained, shall not be affected thereby.

**Section 2.**

In the event that any Article or Section is held invalid or enforcement of or compliance with which has been restrained, as above set forth, the parties affected thereby shall enter into immediate collective bargaining negotiations, upon the request of the Union, for the purpose of arriving at a mutually satisfactory replacement for such Article or Section during the period of invalidity or restraint. If the parties do not agree on a mutually satisfactory replacement, either party shall be permitted all legal or economic recourse in support of its demands notwithstanding any provisions of this Agreement to the contrary.

# ARTICLE 21
## EMERGENCY REOPENING

**Section 1.**

In the event of war, declaration of emergency or imposition of economic controls during the life of this Agreement, either party may re-open the same upon sixty (60) days written notice and request re-negotiation of matters dealing with wages and hours. Upon failure of the parties to agree in such negotiations either party shall be permitted all lawful economic recourse to support its request for revisions. If Governmental approval of revisions should become necessary, all parties will cooperate to the utmost to attain such approval.

**Section 2**.

The parties agree that the notice provided herein shall be accepted by all parties as compliance with the notice requirements of applicable law, so as to permit economic action at the expiration thereof.

# ARTICLE 22

**Section 1.**

Upon the failure of the parties to agree in such negotiations within sixty (60) days, thereafter each party shall be permitted all lawful economic recourse to support its request. The parties agree that the notice provision provided herein shall be accepted by all parties as compliance with notice requirements of applicable law, so as to permit economic action at the expiration thereof.

**Section 2.**

For the purpose of preserving work and job opportunities for the employees covered by this Agreement, the Employer agrees that no work or services of the kind, nature or type covered by, presently performed, or hereafter assigned to the collective bargaining unit will be subcontracted, transferred, leased, assigned or conveyed in whole or in part to any other plant, person or nonunit employees, unless otherwise provided in this Agreement.

# ARTICLE 23
## SYMPATHETIC ACTION

In the event of a labor dispute between any Employer or Union, during the course of which dispute such Union engages in lawful economic activities which are not in violation of this Agreement, then any other affiliate of the International Brotherhood of Teamsters having an agreement with such Employer shall have the right to engage in lawful economic activity against such Employer in support of the Union which is party to this Agreement notwithstanding anything to the contrary in the agreement between such Employer and such other affiliate.

# ARTICLE 24
## NON DISCRIMINATION

**Section 1.**

In accordance with applicable law, the Employer and the Union agree not to discriminate against any individual with respect to hiring, compensation, terms or conditions of employment because of such individual's race, color, religion, sex, national origin, pregnancy, or age, nor will they limit, segregate or classify employees in any way to deprive any individual employee of employment opportunities because of race, color, religion, sex, national origin, pregnancy, or age. Nothing shall prevent the Company or the Union from complying with the Americans with Disabilities Act.

**Section 2.**

37

The Company and the Union agree that there will be no discrimination by the Company or the Union against any employee because of his or her membership in the Union or because of any employee's lawful activity and/or support of the Union.

**Section 3.**

The term "he" or "his" as used in this Agreement is not meant to be discriminatory and shall apply equally to male and female employees.

# ARTICLE 25
## EMPLOYEE VOLUNTARY PRE-TAX CONTRIBUTION TO LOCAL 25 NEW ENGLAND TEAMSTERS SAVINGS AND INVESTMENT PLAN

The Employer hereby agrees to participate in the Local 25 New England Teamsters Savings & Investment Plan 401(K) (Massachusetts Financial Services MFS) ("the Plan") on behalf of all employees represented for purposes of collective bargaining under this agreement.

The Employer will make or cause to be made, payroll deductions from participating employees' wages, in accordance with each employee's salary deferral election subject to compliance with ERISA and the relevant tax code provisions. The Employer will forward the withheld sum to Massachusetts Financial Services (MFS) in such form and manner as required pursuant to the Plan and Declaration of Trust (the "Trust").

The Employer will execute a Participation Agreement with New England Teamsters Savings & Investment Plan 401(K) Massachusetts Financial Services (MFS) and the Trustees of the Plan evidencing Employer participation in the Plan effective prior to any employee deferral being received by the Plan.

