UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DAVID ALBERNAZ, RAPHAEL ANGULO, JONATHON AUSIELLO, TROY BENOIR, WAYNE BURCH, OSCAR CARBAJAL, MATTHEW CONLEY, CESAR DELACRUZ, COREY DONOVAN, VICTOR FIGUEROA, KYLE FREDERICK, EDDIE KADEK, ANDREW LEACH, FATJON LOLOCI, SAMMY MERCADO, KRISTEON MESA, JAVIER MOLINA, JEFF MORALES, MATTHEW NELSON, RICHARD OTIS, SOPHEAK OU, JAMES PARI, EARL REYNOLDS, and SENNA SOR, <br> Plaintiffs <br><br> v. <br><br> M.S. WALKER, INC. <br> Defendant | **LEAVE TO FILE GRANTED BY ORDER DATED SEPTEMBER 23, 2024** <br><br><br> C.A. NO. 24-12124-PBS |

**FIRST AMENDED COMPLAINT AND JURY DEMAND**

**INTRODUCTION**

1.      The Massachusetts Wage Act, G.L. c. 149, § 148, mandates that "any employee discharged from . . . employment shall be paid in full on the day of his discharge." In the sole count of this action, Plaintiffs claim this statutory mandate applies when Defendant M.S. Walker ("M.S. Walker") subjects them to layoffs, asserting that layoffs fall within the Wage Act's definition of "discharge." They seek a judgment requiring M.S. Walker to pay them on the days they are laid off, as well as damages for late wage payments in the past. G.L. c. 149, § 150.

2.      In making this claim, Plaintiffs acknowledge they cannot challenge M.S. Walker's right to lay them off under common or statutory law, nor can their labor representative, Teamster Local 25 ("Local 25"), dispute the layoffs under its collective bargaining agreement ("CBA") with M.S. Walker. Instead, Plaintiffs seek to enforce M.S. Walker's compliance with the

1

Wage Act's timely payment requirement, a statutory obligation relating to wage payment timing, independent of the CBA, and therefore, not preempted by Section 301 of the LMRA. See *Lawless v. Steward Health Care System LLC*, 894 F.3d 9, 19 (1st Cir. 2018); *Livadas v. Bradshaw*, 512 U.S. 107, 124 (1994).

## PARTIES

3. Defendant M.S. Walker, Inc. ("M.S. Walker") is a corporation organized under the laws of the Commonwealth of Massachusetts, having a principal place of business in Norwood, Norfolk County, Commonwealth of Massachusetts.

4. Plaintiffs David Albernaz, Raphael Angulo, Jonathon Ausiello, Troy Benoir, Wayne Burch, Oscar Carbajal, Matthew Conley, Cesar Delacruz, Corey Donovan, Victor Figueroa, Kyle Frederick, Eddie Kadek, Andrew Leach, Fatjon Loloci, Sammy Mercado, Kristeon Mesa, Javier Molina, Jeff Morales, Matthew Nelson, Richard Otis, Sopheak Ou, James Pari, Earl Reynolds, and Senna Sor ("Plaintiffs") are employees of M.S. Walker.

## FACTUAL ALLEGATIONS

5. On its website, M.S. Walker describes its business this way: "Founded in Boston in 1933, M.S. Walker is a 5th-generation, family-owned wine and spirits importer and distributor, a spirit bottler, and a national supplier. We serve On-Premise (*sic*) and Off-Premise (*sic*) establishments throughout the Northeast, with direct operations in Massachusetts, New York, New Jersey and Rhode Island and brokerage operations in Maine, New Hampshire, and Vermont. We represent a budding portfolio of wine and spirits nationwide, including our own brands, and we strive to offer the most prestigious portfolio in the industry."

6. M.S. Walker employs Plaintiffs among approximately 83 similarly situated employees in Norwood, Massachusetts.

2

7. Under the current collective bargaining agreement between the Teamsters and M.S. Walker, drivers are paid $31.30 per hour, and helpers are paid $28.15 per hour.

8. The layoff policy at the center of this dispute was implemented for the first time in May 2023, on the heels of a new CBA between M.S. Walker and Local 25 that introduced daily bidding and incentive pay for the drivers. M.S. Walker has continued to apply the policy through the date of this Complaint.

9. Under previous agreements, drivers were assigned routes on a three-month bid basis, locking them into the same route for an entire quarter. This system allowed the company to maintain strict control over assignments, often giving the heaviest workloads to the most efficient drivers without additional compensation, and layoffs were never imposed on drivers or helpers. The new agreement, however, shifted control to the drivers, allowing them to bid on routes daily based on seniority and introducing incentive pay for the number of cases handled each day.