# ARTICLE 26
## ANTI-TERRORISM CLAUSE

The Employer agrees that it will have no investments in or dealings of any kind with any foreign government that harbors, sponsors or supports terrorism or which impedes the efforts of the United States against terrorism. Notwithstanding anything contained elsewhere in this agreement, violations of this clause shall not be the subject of grievance arbitration and the Union hereby reserves its rights to take economic action, including a strike or other withholding of services, to enforce this clause.

# ARTICLE 27
## MILITARY SERVICE HEALTH SERVICES & INSURANCE COVERAGE

38

Case 1:24-cv-12124-PBS    Document 8    Filed 08/22/24    Page 96 of 114

Date Filed 8/19/2024 12:22 PM
Superior Court - Norfolk
Docket Number 2482CV00648    Case 1:24-cv-12124   Document 1-2   Filed 08/19/24   Page 43 of 48

The employer agrees that it shall pay contributions to the Teamsters Union 25 HSIP for any member of the bargaining unit in the military reserve who is called up or activated for service. The period for which such contributions shall be deemed payable in accordance with this paragraph shall be equal in duration to the period for which the member shall be called up or activated, at the rate of 32 hours a week for a maximum of 26 weeks. Contributions for members who average less than a 32 hour work week, in the three months preceding activation, will be made in an amount equal to their average number of hours for the twelve weeks preceding activation.

## ARTICLE 28
### MANAGEMENTS RIGHTS CLAUSE

The Union recognizes that the Employer reserves the right to operate and manage the business and affairs of the Employer, except as may be modified by this agreement. The Employer and the Union agree that it is the responsibility of the Employer to manage its work site, to select its customers, to direct the method of work to the employees, to determine job content, to determine Employer policies and procedures if mutually agreed to by the Union, to establish and enforce reasonable rules and regulations if mutually agreed to by the Union, to evaluate and to warn, discipline or discharge for just cause. It is understood and agreed that Employer continues to exercise every right and privilege it had before signing this agreement unless limited by this agreement.

## ARTICLE 29
### GROUP LEGAL SERVICES FUND

a)  This Group Legal Services Article shall supersede and prevail over any other inconsistent provisions or articles contained within this agreement.

b)  Commencing with the 1st day of November, 2022, and for the duration of the current collective bargaining agreement between Local Union 25 and the Employer, and any renewals or extensions thereof, the Employer agrees to make payments to the New England Teamsters and Subscribing Employers Group Legal Services Fund (hereinafter referred to as the "Group Legal Services Fund") for each and every employee performing work within the scope of and/or covered by this collective bargaining agreement, whether such employee is a regular, probationary, temporary or casual employee, irrespective of his status as a member or non-member of the Local Union, from the first hour of employment subject to this collective bargaining agreement as follows:

For each hour or portion thereof, figured to the nearest quarter hour for which an employee receives pay or for which pay is due, the Employer shall make a contribution of $0.20 to the Group Legal Services Fund from the first hour of employment, up to a maximum of forty (40) hours per week.

c)  For purposes of this section, each hour for which wages are paid or due, or any portion thereof, figured to the nearest quarter hour, as well as hours of paid vacation, paid holidays and other hours for which pay is due or received by the employee, shall be counted as hours

39

Date Filed 8/19/2024 12:22 PM
Superior Court - Norfolk
Docket Number 2482CV00648    Case 1:24-cv-12124    Document 1-2    Filed 08/19/24    Page 44 of 48

for which contributions are payable, provided however, that contributions shall be payable from the first hour of employment, up to a maximum of forty (40) hours per week.

d) The Employer agrees to and has executed a copy of the New England Teamsters and Subscribing Employers Group Legal Services Fund Agreement and Declaration of Trust dated November 30, 1989, (hereinafter referred to as the "Trust Agreement") and accepts such Trust Agreement, as amended, and ratifies the selection of the Employer Trustees now or hereafter serving as such, and all action heretofore or hereafter taken by them within the scope of their authority under such Trust Agreement.

e) The parties agree that the Plan adopted by the Trustees of the Group Legal Services Fund shall at all times conform to the requirements of the Internal Revenue Code so as to enable the Employer at all times to treat its contributions made to the Group Legal Services Fund as a deduction for income tax purposes.