10. Jim Newhouse, the operations manager, and Dana Brody, a warehouse supervisor, opposed these changes, viewing the daily bidding and incentive pay as threats to their authority and resenting the financial impact. They believed they were forced to accept these terms under the threat of a strike, and their frustration soon turned into a desire for retaliation against the drivers and helpers who had advocated for these benefits.

11. To punish the drivers and helpers, Newhouse devised and implemented a layoff policy to undermine the benefits they had won. Central to this strategy is the manipulation of the point system used to determine when a helper is required. Before the 2023 CBA, a helper was assigned when a route exceeded 500 points, with each stop worth 10 points and each case worth 1 point. As of May 2023, eligibility for a helper is based solely on routes with more than 350 cases.

12. Under Newhouse's direction, routers analyze upcoming routes and adjust them to fall just below the 350-case threshold, avoiding the assignment of helpers and leading to layoffs whenever possible. Employees often receive notice of their layoffs late in the evening, after the routers manipulate routes based on customer orders.

13. The layoffs M.S. Walker imposed under its policy are indefinite. Some last a day, others more than a week, and for Plaintiffs with low seniority, such as Conley (1/23–2/24), Donovan (12/23–2/24), Leach (1/24–2/24), and Mercado (1/24–2/24), they have lasted for periods approximating or exceeding a month.

14. All the other named Plaintiffs have also been subject to layoffs of varying durations between May 2023 and the date of this Complaint, without being paid their earned wages on the days of their layoffs. Examples include, but are not limited to, Plaintiff David Albernaz on occasions in November 2023, January 2024, February 2024, and March 2024; Plaintiff Raphael Angulo on occasions in May, August, September, December 2023, and January and May 2024; Plaintiff Jonathan Ausiello on occasions in May, August, September, November 2023, and January to May 2024; Plaintiff Troy Benoir on occasions in November 2023, January, February, March, and April 2024; Plaintiff Wayne Burch on occasions in February 2024; Plaintiff Oscar Carbajal on an occasion in January 2024; Plaintiff Cesar Delacruz on occasions in May 2023, January, February, March, April, and May 2024; Plaintiff Victor Figueroa on occasions in May, June, September 2023, and January to February 2024; Plaintiff Kyle Frederick on occasions in September and November 2023, and January to April 2024; Plaintiff Eddie Kadek on occasions in January, February, and May 2024; Plaintiff Fatjon Loloci on occasions from May 2023 to April 2024; Plaintiff Kristeon Mesa on occasions in July, August, September, October, November, December 2023, and January to May 2024; Plaintiff Javier Molina on occasions from March to May 2023; Plaintiff Jeff Morales on occasions from December 2023 to

4

May 2024; Plaintiff Matthew Nelson on occasions in September 2023 and February 2024; Plaintiff Richard Otis on occasions from August 2023 to April 2024; Plaintiff Sopheak Ou on occasions in May, August 2023, and January to May 2024; Plaintiff James Pari on an occasion in December 2023; and Plaintiff Earl Reynolds on occasions in November 2023 and January to May 2024.

15.     M.S. Walker has continued laying off employees without paying their earned wages, even after the dates mentioned in the previous paragraph.

16.     No agent of M.S. Walker has ever used the term "furlough" to describe the layoffs or suggested that, in line with the term's ordinary meaning, the layoffs had to be finite and temporary.

17.     Plaintiffs are modest hourly wage earners, many of whom live paycheck to paycheck and rely on consistent income to pay for housing and other necessities for themselves and, in many cases, dependents. The consequences of late wage payments accompanied by layoffs are severe for them.

18.     To further punish its employees, M.S. Walker manipulates layoffs to ensure some Plaintiffs and other employees remain ineligible for health insurance. The collective bargaining agreement between the union and M.S. Walker requires employees to work at least four hundred hours per quarter to qualify for health benefits. M.S. Walker deliberately times its layoffs before employees exceed the 400-hour threshold. This practice significantly impacts employees at the bottom of the seniority list, including Plaintiffs Mercado, Conley, Donovan, and Leach who were unable to qualify for health benefits due to this manipulation.

19.     Although Brody and Newhouse are surely aware that their vindictive layoff policy harms employees, Newhouse has shown no remorse for it, as one might if the policy were driven by economic necessity rather than spite. Instead, he has openly boasted to Teamsters

5

representatives that the policy was created and implemented to retaliate against the union for, in his view, forcing daily bidding and incentives into the collective bargaining agreement by threatening a strike.