f) It is also agreed that all contributions shall be made at such time and in such manner as the Trustees shall reasonably require; and the Trustees shall have the authority to have an audit of the payroll and wage records of the Employer for all employees performing work within the scope and/or covered by this collective bargaining agreement for the purpose of determining the accuracy of contributions to the Group Legal Services Plan and adherence to the requirements of this section of the collective bargaining agreement regarding coverage and contributions. Such audit may, at the option of the Trustees, be conducted by an independent certified public accountant or a certified public accountant employed by the Group Legal Services Fund.

g) If the Employer shall fail to make contributions to the Group Legal Services Plan by the twentieth (20th) day of the month following the month during which the employees performed work or received pay or were due pay within the scope of this collective bargaining agreement, up to and including the last completed payroll period in the month for which contributions must be paid, or if the Employer, having been notified that its contributions to the Group Legal Services Plan have been under-reported and/or underpaid, fails within twenty (20) days after such notification to make any required self-audit and/or contributions found to be due, the Local Union shall have the right after an appropriate 72-hour notice to the Employer, to take whatever steps it deems necessary to secure compliance with this agreement, any provision of this collective bargaining agreement to the contrary notwithstanding, and the Employer shall be responsible to the employees for losses resulting therefrom. Also, the Employer shall be liable to the Trustees for all costs of collecting the payments due together with attorneys' fees and such interest, liquidated damages or penalties which the Trustees may assess or establish in their discretion. The Employer's liability for payment hereunder shall not be subject to the grievance procedure and /or arbitration if such is provided in this Agreement.

40



Case 1:24-cv-12124-PBS    Document 8    Filed 08/22/24    Page 98 of 114

Date Filed 8/19/2024 12:22 PM
Superior Court - Norfolk
Docket Number 2482CV00648    Case 1:24-cv-12124    Document 1-2    Filed 08/19/24    Page 45 of 48

h)   It is understood and agreed that once a payment or payments are referred to an attorney for collection by the Trustees of the Group Legal Services Plan and/or the Local Union, the Local Union and its Business Agents or Chief Executive Officer shall have no right to modify, reduce or forgive the Employer with respect to its liability for unpaid contributions, interest, liquidated damages or penalty as may be established or assessed by the Trustees in their discretion against delinquent Employers.

i)   No oral or written modification of this section regarding Group Legal Services Plan contributions shall be made by the Local Union or the Employer, and, if made, such modification shall not be binding upon the employees performing work within the scope of this collective bargaining agreement and covered by this section or upon the Trustees of the Group Legal Services Plan.

j)   All Employers contributing hereunder shall post each month at each terminal or other place of business where employees have easy access thereto an exact copy of the remittance report form of contributions sent to the Group Legal Services Plan.

k)   Whenever an Employer signatory to this Agreement becomes delinquent in contributions owed to the Group Legal Services Plan and the Local Union serves a 72-hour notice of delinquency set forth in this Agreement, such Employer after satisfying the delinquency and becoming current, and then during the term of this Agreement becomes delinquent again, shall be required to post a performance bond to satisfy that second delinquency and/or any further delinquencies during the term of this Agreement.

## ARTICLE 30
### TERMINATION AND RENEWAL

**Section 1.**

The signature of the Employer below indicates that said Employer understands and is willing to have the present plant or any that said Employer may open within the jurisdiction of this Local Union operated in accordance with the terms of this Agreement.

**Section 2.**

This Agreement shall take effect on, and all changes with respect to wages and conditions shall be effective from November 1, 2022 and shall remain in full force and effect through October 31, 2027 at midnight, and shall then and thereafter renew itself from year to year unless either party hereto gives written notice to the other party, not less than sixty (60) days prior to the date of expiration, of a desire to change or amend the terms and conditions hereof.

41

Date Filed 8/19/2024 12:22 PM
Superior Court - Norfolk
Docket Number 2482CV00648

IN WITNESS WHEREOF, the parties have hereunto executed this Agreement.

Signed this_____ day of _____, 2022 by our duly authorized representatives.