## COUNT I
## Violation of the Wage Act
## Failure to Pay Wages on the Day of Discharge

20. Plaintiffs incorporate by reference all allegations made herein.

21. Plaintiffs again acknowledge that, although M.S. Walker's layoff policy was inspired by spite, they have no legal right as individuals to prevent it, and Local 25 cannot challenge the policy under the CBA. Instead, through this action, they seek to compel M.S. Walker to fulfill its statutory obligation under the Wage Act in connection with the layoffs—specifically, to pay earned wages on layoff days—and to impose damages for its repeated failure to comply.

22. M.S. Walker's employment of Plaintiffs and similarly situated employees is subject to the Massachusetts Wage Act, G.L. c. 149, § 148 ("the Wage Act").

23. The Wage Act mandates that employers pay all wages owed to employees on their "day of discharge." G.L. c. 149, § 148.

24. In a recent decision, the Massachusetts Supreme Judicial Court emphasized that it "has always recognized" the Wage Act's mandate to pay wages on the day of discharge is in place "for the protection of employees, who are often dependent for their daily support upon the prompt payment of their wages." Consistent with this, it emphasized, the Massachusetts "Legislature has highlighted [its] fundamental importance … by repeatedly expanding [the Wage Act's] protections." *Reuter v. City of Methuen*, 489 Mass. 465, 468-469 (2021) (citations omitted).

25. In *Reuter*, the SJC further emphasized that the Wage Act's "clear and emphatic" command that employees be paid on their day of discharge leaves "no wiggle room." This requirement is justified, the SJC explained, because the "prompt payment of all wages owed is necessary for employees who often live paycheck to paycheck and who may not be able to pay rent or other necessities. The consequences of late payments may, therefore, be severe for such employees," thus, payments made after the day of discharge "constitute clear violations of the statute." *Reuter,* 489 Mass. at 470 (citations omitted.)

26. M.S. Walker's layoffs of Plaintiffs constitute discharges within the meaning of the Wage Act. The Wage Act does not exclude "layoffs" from its definition of discharge or any other personnel action that results in the immediate termination of an employee's ability to earn wages. It also does not suggest that its protections are limited if an employee retains entitlement to non-wage benefits after discharge. Excluding layoffs from the Wage Act's coverage would undermine the purpose of the timely payment mandate, which is to ensure that employees who lose their ability to earn wages are promptly paid all wages owed, reducing financial insecurity.

27. Late payment of earned wages does not excuse a violation of the Wage Act's timely payment mandates for paying weekly wages or all earned wages on the day of discharge or the penalties it imposes for late payment. *Reuter v. City of Methuen*, 489 Mass. 465 (2022); G.L. c. 149, § 150.

28. M.S. Walker's failure to pay wages on the day of discharge blatantly violates the clear mandates of the Wage Act and undermines the policy goals intended by this legislation. The prompt payment of wages upon discharge is crucial to mitigate the financial insecurity and immediate hardships employees face upon termination. This requirement ensures that employees can meet essential financial obligations such as housing and medical expenses without delay,

thereby protecting their daily support and well-being. M.S. Walker's persistent disregard for this mandate through its layoff policy shows a callous indifference to these critical protections.

29. Compliance with the Wage Act requires minimal effort from M.S. Walker; it needs only to issue paychecks to employees for their earned wages. Given that M.S. Walker can determine layoffs based on routes and cases, a task requiring a level of expertise, it can surely manage the simple act of writing checks for any wages due the employees on the days it lays them off. It is cruel and thoughtless for M.S. Walker to engage in this practice without taking this basic step, thereby subjecting employees to unnecessary financial distress and instability.

30. M.S. Walker has repeatedly violated the Wage Act by discharging Plaintiffs and similarly situated employees without paying them their earned wages on their days of discharge.

31. For each occasion on which it has discharged Plaintiffs and similarly situated employees without paying them all earned wages due on their days of discharge, M.S. Walker is liable under the Wage Act for three times the earned wages due. G.L. c. 149, § 150.

32. As stated above, Plaintiffs and their labor representative, Teamsters Local 25, are powerless to stop M.S. Walker's layoff policy. However, M.S. Walker must still comply with the Wage Act's mandate for timely payment when laying off employees. Importantly, a claim to enforce the Wage Act and impose penalties for non-compliance is not preempted by Section 301 of the LMRA, as it concerns the timing of wage payments governed by state law, independent of any collective bargaining agreement. *Lawless v. Steward Health Care System LLC*, 894 F.3d 9, 19 (1st Cir. 2018); *Livadas v. Bradshaw*, 512 U.S. 107, 124 (1994).