FOR THE EMPLOYER:                    FOR THE UNION:

M.S. WALKER, INC.                    TEAMSTERS, LOCAL UNION NO. 25
                                     affiliated with the International Brotherhood
                                     of Teamsters

BY: _____          BY: _____

TITLE: _____         TITLE: _____

DATE: _____         DATE: _____


                                     BY: _____

                                     TITLE: _____

                                     DATE: _____

42

Case 1:24-cv-12124-PBS   Document 8   Filed 08/22/24   Page 100 of 114

Date Filed 8/19/2024 12:22 PM
Superior Court - Norfolk
Docket Number 2482CV00648   Case 1:24-cv-12124   Document 1-2   Filed 08/19/24   Page 47 of 48

# SCHEDULE A

## Wage & Pension Classification
*The company agrees to pay all list drivers with an active CDL Driver List Rate, regardless of daily job function as a driver or driver helper.*

| Wage Job Class | Current | + | 11/1/2022 | + | 11/1/2023 | + | 11/1/2024 | + | 11/1/2025 | + | 11/1/2026 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Driver List | 28.05 | $1.75 | $29.80 | $1.50 | $31.30 | $1.25 | $32.55 | $1.75 | $34.30 | $2.00 | $36.30 |
| Helper List | 24.9 | $1.75 | $26.65 | $1.50 | $28.15 | $1.25 | $29.40 | $1.75 | $31.15 | $2.00 | $33.15 |
| Casual/Spare Helper | 19.4 | $3.60 | $23.00 | $1.00 | $24.00 | $1.00 | $25.00 | $1.00 | $26.00 | $1.00 | $27.00 |
| Night Yard Jockey | N/A | N/A | $30.80 | $1.50 | $32.30 | $1.25 | $33.55 | $1.75 | $35.30 | $2.00 | $37.30 |
| Casual/Spare CDL | N/A | N/A | $26.65 | $1.50 | $28.15 | $1.25 | $29.40 | $1.75 | $31.15 | $2.00 | $31.90 |
| Checker/receiver | N/A | N/A | $31.80 | $1.50 | $33.30 | $1.25 | $34.55 | $1.75 | $36.30 | $2.00 | $38.30 |
| Porter | N/A | N/A | $26.65 | $1.50 | $28.15 | $1.25 | $29.40 | $1.75 | $31.15 | $2.00 | $33.15 |
| Pension Job Class | | | 11/1/2022 | | 11/1/2023 | | 11/1/2024 | | 11/1/2025 | | 11/1/2026 |
| Driver List | 4.8 | $1.45 | $6.25 | $0.25 | $6.50 | $0.25 | $6.75 | $0.25 | $7.00 | $0.50 | $7.50 |
| Helper List | 4.8 | $1.45 | $6.25 | $0.25 | $6.50 | $0.25 | $6.75 | $0.25 | $7.00 | $0.50 | $7.50 |
| Casual/Spare Helper | 4.8 | N/A | $4.80 | $0.00 | $4.80 | $0.00 | $4.80 | $0.00 | $4.80 | $0.00 | $4.80 |
| Night Yard Jockey | N/A | N/A | $6.25 | $0.25 | $6.50 | $0.25 | $6.75 | $0.25 | $7.00 | $0.50 | $7.50 |
| Casual/Spare CDL | N/A | N/A | $4.80 | $0.00 | $4.80 | $0.00 | $4.80 | $0.00 | $4.80 | $0.00 | $4.80 |
| Checker/Receiver | 4.8 | $1.45 | $6.25 | $0.25 | $6.50 | $0.25 | $6.75 | $0.25 | $7.00 | $0.50 | $7.50 |
| Porter | 4.8 | $1.45 | $6.25 | $0.25 | $6.50 | $0.25 | $6.75 | $0.25 | $7.00 | $0.50 | $7.50 |

** If a driver goes out as a helper they will be paid the Driver rate of pay.**

- Any employee starting 2:00PM or later shall receive a night differential of $1.00 per hour.

Signing Bonus – Effective November 1, 2022, all employees shall receive a Two Thousand Two Hundred and Fifty Dollar ($2,250.00) per bargaining unit employee to be paid in the first pay period following ratification.

The company shall pay a rolling implementation bonus of Five Hundred Dollars ($500.00) per month to each driver and helper during the period before the implementation of the new daily bidding/incentive system. This shall be paid in the first pay period of each month while implementation is underway and shall end when implementation is complete. Implementation shall be complete no later than April 30, 2023.