33. Plaintiffs have satisfied all prerequisites to suit under the Wage Act.

34. Plaintiffs have been harmed, injured, and damaged by M.S. Walker's violation of the Wage Act.

## COUNT II
## CLASS ACTION CLAIM
## Violation of the Massachusetts Wage Act

35. All allegations made here are repeated and incorporated by reference.

36. Plaintiffs bring Count I of this Complaint on behalf of themselves and similarly situated employees of M.S. Walker as a putative Rule 23 class action pursuant to G.L. c. 149, § 150 and Rules 23(a) and (b) of the Federal Rules of Civil Procedure for M.S. Walker's violations of the law. The putative Rule 23 Class Plaintiffs propose is defined as follows: All current and former Massachusetts employees of the M.S. Walker who, from July 1, 2021, to the present, were not paid all due earned wages on their discharge date, in violation of the Wage Act.

37. The persons in the Rule 23 Class identified above are so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown at this time, upon information and belief, M.S. Walker employed more than 40 persons who satisfied the definition of the Rule 23 Class.

38. There are questions of law and fact common to the Rule 23 Class that predominate over any questions solely affecting individual members.

39. Plaintiffs' claims are typical of those of the Rule 23 Class. Plaintiffs, like other members of the Rule 23 Class, were subject to M.S. Walker's illegal practice in not paying wages on the day of discharge.

40. Plaintiffs will fairly and adequately protect the interests of the Rule 23 Class and have retained counsel experienced in complex wage and hour class and collective action litigation. There is no conflict between Plaintiffs and the Rule 23 Class members.

41. A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage-and-hour litigation where

9

individual plaintiffs lack the financial resources to vigorously prosecute separate lawsuits in federal Court against a large corporate defendant.

42. Class certification of Count I is appropriate under Mass. R. Civ. P. 23(b)(3) because questions of law and fact common to the Rule 23 Class predominate over any questions affecting only individual members and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. M.S. Walker's common and uniform policies and practices denied the Rule 23 Class proper and timely payment of wages. M.S. Walker was mandated to pay them under the Wage Act. The damages suffered by the individual Rule 23 Class members are minor compared to the expense and burden of individual prosecution of this litigation. In addition, class certification is superior because it will prevent the need for unduly duplicative litigation that might result in inconsistent judgments about M.S. Walker's practices.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief as follows:

A. Issue an order for injunctive relief enjoining M.S. Walker from continuing the unlawful practices, acts, transactions, and conduct complained of herein, including, but not limited to, violating the Wage Act's timely payment mandate by failing to pay Plaintiffs and similarly situated employees all earned wages due and owing them within the time required by the Wage Act, including on their dates of discharge;

B. Judgment awarding Plaintiffs and all similarly situated employees all late or unpaid wages, treble damages, attorneys' fees, and costs, including as mandated by G.L. c. 149, § 150;

C. An award of pre-and post-judgment interest on all amounts awarded at the highest rate allowable by law; and

D.  All such other and further relief to which Plaintiffs may show themselves to be justly entitled.

## JURY DEMAND

A trial by jury is demanded on all counts so triable.

Respectfully submitted,

PLAINTIFFS DAVID ALBERNAZ, RAPHAEL ANGULO, JONATHON AUSIELLO, TROY BENOIR, WAYNE BURCH, OSCAR CARBAJAL, MATTHEW CONLEY, CESAR DELACRUZ, COREY DONOVAN, VICTOR FIGUEROA, KYLE FREDERICK, EDDIE KADEK, ANDREW LEACH, FATJON LOLOCI, SAMMY MERCADO, KRISTEON MESA, JAVIER MOLINA, JEFF MORALES, MATTHEW NELSON, RICHARD OTIS, SOPHEAK OU, JAMES PARI, EARL REYNOLDS, and SENNA SOR,

By their Attorney,

s/Daniel W. Rice
Daniel W. Rice, BBO # 559269
Harrington Rice & Maglione, LLC
738 Main Street
Hingham, MA 02043
(781) 964-8377
dwr@harringtonrice.com

Dated: September 9, 2024

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on September 9, 2024.

/s/ Daniel W. Rice
Daniel W. Rice

11

**CERTIFICATE OF SERVICE**

      I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on September 25, 2024.

/s/ Daniel W. Rice
Daniel W. Rice