The Company agrees that it will remit all applicable contributions, as required by Article 19, to the New

43

Date Filed 8/19/2024 12:22 PM
Superior Court - Norfolk
Docket Number 2482CV00648
Case 1:24-cv-12124-PBS   Document 8   Filed 08/22/24   Page 101 of 114
Case 1:24-cv-12124   Document 1-2   Filed 08/19/24   Page 48 of 48

England Teamsters & Trucking Industry Pension Fund for the period of time its employees were receiving Workers Compensation benefits from the period of November 1, 2017 through October 31, 2022 and, in addition, the Company will pay the appropriate Workers Compensation benefits to the employees who, while on vacation, did not receive the Workers Compensation benefits to which they were entitled. All pension contributions to the Fund and workers compensation payments to the employees shall be made and/or remitted no later than December 15, 2022 and the Union shall be provided documentation of the payments.

SIGNED FOR RATIFICATION:

MS. Walker

Keith McCown

Date: October 28, 2022

Teamsters Local Union No. 25



Steven J. South, Secretary-Treasurer

10-28-22



# EXHIBIT C

COMMONWEALTH OF MASSACHUSETTS

NORFOLK, ss.                                SUPERIOR COURT DIVISION
                                           OF THE TRIAL COURT

---

**DAVID ALBERNAZ, ET AL.,**

    **Plaintiffs,**

**v.**                                     CIVIL ACTION NO.: 2482CV00648

**M.S. WALKER, INC.,**

    **Defendant.**

---

TO:   Civil Clerk of the Superior Court
      Norfolk County Superior Court
      650 High Street
      Dedham, MA 02026

**<u>NOTICE OF FILING OF NOTICE OF REMOVAL OF ACTION TO FEDERAL COURT</u>**

PLEASE TAKE NOTICE that pursuant to 28 U.S.C. §§ 1441 and 1446, a Notice of

Removal of Action to Federal Court (with attachments hereto) and a Notice to Counsel of

Removal of Action to Federal Court are being filed this day with the Clerk of the United States

District Court for the District of Massachusetts. Copies of said Notice of Removal and a Notice

to Counsel of Removal are attached hereto as <u>Exhibits 1 and 2</u>, respectively.

Defendant in the above-entitled action, M.S. Walker, Inc. ("Defendant"), upon the filing

of the Notice of Removal and this Notice, has effectuated this removal in accordance with 28

U.S.C. § 1446(d). This Court is respectfully requested to proceed no further with this action

unless and until the case is remanded by order of the United States District Court.

1

Respectfully Submitted,

**M.S. Walker, Inc.,**

By its Attorneys,

/s/ Brendan Sweeney
Keith H. McCown (BBO No. 329980)
Damien M. DiGiovanni (BBO No. 682005)
Brendan T. Sweeney (BBO No. #703992)
MORGAN, BROWN & JOY, LLP
200 State Street, Suite 11A
Boston, MA  02109-2605
(617) 523-6666
kmccown@morganbrown.com
ddigiovanni@morganbrown.com
bsweeney@morganbrown.com

Dated: August 19, 2024

## CERTIFICATE OF SERVICE

I, Brendan T. Sweeney, hereby certify that a copy of the within pleading was served by first class mail and email upon counsel at the addresses below this 19th day of August, 2024:

Daniel W. Rice, Esq.
Harrington Rice & Maglione, LLC
738 Main Street
Hingham, MA 02043
(781) 964-8377
dwr@harringtonrice.com

/s/ Brendan Sweeney
Brendan T.  Sweeney

2

# EXHIBIT D

Date Filed 8/19/2024 12:22 PM
Superior Court - Norfolk
Docket Number 2482CV00648

Case 1:24-cv-12124   Document 1-4   Filed 08/19/24   Page 2 of 3

COMMONWEALTH OF MASSACHUSETTS

NORFOLK, ss.                                      SUPERIOR COURT DIVISION
                                                 OF THE TRIAL COURT

**DAVID ALBERNAZ, ET AL.,**

       **Plaintiffs,**

**v.**                                           CIVIL ACTION NO.: 2482CV00648

**M.S. WALKER, INC.,**

       **Defendant.**

TO:     Daniel W. Rice, Esq.
          Harrington Rice & Maglione, LLC
          738 Main Street
          Hingham, MA 02043
          (781) 964-8377
          dwr@harringtonrice.com

## **NOTICE TO PLAINTIFFS' COUNSEL OF REMOVAL OF ACTION TO FEDERAL COURT**

PLEASE TAKE NOTICE that Defendant in the above-entitled action, M.S. Walker, Inc.,

("Defendant"), has on this 19th[th] day of August, filed in the United States District Court for the

District of Massachusetts, its Notice of Removal of the above-captioned matter from the Superior

Court for Norfolk County to the United States District Court for the District of Massachusetts (a

copy of said Notice is attached hereto), together with a copy of the Complaint filed by the

Plaintiff in the Superior Court for Norfolk County.

You are also advised that said Defendant, upon filing said Notice, filed a Notice of Filing

of Removal of Action to Federal Court with the Clerk for the Superior Court for Norfolk County

and attached thereto copies of the following (1) Notice of Removal with exhibits attached

thereto; and (2) the Notice to Counsel of Removal of Action to Federal Court.

Such action has effectuated the removal of this action to the United States District Court

for the District of the Massachusetts, in accordance with the provisions of 28 U.S.C. §§ 1441 and

1446, and no further proceedings may be had in this state court action.

Respectfully Submitted,

**M.S. Walker, Inc.,**

By its Attorneys,

/s/ Brendan Sweeney
Keith H. McCown (BBO No. 329980)
Damien M. DiGiovanni (BBO No. 682005)
Brendan T. Sweeney (BBO No. #703992)
MORGAN, BROWN & JOY, LLP
200 State Street, Suite 11A
Boston, MA  02109-2605
(617) 523-6666
kmccown@morganbrown.com
ddigiovanni@morganbrown.com
bsweeney@morganbrown.com

Dated: August 19, 2024

## CERTIFICATE OF SERVICE

I, Brendan T. Sweeney, hereby certify that a copy of the within pleading was served by first class
mail and email upon counsel at the addresses below this 19th day of August, 2024:

> Daniel W. Rice, Esq.
> Harrington Rice & Maglione, LLC
> 738 Main Street
> Hingham, MA 02043
> (781) 964-8377
> dwr@harringtonrice.com

/s/ Brendan Sweeney
Brendan T.  Sweeney

Date Filed 8/19/2024 12:22 PM
Superior Court - Norfolk
Docket Number 2482CV00648

Case 1:24-cv-12124    Document 1-5    Filed 08/19/24    Page 1 of 1

## CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

### I. (a) PLAINTIFFS

DAVID ALBERNAZ, ET AL.

**DEFENDANTS**

M.S. WALKER, INC.

**(b)** County of Residence of First Listed Plaintiff   Bristol
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Norfolk
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Daniel W. Rice, Esq., Harrington Rice & Maglione, LLC, 738 Main Street, Hingham, MA 02043, (781) 964-8377,

Attorneys *(If Known)*

Brendan T. Sweeney, Esq., Morgan Brown & Joy LLP, 200 State Street, Suite 11A, Boston, MA 02109

### II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | | |
|---|---|---|
| ☐ 1  U.S. Government Plaintiff | ☒ 3  Federal Question *(U.S. Government Not a Party)* | |
| ☐ 2  U.S. Government Defendant | ☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)* | |

### III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

### IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Personal Injury | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' | Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | Liability | ☐ 368 Asbestos Personal | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 340 Marine | Injury Product Liability | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☒ 720 Labor/Management Relations | | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 861 HIA (1395ff) ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | ☐ 864 SSID Title XVI ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application ☐ 465 Other Immigration Actions | | |
| | ☐ 448 Education | ☐ 550 Civil Rights ☐ 555 Prison Condition ☐ 560 Civil Detainee - Conditions of Confinement | | | |

### V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| ☐ 1 Original Proceeding | ☒ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | | ☐ 8 Multidistrict Litigation - Direct File |

### VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
§ 301 of the Labor Management Relations Act
Brief description of cause:
Plaintiff claims non-payment of wages.

### VII. REQUESTED IN COMPLAINT:

☒ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $   0.00

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

### VIII. RELATED CASE(S) IF ANY

*(See instructions)*

JUDGE _____   DOCKET NUMBER _____

DATE   8/19/2024

SIGNATURE OF ATTORNEY OF RECORD   /s/ Brendan T. Sweeney

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

Date Filed 8/19/2024 12:22 PM
Superior Court - Norfolk
Docket Number 2482CV00648

Case 1:24-cv-12124   Document 1-6   Filed 08/19/24   Page 1 of 1

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

1.  Title of case (name of first party on each side only) David Albernaz, et al. v. M.S. Walker, Inc.

2.  Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet.   (See local rule 40.1(a)(1)).

    ☐   I.    160, 400, 410, 441, 535, 830*, 835*, 850, 880, 891, 893, R.23, REGARDLESS OF NATURE OF SUIT.

    ☐   II.   110, 130, 190, 196, 370, 375, 376, 440, 442, 443, 445, 446, 448, 470, 751, 820*, 840*, 895, 896, 899.

    ☑   III.  120, 140, 150, 151, 152, 153, 195, 210, 220, 230, 240, 245, 290, 310, 315, 320, 330, 340, 345, 350, 355, 360, 362,
              365, 367, 368, 371, 380, 385, 422, 423, 430, 450, 460, 462, 463, 465, 480, 485, 490, 510, 530, 540, 550, 555, 560,
              625, 690, 710, 720, 740, 790, 791, 861-865, 870, 871, 890, 950.
              *Also complete AO 120 or AO 121. for patent, trademark or copyright cases.

3.  Title and number, if any, of related cases. (See local rule 40.1(g)). If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.

4.  Has a prior action between the same parties and based on the same claim ever been filed in this court?
                                                                    YES ☐        NO ☑

5.  Does the complaint in this case question the constitutionality of an act of congress affecting the public interest?   (See 28 USC §2403)
                                                                    YES ☐        NO ☑
    If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?
                                                                    YES ☐        NO ☑

6.  Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?
                                                                    YES ☐        NO ☑

7.  Do **all** of the parties in this action, excluding governmental agencies of the United States and the Commonwealth of Massachusetts ("governmental agencies"),  residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).
                                                                    YES ☐        NO ☑

    A.    If yes, in which division do **all** of the non-governmental parties reside?

          Eastern Division ☐          Central Division ☐          Western Division ☐

    B.    If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?

          Eastern Division ☑          Central Division ☐          Western Division ☐

8.  If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes, submit a separate sheet identifying the motions)
                                                                    YES ☐        NO ☑

**(PLEASE TYPE OR PRINT)**
**ATTORNEY'S NAME** Brendan T. Sweeney, Esq.
**ADDRESS** Morgan Brown & Joy LLP, 200 State Street, Suite 11A Boston, MA 02109
**TELEPHONE NO.** (617) 523-6666

**(CategoryForm11-2020.wpd )**

Date Filed 8/19/2024 12:22 PM
Superior Court - Norfolk
Docket Number 2482CV00648

# EXHIBIT 2

Date Filed 8/19/2024 12:22 PM
Superior Court - Norfolk
Docket Number 2482CV00648

COMMONWEALTH OF MASSACHUSETTS

NORFOLK, ss.                                    SUPERIOR COURT DIVISION
                                               OF THE TRIAL COURT


**DAVID ALBERNAZ, ET AL.,**

          **Plaintiffs,**

**v.**                                         CIVIL ACTION NO.: 2482CV00648


**M.S. WALKER, INC.,**

          **Defendant.**


TO:    Daniel W. Rice, Esq.
       Harrington Rice & Maglione, LLC
       738 Main Street
       Hingham, MA 02043
       (781) 964-8377
       dwr@harringtonrice.com

## NOTICE TO PLAINTIFFS' COUNSEL OF REMOVAL OF ACTION TO FEDERAL COURT

PLEASE TAKE NOTICE that Defendant in the above-entitled action, M.S. Walker, Inc.,

("Defendant"), has on this 19th[th] day of August, filed in the United States District Court for the

District of Massachusetts, its Notice of Removal of the above-captioned matter from the Superior

Court for Norfolk County to the United States District Court for the District of Massachusetts (a

copy of said Notice is attached hereto), together with a copy of the Complaint filed by the

Plaintiff in the Superior Court for Norfolk County.

You are also advised that said Defendant, upon filing said Notice, filed a Notice of Filing

of Removal of Action to Federal Court with the Clerk for the Superior Court for Norfolk County

and attached thereto copies of the following (1) Notice of Removal with exhibits attached

Date Filed 8/19/2024 12:22 PM
Superior Court - Norfolk
Docket Number 2482CV00648

thereto; and (2) the Notice to Counsel of Removal of Action to Federal Court.

Such action has effectuated the removal of this action to the United States District Court

for the District of the Massachusetts, in accordance with the provisions of 28 U.S.C. §§ 1441 and

1446, and no further proceedings may be had in this state court action.

Respectfully Submitted,

**M.S. Walker, Inc.,**

By its Attorneys,

*/s/ Brendan Sweeney*
Keith H. McCown (BBO No. 329980)
Damien M. DiGiovanni (BBO No. 682005)
Brendan T. Sweeney (BBO No. #703992)
MORGAN, BROWN & JOY, LLP
200 State Street, Suite 11A
Boston, MA  02109-2605
(617) 523-6666
kmccown@morganbrown.com
ddigiovanni@morganbrown.com
bsweeney@morganbrown.com

Dated: August 19, 2024

## CERTIFICATE OF SERVICE

I, Brendan T. Sweeney, hereby certify that a copy of the within pleading was served by first class
mail and email upon counsel at the addresses below this 19th day of August, 2024:

Daniel W. Rice, Esq.
Harrington Rice & Maglione, LLC
738 Main Street
Hingham, MA 02043
(781) 964-8377
dwr@harringtonrice.com

*/s/ Brendan Sweeney*
Brendan T.  Sweeney

Date Filed 8/19/2024 12:22 PM
Superior Court - Norfolk
Docket Number 2482CV00648

Docketed 08/20/2024

5

COMMONWEALTH OF MASSACHUSETTS

NORFOLK, ss.                                    SUPERIOR COURT DIVISION
                                               OF THE TRIAL COURT

| |
|---|
| **DAVID ALBERNAZ, ET AL.,**<br><br>            **Plaintiffs,**<br><br>**v.**<br><br><br>**M.S. WALKER, INC.,**<br><br>            **Defendant.** |

CIVIL ACTION NO.: 2482CV00648

TO:     Daniel W. Rice, Esq.
        Harrington Rice & Maglione, LLC
        738 Main Street
        Hingham, MA 02043
        (781) 964-8377
        dwr@harringtonrice.com

**<u>NOTICE TO PLAINTIFFS' COUNSEL OF REMOVAL OF ACTION TO FEDERAL
COURT</u>**

        PLEASE TAKE NOTICE that Defendant in the above-entitled action, M.S. Walker, Inc.,

("Defendant"), has on this 19th<sup>th</sup> day of August, filed in the United States District Court for the

District of Massachusetts, its Notice of Removal of the above-captioned matter from the Superior

Court for Norfolk County to the United States District Court for the District of Massachusetts (a

copy of said Notice is attached hereto), together with a copy of the Complaint filed by the

Plaintiff in the Superior Court for Norfolk County.

        You are also advised that said Defendant, upon filing said Notice, filed a Notice of Filing

of Removal of Action to Federal Court with the Clerk for the Superior Court for Norfolk County

and attached thereto copies of the following (1) Notice of Removal with exhibits attached

Date Filed 8/19/2024 12:22 PM
Superior Court - Norfolk
Docket Number 2482CV00648

thereto; and (2) the Notice to Counsel of Removal of Action to Federal Court.

Such action has effectuated the removal of this action to the United States District Court

for the District of the Massachusetts, in accordance with the provisions of 28 U.S.C. §§ 1441 and

1446, and no further proceedings may be had in this state court action.

Respectfully Submitted,

**M.S. Walker, Inc.,**

By its Attorneys,

/s/ Brendan Sweeney
Keith H. McCown (BBO No. 329980)
Damien M. DiGiovanni (BBO No. 682005)
Brendan T. Sweeney (BBO No. #703992)
MORGAN, BROWN & JOY, LLP
200 State Street, Suite 11A
Boston, MA  02109-2605
(617) 523-6666
kmccown@morganbrown.com
ddigiovanni@morganbrown.com
bsweeney@morganbrown.com

Dated: August 19, 2024

## CERTIFICATE OF SERVICE

I, Brendan T. Sweeney, hereby certify that a copy of the within pleading was served by first class
mail and email upon counsel at the addresses below this 19th day of August, 2024:

Daniel W. Rice, Esq.
Harrington Rice & Maglione, LLC
738 Main Street
Hingham, MA 02043
(781) 964-8377
dwr@harringtonrice.com

/s/ Brendan Sweeney
Brendan T.  Sweeney

I attest that this document is a
certified photocopy of an
original on file.

Deputy Assistant Clerk      8/20/24